UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

CELESTE SPICER, AUTUMN BURGESS,
AMY LEDIN, JOSEPH RUSSO, ESTHER
MARTINEZ, LYSETTE ROMAN, AND
SERENA SIYING HUI, on behalf of
themselves and all others similarly situated

                                 Plaintiffs,

      -against-

PIER SIXTY, LLC and JAMES KIRSCH,

                          Defendants.

------------------------------------------------

No. 1:08-cv-10240 (LBS)

*Electronically Filed*

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR PARTIAL RECONSIDERATION

FOX ROTHSCHILD LLP
Carolyn D. Richmond, Esq.
Seth M.  Kaplan, Esq.
100 Park Avenue, Suite 1500
New York, New York 10017
Phone:  (212) 878-7900

*Attorneys for Defendants*
*Pier Sixty, LLC and James Kirsch*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  PRELIMINARY STATEMENT ........................................................................................1

II.  THE COURT SHOULD RECONSIDER ITS DECISION TO DENY
    SUMMARY JUDGMENT WITH RESPECT TO FORM CONTRACT
    THREE BECAUSE ITS JULY 26 ORDER OVERLOOKED DISPOSITIVE
    LAW AND FACTS, WAS ISSUED BEFORE THE TRUE FACTS
    CONCERNING THE MARCH 11 OPINION LETTER WERE KNOWN,
    AND LED TO A GRAVE INJUSTICE ............................................................................5

    A.  The Court Erred As A Matter Of Law By Deferring To And Relying
        Upon The NYDOL's March 11, 2010 Opinion Letter. ...........................................6

    B.  The Court's Reliance On The March 11 Opinion Letter, Which Was
        Improperly Obtained, Was Manifestly Unjust......................................................8

    C.  Pier Sixty's E-Mail Representations Do Not Create Any Material Issue
        Of Fact Regarding Form Contract Three ...............................................................11

    D.  Pier Sixty's No-Tipping Policy Does Not Create Any Material Issue
        Of Fact Regarding Form Contract Three ...............................................................12

III.  CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Akins v. Federal Election Commission,
    101 F.3d 731 (D.C. Cir. 1996)...................................................................................6, 7

Milano v. Astrue,
    No. 05-6527, 2007 WL 2668511 (S.D.N.Y. Sept. 7, 2007) ......................................5

Mojica v. Navas,
    970 F. Supp. 130 (E.D.N.Y. 1997) ...........................................................................6, 7

New York v. Shalala,
    119 F.3d 175 (2d Cir. 1997)......................................................................................6, 7

Saunders v. New York City Department of Education,
    No. 07-2725, 2010 WL 2985031 (E.D.N.Y. July 20, 2010).......................................5

Shrader v. CSX Transportation Inc.,
    70 F.3d 255 (2d Cir. 1995).........................................................................................5

Yesil v. Reno,
    973 F. Supp. 372 (S.D.N.Y. 1997).............................................................................6, 7


**STATE CASES**

Samiento v. World Yacht Inc.,
    10 N.Y.3d 70 (2008) ..................................................................................................1, 2

Toys 'R' Us v. Silva,
    676 N.E.2d 862 (N.Y. 1996).......................................................................................7

## I.      PRELIMINARY STATEMENT

On July 26, 2010, this Court issued a Memorandum and Order (the "July 26 Order") in which it, among other things: (1) granted Defendants Pier Sixty, LLC ("Pier Sixty") and James Kirsch's motion for summary judgment on Plaintiffs' New York Labor Law ("NYLL") claim with respect to those events held using Form Contract Two;[1] (2) denied Defendants' motion for summary judgment on Plaintiffs' NYLL claim with respect to those events held using Form Contract One and Form Contract Three; and (3) granted Plaintiffs' motion for class and collective action certification.  In this motion for partial reconsideration of the July 26 Order, Defendants respectfully request that the Court vacate and reverse the July 26 Order to the extent that it denied summary judgment with respect to the events held using Form Contract Three.

As discussed in Defendants' summary judgment papers, prior to the New York Court of Appeals' decision in Samiento v. World Yacht Inc., 10 N.Y.3d 70 (2008), both the courts and the New York Department of Labor ("NYDOL") for years had consistently and routinely stated that mandatory service charges could not be deemed "gratuities" under NYLL § 196-d as a matter of law.  In World Yacht, the Court of Appeals reversed years of prior regulatory and judicial authority by holding, for the first time, that mandatory service charges may in fact be deemed a "gratuity," or a charge "purported to be a gratuity," under NYLL § 196-d if the service charge was "represented to the consumer as compensation to the defendants' wait staff in lieu of a gratuity."  World Yacht, 10 N.Y.3d at 79; Def. Mov. Brf. at 8.[2]  The Court of Appeals further held that the determination as to whether a service charge constituted a "gratuity" for purposes of

---

[1] Unless otherwise defined herein, this Memorandum of Law shall adopt all of the defined terms set forth in the July 26 Order.

[2] "Def Mov. Brf." shall refer to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, dated March 5, 2010.  (See Docket No. 37.)

NYLL § 196-d should now be based on "the expectation of the reasonable customer," even though that language and standard appear nowhere in the statute.  World Yacht, 10 N.Y.3d at 79.

As this Court explicitly recognized in its July 26 Order, Pier Sixty thereafter modified its contract language to Form Contract Two in order to comply with World Yacht.  See July 26 Order at 2.[3]  However, as this Court also recognized in its July 26 Order, notwithstanding the clear disclaimer as to how the service charge was being allocated, Form Contract Two "confused some clients" because of the different tax treatment being applied to each portion of the service charge payment.[4]  Thus, to avoid such confusion, Pier Sixty created Form Contract Three, in which it ceased requiring separate payments with separate tax treatments, but nevertheless expressly stated that "[t]he service charge is not a gratuity and is used to cover personnel, administrative or other costs."  See July 26 Order at 2 (emphasis added).

Defendants respectfully submit that under no objective standard could a "reasonable customer" using Form Contract Three believe that their entire service charge was intended to serve as a gratuity for Pier Sixty's servers when the contract they signed expressly advised them to the contrary.  Accordingly, summary judgment should have been granted with respect to Form Contract Three on such grounds alone.  In concluding otherwise, this Court recognized that "World Yacht is recent enough that little judicial elaboration on this standard has been provided,"  (July 26 Order at 10) and thus relied heavily on the NYDOL's March 11, 2010

---

[3]  Indeed, in its July 26 Order, this Court expressly found that Form Contract Two -- which clearly identified which portion of the service charge was being paid to the servers and which portion was being retained by Pier Sixty -- satisfied the "reasonable customer" standard as a matter of law, and warranted summary judgment for those events held using that version of the contract.  Id. at 14.

[4]  As previously discussed and as stated in the July 26 Order, the portion of the service charge that was paid to the servers was listed as a "gratuity" and therefore not subject to New York sales tax (thereby saving Pier Sixty's clients money).  The portion of the service charge being retained by Pier Sixty was still subject to New York sales tax.  See July 26 Order at 2; Def. Mov. Brf. at 17.

opinion letter (the "March 11 Opinion Letter").  As the Court discussed in its July 26 Order, the NYDOL in the March 11 Opinion Letter had provided its own interpretation of <u>World Yacht</u> by, among other things, expressing its belief that employers do not necessarily satisfy the "reasonable customer" standard by providing a clear written notice that the service charge is not a gratuity, and by articulating a number of additional factors that it felt must be considered in making this determination.  <u>See</u> July 26 Order at 12.  Based primarily on the March 11 Opinion Letter, this Court found that, notwithstanding Pier Sixty's clear disclaimer that its "service charge [was] not a gratuity," summary judgment with respect to the events under Form Contract Three was inappropriate because the March 11 Opinion Letter's "list of the many factors to be considered indicates that a rational jury could find for Plaintiffs on those events held under Form Contract Three." <u>See</u> July 26 Order at 12-13.[5]

As discussed more fully below, Defendants respectfully submit that this Court should reconsider its denial of summary judgment on Form Contract Three on at least two grounds. <u>First</u>, the Court overlooked controlling case law, which provides that, as a matter of law, deference should not be granted to the March 11 Opinion Letter because it constituted an interpretation of a judicial decision (<u>i.e.</u>, the <u>World Yacht</u> case), as opposed to an interpretation of the statute that the NYDOL is charged with administering (<u>i.e.</u>,  NYLL § 196-d).

<u>Second</u>, the denial of summary judgment on Form Contract Three based substantially on the March 11 Opinion Letter would be manifestly unjust in light of the following new fact that was not available to the Court or the Defendants until after the July 26 Order was issued; specifically, that the March 11 Opinion Letter was improperly obtained by plaintiffs' counsel in

---

[5] This Court also cited "Defendants' e-mail representations to clients regarding the service charge" and "Defendants' well-advertised no-tipping policy" as additional factors that could be considered in determining whether the "reasonable customer" standard has been satisfied in denying Defendants

another matter pending in the Appellate Division, Second Department in violation of both NYDOL policy and administrative law and, as a result, was stricken from the record by the Second Department in that case a mere five days prior to the Court's July 26 Order.  In light of this new fact, the March 11 Opinion Letter should be considered void and should not be relied upon as authority in this or any other matter as a matter of principle and fundamental fairness. Moreover, the March 11 Opinion Letter was issued <u>long</u> <u>after</u> Form Contract Three had been created and put into effect as part of Pier Sixty's ongoing, good faith efforts to comply with the law and to avoid customer confusion at all times.

Additionally, given the clear inapplicability of the March 11 Opinion Letter to any legitimate analysis, the few Pier Sixty emails which this Court stated "reinforced" its conclusion based on the March 11 Opinion Letter have been rendered legally immaterial.  Such e-mails simply cannot "reinforce" a decision that was based almost entirely on a void and improperly obtained NYDOL opinion letter.  Lastly, the Court also overlooked the fact that Defendants' "well-advertised no-tipping policy" was only advertised to the <u>guests</u> attending Pier Sixty's events, not the hosts of the events, who were the parties which contracted with Pier Sixty and were free to offer tips and gratuities at their own discretion.  As it is only the perception of the hosts -- not the guests -- which is at issue when applying <u>World Yacht's</u> "reasonable customer" standard, Pier Sixty's no-tipping policy simply has no bearing on this analysis.

Based on these factors, Defendants respectfully request that the July 26 Order be vacated and reversed to the extent it denied summary judgment with respect to all events held pursuant to Form Contract Three.  Moreover, given the fact that the Court relied upon each of the above discussed issues in denying summary judgment on not only Contract III, but also Contract I,

---

summary judgment on Form Contract Three.  For the reasons discussed below, these factors likewise do not support the denial of summary judgment.

4

Defendants respectfully submit that this Court should issue a new order regarding Defendants' summary judgment motion which does not in any way rely upon the March 11 Opinion Letter.

## II.  THE COURT SHOULD RECONSIDER ITS DECISION TO DENY SUMMARY JUDGMENT WITH RESPECT TO FORM CONTRACT THREE BECAUSE ITS JULY 26 ORDER OVERLOOKED DISPOSITIVE LAW AND FACTS, WAS ISSUED BEFORE THE TRUE FACTS CONCERNING THE MARCH 11 OPINION LETTER WERE KNOWN, AND LED TO A GRAVE INJUSTICE

Motions for reconsideration "are governed by Local Rule 6.3 and are entrusted to the sound discretion of the court." Milano v. Astrue, No. 05-6527, 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007) (granting motion for reconsideration) (citations omitted).  Such motions may be granted where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995) (affirming district court's grant of motion for reconsideration).  Motions for reconsideration may also be granted when "there is new evidence presented that was not previously available on the original motion [or] . . . there is a need to correct a clear error or prevent manifest injustice." Saunders v. N.Y. City Dep't of Educ., No. 07-2725, 2010 WL 2985031, at *2-3 (E.D.N.Y. July 20, 2010) (granting motion for reconsideration).

Defendants submit that both grounds for reconsideration are present here.  Respectfully, Defendants believe that the Court: (i) overlooked controlling law when it relied on the March 11 Opinion Letter, which interpreted a judicial opinion, not a statute; and (ii) was not aware of the new fact that the March 11 Opinion Letter was improperly obtained and should not have been relied upon in the first instance.  Under these circumstances, permitting the July 26 Order to stand and forcing Defendants to go to trial on a contract they specifically tailored to meet all legitimate, existing legal authority, based on a NYDOL opinion letter which did not even exist at

the time the contract was created, would be a manifestly unjust result.  For these reasons, and those discussed more fully below, Defendants' motion for reconsideration of this Court's denial of summary judgment with respect to Form Contract Three should be granted.

### A.    The Court Erred As A Matter Of Law By Deferring To And Relying Upon The NYDOL's March 11, 2010 Opinion Letter.

Defendants respectfully submit that this Court overlooked controlling law when it relied upon, and gave deference to, the March 11 Opinion Letter.  In the July 26 Order, this Court cited to case law stating that an agency's determination is entitled to deference if it is "neither irrational nor unreasonable." July 26 Order at 10 (quoting World Yacht, 883 N.E.2d at 995). However, it is well-settled that administrative agencies should only be afforded this level of deference "in their interpretation of [the] statutes they are charged with implementing." Yesil v. Reno, 973 F. Supp. 372, 383 (S.D.N.Y. 1997) (emphasis added); see also July 26 Order at 10 (deference should be provided to an agency's "interpretation of a statute it is charged with enforcing") (emphasis added).[6]

In contrast, when interpreting judicial decisions, "the general rule of deference to agency interpretations does not apply." Mojica v. Navas, 970 F. Supp. 130, 181 (E.D.N.Y. 1997).  As the Second Circuit has expressly held, an administrative agency "has no special competence or role in interpreting a judicial decision."  New York v. Shalala, 119 F.3d 175, 180 (2d Cir. 1997); see also Akins v. Fed. Election Comm'n, 101 F.3d 731, 740 (D.C. Cir. 1996) (holding that "agencies have no special qualifications of legitimacy in interpreting Court opinions").  Thus, deference to an administrative agency's interpretation of a judicial decision is "wholly

---

[6] Notably, the New York Court of Appeals in Toys 'R' Us v. Silva – a case cited by this Court in its July 26 Order – similarly held that it is an administrative agency's "interpretation of [a] statute's terms [that] must be given great weight and judicial deference, so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute."  676 N.E.2d 862, 867 (N.Y. 1996) (emphasis added; internal citations and quotations omitted); see also July 26 Order at 11.

inappropriate." <u>Yesil</u>, 973 F. Supp. at 384 (refusing to defer to Attorney General opinion that "involved no statutory interpretation" and "simply applied or interpreted Supreme Court case law") (internal quotations omitted); <u>see also</u> <u>Mojica</u>, 970 F. Supp. at 181 (holding that deference to Attorney General opinion which was "not based on statutory construction but rather on her interpretation of judicial default rules enunciated by the Supreme Court" was "wholly inappropriate"); <u>Shalala</u> 199 F.3d at 180 (declining to defer to the Secretary of Department of Health and Human Services' interpretation of a Second Circuit Court of Appeals' decision and holding that an administrative agency's interpretation of a judicial decision "is not entitled to any special degree of deference"); <u>Akins</u>, 101 F.3d at 740 ("There is . . . no reason for courts -- the supposed experts in analyzing judicial decisions -- to defer to agency interpretations of the Court's opinions.").

But it is precisely this prohibited agency interpretation of a common law judicial opinion that this Court countenanced here.  <u>See</u> July 26 Order at 11 ("Under the <u>World Yacht</u> standard <u>as elaborated upon by the March 11, 2010 NYDOL Letter</u>, there is a genuine issue of material fact for claims based on those events for which Form Contracts One and Three were used.") (emphasis added).  There can be no doubt that, in the March 11 Opinion Letter, the NYDOL was providing its own interpretation of a judicial opinion.  Specifically, the NYDOL was interpreting the New York Court of Appeals' decision in <u>World Yacht</u> by offering its own opinion as to how employers can meet the "reasonable customer" standard enunciated by the court in that decision. The "reasonable customer" standard, however, is not provided for anywhere in the NYLL; rather, it is purely one of judicial creation.  More importantly, the NYDOL is only charged with the responsibility of enforcing the NYLL; it has absolutely no expertise or ability to authoritatively weigh in on the nature of the relationship and communications between banquet

event facilities and their customers as it did in the March 11 Opinion Letter.[7]  Thus, this type of opinion letter is outside the scope of the NYDOL's purview and, based on the controlling case law outlined above, is not entitled to any judicial deference as a matter of law.  The Court, in overlooking this authority, therefore erred in denying Defendants summary judgment based predominantly the March 11 Opinion Letter.

   **B.   The Court's Reliance On The March 11 Opinion Letter, Which Was Improperly Obtained, Was Manifestly Unjust.**

Even assuming, <u>arguendo</u>, that the Court could give deference to the March 11 Opinion Letter, doing so here would be improper and unjust because the March 11 Opinion Letter was improperly obtained and should have absolutely no legal effect.  Indeed, the March 11 Opinion Letter was stricken from the record by a New York appellate court on July 21, 2010 -- a mere six days before the Court's July 26 Order here.  The tale of the March 11 Opinion Letter is quite telling.

In <u>Reilly v. Richmond County Country Club</u>, Index No. 102479/08, the Appellate Division, Second Department, granted the defendant-appellee's motion to strike the plaintiff-appellant's reply brief to the extent it cited and relied upon the March 11 Opinion Letter.  <u>See</u> Declaration of Carolyn D. Richmond In Support Of Defendants' Motion for Reconsideration ("Richmond Decl."), Ex. A.  As defendant-appellee highlighted in its moving papers – and as the Second Department agreed in granting the request – the March 11 Opinion Letter was obtained

---

[7]  The NYDOL's lack of expertise in the banquet event industry is clearly evidenced by some of its suggested measures in the March 11 Opinion Letter.  For example, in the March 11 Opinion Letter, the NYDOL suggested that banquet event facilities advise its customers in writing that they "should leave an additional payment to be distributed to the following service staff (e.g., wait staff, busboys, bartenders, buffet line attendants)," and "include[e] a separate line labeled gratuity or tip on the contract."  <u>See</u> March 11 Opinion Letter at 3.  As Pier Sixty has previously explained, however, its contract price is intended to be all-inclusive so that their clients need not feel obligated or expected to provide gratuities to any of the staff members.  <u>See</u> Def. St. of Facts, ¶¶ 9-10, 56.  Incorporating these suggestions would defeat the purpose of providing an all-inclusive banquet event at Pier Sixty.

8

by improper means and disingenuous conduct by plaintiff-appellant's counsel.  See Richmond Decl., Ex. B.  Specifically, on December 16, 2009, counsel for plaintiff-appellant -- the same plaintiff's attorney from the <u>World Yacht</u> case -- submitted his request for an opinion letter regarding the precise subject matter covered by an appeal he had recently filed.  See Richmond Decl., Ex. B., at 1.  In so doing, plaintiff-appellant's counsel failed to advise the NYDOL that there was an appeal pending concerning the very matter on which he sought guidance.  <u>See</u> Richmond Decl., Ex. B, at 2.

However, it is the NYDOL's stated policy to <u>not</u> issue any opinion letters regarding matters that are currently in litigation in order to avoid any appearance that the agency was acting in any type of adjudicatory capacity -- a fact counsel for plaintiff-appellant was expressly made aware of in its subsequent communications with the NYDOL when it sought yet another opinion letter concerning other matters at issue in the underlying litigation.  <u>See</u> Richmond Decl., Ex. B at 2-3; Ex. C (NYDOL's April 5, 2010 opinion letter stating that the NYDOL "will be unable to provide an opinion in response to your request if this inquiry is based not on a hypothetical situation, but on some current case or controversy" and that "it would be contrary to the [NYDOL's] policy to offer an opinion" in such a matter).  Thus, the court in that case struck the March 11 Opinion Letter from the record and did not permit the plaintiff-appellant to rely on it in his appeal.  <u>See</u> Richmond Decl., Ex. A; Ex. B, at 2-3.  These new facts -- which were not available to this Court at the time that it issued the July 26 Order --  warrant reconsideration of the July 26 Order.

In addition to the fact that it was recently struck by a New York appellate court, the Court's reliance upon the March 11 Opinion Letter would constitute a "manifest injustice" because the March 11 Opinion Letter was not even issued until <u>after</u> <u>Defendants</u> <u>filed</u> <u>their</u>

motion for summary judgment[8] – and almost a year and a half after Pier Sixty created the Form Contract Three in August 2008.  By seeking to retroactively impose the factors articulated in the March 11 Opinion Letter to all Form Contract Three contracts dating back to August 2008, the Court was essentially asking Pier Sixty to do the impossible – to comply with standards which had not yet been articulated and to argue against the application of an opinion letter which had not yet been issued.  Given the improper pedigree of the March 11 Opinion Letter, using it to impose a retroactive (and legally dubious) burden is injustice of the highest order.

As the case record clearly reveals, Pier Sixty has always complied with the law at as it existed at the time, and always sought to ensure its customers fully understood its contractual obligations.  As discussed in Defendants' prior submissions and above, prior to the World Yacht decision, Pier Sixty, in using Form Contract One, relied in good faith upon the NYDOL's June 1, 1995 Inter-Office Memorandum and existing case law that clearly provided that mandatory service charges (such the one imposed by Pier Sixty) could not be deemed "gratuities" under NYLL §196-d as a matter of law.  See Def Mov. Brf. at 6-8.  Immediately following the World Yacht decision, in April 2008, Pier Sixty created Form Contract Two to comply with the new requirements articulated by the New York Court of Appeals – a form this Court endorsed in its July 26 Order.  Then, a few months later in August 2008, Pier Sixty created Form Contract Three to help eliminate the customer confusion regarding the tax treatment of such payments that resulted from the changes made in Form Contract Two.  This aptly demonstrates that Pier Sixty was seeking to comply with the law and avoid any customer confusion over its contracts at all times.  Penalizing Pier Sixty for changing its customer contract form to further those objectives

---

[8]  The March 11 Opinion Letter was issued six days after Defendants filed their motion for summary judgment on March 5, 2010.  See Docket Nos. 36-43.  This, obviously, prohibited Defendants from addressing the March 11 Opinion Letter in its summary judgment moving papers.

constitutes a "manifest injustice" worthy of reconsideration, particularly in light of the fact that the March 11 Opinion Letter upon which the Court relied was improperly obtained and had not even been issued at the time.

### C.   Pier Sixty's E-Mail Representations Do Not Create Any Material Issue Of Fact Regarding Form Contract Three

In denying Defendants summary judgment with respect to Form Contract Three, this Court also made reference to "Defendants' e-mail representations to clients regarding the service charge" as supposedly "reinforcing" its legal conclusions based upon the March 11 Opinion Letter. July 26 Order at 13. These e-mails, however, do not "reinforce" an improperly supported opinion and certainly do not independently create a material issue of fact regarding Plaintiffs' claim under Form Contract Three.

It is undisputed that the servers received the majority of the service charge payments at issue. See July 26 Order at 2; Def. Mov. Brf. at 14. Thus, the only issue is whether a "reasonable customer" would have been led to believe that the entire service charge payment was intended to serve as a gratuity for the servers. As noted above, in light of the contract language in Form Contract Three, which expressly states that the service charge "is not a gratuity, and is used to cover personnel, administrative, or other costs," no "reasonable customer" would believe the entire service charge was intended as a gratuity. See Form Contract Three (emphasis added).

In citing to these e-mails, the Court overlooked the fact that these e-mails -- however infrequent they were[9] -- actually support Defendants' position. In Form Contract Three, Pier Sixty states that "personnel . . . costs" -- which would obviously include the servers -- were one of the various types of costs included in the service charge. Thus, any e-mails in which Pier

---

[9]  As the Court acknowledged, Pier Sixty's sales managers "'rarely' had to provide an explanation of what the service charge covers." See July 26 Order at 3. Moreover, only a small portion of the e-mails cited in

Sixty's sales managers stated that the servers' compensation was "covered by" or "included in" the service charge, or that the service charge helps "compensate[] the individual serving the customer" is <u>entirely</u> <u>consistent</u> with Form Contract Three, which expressly states that such "personnel . . . costs" do in fact constitute part of the service charge.  More importantly, the Court neglected to consider the fact that there is nothing in these e-mails that would lead a "reasonable customer" to believe that the <u>entire</u> service charge (as opposed to merely a portion of the service charge) was intended to serve as a gratuity for the servers, particularly in light of the clear contract language stating otherwise.

### D.    Pier Sixty's No-Tipping Policy Does Not Create Any Material Issue Of Fact Regarding Form Contract Three

In its July 26 Order, this Court also cited to "Defendants' well-advertised no-tipping policy" as additional grounds to deny Defendants' summary judgment with respect to Form Contract Three.  This Court, however, overlooked the undisputed fact that Pier Sixty's no-tipping policy serves strictly as a communication to the <u>guests</u> at its event in order to advise them that they are not expected or permitted to tip or provide gratuities to the servers because all such costs have been paid for by Pier Sixty and the host of the event (i.e., Pier Sixty's client).  <u>See</u> Def. Mov. Brf. at 15-16.  It is undisputed that this policy is not directed to Pier Sixty's <u>clients</u> -- i.e., the contracting party and the putative "reasonable customer" --  who are permitted to, and in fact often do, provide gratuities to certain staff members.  <u>See</u> Def. Mov. Brf. at 16.  The expectations of the guests attending Pier Sixty's events simply has no relevancy in this analysis.

---

the July 26 Order (and in Plaintiffs' opposition brief) were sent after Pier Sixty adopted Form Contract Three.  <u>See</u> July 26 Order at 13; Pl's. Mem. Opp. Summ. J. at 12-15.

## III.   **CONCLUSION**

For the reasons stated above, Defendants respectfully request that this Court: (1) vacate and reverse its July 26 Order to the extent it denied Defendants' motion for summary judgment on the NYLL claim for the events held under Form Contract Three; and (2) issue a new order which does not in any way rely upon the March 11 Opinion Letter.

Dated: New York, New York
     August 20, 2010

**FOX ROTHSCHILD LLP**

By: _____

Carolyn D. Richmond, Esq.
Seth M. Kaplan, Esq.
100 Park Avenue
Suite 1500
New York, NY 10017
Phone: (212) 878-7900
Fax: (212) 692-0940

*Attorneys for Defendants*
*Pier Sixty, LLC and James Kirsch*

13

## <u>CERTIFICATE OF SERVICE</u>

I, Vimisha Dubal, hereby certify that on August 20, 2010, I caused a true and correct

copy of the following documents to be filed with the Clerk of the District Court for the Southern

District of New York using the Court's CM/ECF system, which sent notification of such filing to

Counsel for Plaintiffs addressed below:

1.  Defendants' Notice of Motion and Motion for Partial Reconsideration with
    proposed Order;

2.  Defendants' Memorandum of Law in Support of their Motion for Partial
    Reconsideration;

3.  Declaration of Carolyn D. Richmond in Support of Defendants' Motion for Partial
    Reconsideration with exhibits;

**Charles Edward Joseph**
**Daniel Maimon Kirschenbaum**
**Denise Andrea Schulman**
Joseph, Herzfeld, Hester & Kirschenbaum LLP
757 3rd Avenue, 25th Floor
New York, NY 10017
Phone: 212-688-5640
Fax: 212-688-2548

*Attorneys for Plaintiffs*

            /s/ Vimisha Dubal
VIMISHA DUBAL