UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CELESTE SPICER, AUTUMN BURGESS,
AMY LEDIN, JOSEPH RUSSO, ESTHER
MARTINEZ, LYSETTE ROMAN, AND
SERENA SIYING HUI, on behalf of
themselves and all others similarly situated,

No. 1:08-

*ECF CASE*

Plaintiffs,

- against -

PIER SIXTY, LLC and JAMES KIRSCH,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT

FOX ROTHSCHILD LLP
Carolyn D. Richmond, Esq.
Seth M. Kaplan, Esq.
100 Park Avenue, Suite 1500
New York, New York 10017
Phone:

FRIED, FRANK, HARRIS, SHRIVER &
    JACOBSON LLP
Douglas H. Flaum, Esq.
Lisa H. Bebchick, Esq.
One New York Plaza
New York, New York 10004
Phone: (212) 859-8000

*Counsel for Defendants*
*Pier Sixty, LLC and James Kirsch*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ...................................................................................................... 5

I.      PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED IN LIGHT OF PLAINTIFFS' UNDUE DELAY AND BAD FAITH, DILATORY MOTIVE ................ 5

II.      PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED BECAUSE IT WOULD RESULT IN SUBSTANTIAL PREJUDICE TO DEFENDANTS ..................... 9

III.      PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT TO ADD A CLAIM FOR LIQUIDATED DAMAGES SHOULD BE DENIED AS FUTILE ............ 10

CONCLUSION .................................................................................................. 15

**TABLE OF AUTHORITIES**

Page(s)

FEDERAL AND STATE CASES

*Aguilar v. E-Z Supply Corp.*,
    No. 06-6790, 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008)......................................................11

*Alejo v. Darna Rest.*,
    No. 09-5436, 2010 WL 5249383 (S.D.N.Y. Dec. 17, 2010) ...........................................10, 11

*Aniero Concrete Co. v. New York City Constr. Auth.*,
    No. 94-3506, 2000 WL 863208 (S.D.N.Y. June 27, 2000) ................................................11, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................................11

*Boyce-Idlett v. Verizon Corporate Serv. Corp.*,
    No. 06-975, 2007 WL 2589445 (S.D.N.Y. Aug. 30, 2007)......................................................12

*Cao v. Wu Liang Ye Lexington Rest.*,
    No. 08-3725, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) ...................................................11

*Cresswell v. Sullivan & Cromwell*,
    922 F.2d 60 (2d Cir. 1990)..........................................................................................................6

*Dellefave v. Access Temporaries, Inc.*,
    No. 99-6098, 2001 WL 25745 (S.D.N.Y. Jan. 10, 2001) ...........................................................5

*Dreyfuss v. Etelecare Global Solutions-US, Inc.*,
    No. 08-1115, 2010 WL 4058143 (S.D.N.Y. Sept. 30, 2010) ...................................................11

*EEOC v. Home Ins. Co.*,
    553 F. Supp. 704 (S.D.N.Y. 1982) .............................................................................................6

*Gustafson v. Bell Atl. Corp.*,
    171 F. Supp. 2d 311 (S.D.N.Y. 2001)................................................................................10, 11

*Hutton Construction Co. v. County of Rockland*,
    No. 87-4027, 1993 WL 118511 (S.D.N.Y. Apr. 13, 1993) ......................................................10

*In re Urethane Antitrust Litig.*,
    No. 04-1616, 2007 WL 1424327 (D. Kan. May 14, 2007)......................................................8, 9

*Johnson v. Methodist Med. Ctr.*,
    10 F.3d 1300 (7th Cir. 1993) ......................................................................................................8

## TABLE OF AUTHORITIES (Cont.)

Page(s)

*Nanopierce Tech., Inc. v. Southridge Capital Mgmt.,*
  No. 02-0767, 2008 WL 1882702 (S.D.N.Y. Apr. 21, 2008) ..................................................5, 6

*New Hampshire Ins. Co. v. Total Tool Supply, Inc.,*
  621 F. Supp. 2d 121 (S.D.N.Y. 2009)..................................................................................11

*Ruotolo v. City of New York,*
  514 F.3d 184 (2d Cir. 2008)..................................................................................................6

*Samiento v. World Yacht Inc.,*
  10 N.Y.3d 70 (N.Y. 2008) ............................................................................................ *passim*

*Shady Grove Orthopedics Assoc., P.A. v. Allstate Ins. Co.,*
  130 S. Ct. 1431 (2010) ................................................................................................. *passim*

*Shady Grove Orthopedics Assoc., P.A. v. Allstate Ins. Co.,*
  129 S. Ct. 2160 (2009) ..........................................................................................................6

*State of New York v. Cedar Park Concrete Corp.,*
  741 F. Supp. 494 (S.D.N.Y. 1990) .......................................................................................7

*Williams v. Henry Holt and Co.,*
  No. 93-5642, 1994 WL 256696 (S.D.N.Y. June 6, 1994) ......................................................9

*Wong v. Hunda Glass Corp.,*
  No. 09-4402, 2010 WL 2541698 (S.D.N.Y. June 23, 2010) ................................................11

### RULES & STATUTES

Fed. R. Civ. P. 15(a) .....................................................................................................1, 5

NEW YORK LABOR LAW § 196-d ...................................................................................... *passim*

NEW YORK LABOR LAW § 198........................................................................................... *passim*

Defendants Pier Sixty, LLC ("Pier Sixty") and James Kirsch (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion to amend their complaint pursuant to Fed. R. Civ. P. 15(a) to add a new claim for liquidated damages pursuant to New York Labor Law ("NYLL") § 198.

## PRELIMINARY STATEMENT

By virtue of this motion, which was filed long after the close of liability discovery and the adjudication of Defendants' summary judgment motion, Plaintiffs now seek this Court's approval to belatedly amend their complaint to include a claim for liquidated damages of 25% of the amount of unpaid wages found to be due, if any, pursuant to NYLL § 198.1-a in connection with their NYLL § 196-d claim. The record establishes that Plaintiffs could have sought their amendment at least a year earlier when they amended their complaint in September 2009 (the "First Amended Complaint"). Even Plaintiffs concede that, at the very least, they could have sought this amendment before summary judgment. But instead, Plaintiffs intentionally delayed seeking this relief because they decided "it was clearly more practical to first establish that class certification was appropriate and that Defendants were not entitled to summary judgment." The purpose of this tactical delay was plainly to obtain an unfair advantage in the parties' settlement discussions by asserting a meritless, but substantial claim for liquidated damages at this late procedural stage. The result of Plaintiffs' ploy is not surprising: a cessation of the parties' settlement discussions and Defendants having to incur the significant, additional expense involved in opposing this motion (and the additional expense associated with having to file a subsequent motion for summary judgment if this motion is granted, which, for the reasons set forth herein, it should not be).

Not only is Plaintiffs' motion untimely, but, more importantly, it is also substantively baseless. Specifically, in order to prevail, Plaintiffs need to prove that Defendants acted in bad faith or willfully withheld gratuities to which they believed Plaintiffs were entitled. Nothing could be

further from the truth.  As the record unequivocally demonstrates, Defendants always acted in the utmost good faith, scrupulously – and on the advice of counsel – following the clear directive from the New York Department of Labor ("NYDOL") and the courts as to how to deal with service charges in connection with their banquets and events.  Plaintiffs would have this Court believe that their motion to amend is a simple administrative matter to correct a "clerical error," which should be disposed of quickly with little or no attention by this Court.  But that, of course, is also far from the truth.  Indeed, Plaintiffs' newly asserted claim for liquidated damages, by their estimates, would result in an increase in Plaintiffs' potential damages of several millions of dollars.  *See* 1/17/11 Declaration of Seth M. Kaplan ("Kaplan Decl.") ¶ 3.

What is at issue here, however, is much more than one more claim for damages.  In effect, Defendants find themselves like Alice through the looking-glass.  For the past two years, they have had to defend against a lawsuit that accuses them of breaking the law for having conformed their conduct to the decisional law and NYDOL guidance before *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 (N.Y. 2008).[1]  Now, they find themselves having to oppose a deliberately late-filed motion to amend to add a claim for liquidated damages that seeks to penalize them -- and severely so -- notwithstanding their good faith efforts to comply with the law by, among other things:

- consistently adding a 21% or 22% mandatory service charge, paying more than half to Defendants' wait staff so as to provide them hourly compensation that typically ranged between $23 and $26 per hour, a highly-competitive wage by industry standards, and allocating the remaining balance of the service charge to cover other event costs (*see* Def. St. Facts ¶ 18; 1/17/11 Declaration of Douglas Giordano ("Giordano Decl.") ¶ 2);

- consulting on a regular basis with sophisticated labor counsel, and relying on counsel's advice, to develop contractual language that complied with the law,

---

[1]      This case reversed prior case and administrative law and held, for the first time, that a mandatory service charge could be considered a gratuity if a "reasonable patron" was led to believe that the charge was being collected in lieu of a gratuity.  To be clear, for purposes of applying the "reasonable patron" standard articulated in *World Yacht*, the "patron" in the instant case is the person planning the event who books the event, negotiates the contract (often one year in advance of the event taking place), and invites all of the guests.  This is wholly distinct from the "patrons" in *World Yacht* who, in many instances, purchased a single or a small number of non-negotiable tickets to attend dinner cruises as guests, making them both patrons and guests.  10 N.Y.3d at 75.

both before and after *World Yacht* (*see, e.g.*, Def. St. Facts ¶¶ 45-49; Giordano Decl. ¶¶ 4-5);

- charging, collecting and paying New York State sales tax on the *full amount* of the service charge under the contracts still at issue in this lawsuit, which informed patrons (*i.e.*, the person planning and booking the event and negotiating the contract) that the service charge was not a gratuity (*see* Def. St. Facts ¶¶ 41, 49; Giordano Decl. ¶ 3); and

- conducting their business in good-faith reliance upon counsel's advice in light of the long-standing, consistent body of authority for over fifteen years, including state and federal courts (Judge Rakoff) and at least a dozen opinion letters issued by the NYDOL, which stated clearly and consistently that mandatory service charges were not "gratuities" under NYLL § 196-d, and thus did not have to be distributed in full to wait staff (*see* Def. St. Facts ¶¶ 42-43).[2]

These good faith efforts, among countless others, in contrast to the absence of any evidence whatsoever that Defendants' alleged NYLL violations were willful, shows that Plaintiffs' proposed amendment cannot survive as a matter of law and is therefore futile. The provision of NYLL § 198 that provides for liquidated damages and was cited by Plaintiffs in their moving papers only became effective on November 24, 2009 and, by its explicit terms, only applies to conduct commencing on February 22, 2010, a fact that Plaintiffs conveniently ignore in their moving papers. Prior to that time – virtually the entire period in question here – Plaintiffs have the burden of establishing that Defendants' alleged NYLL violations were "willful" in nature. Plaintiffs' brazen attempt to avoid this requirement speaks volumes: far from being willful, Defendants' conduct is literally a paradigm of propriety.

The proposed amended complaint – and the record for that matter – is simply devoid of any allegation that Defendants engaged in the type of bad-faith conduct constituting willful violations of the NYLL like those alleged in the *World Yacht* case. These cases could not be more different:

- In *World Yacht*, the defendants were alleged to have "told inquiring customers that the 20% service charge is remitted to defendants' wait staff as the gratuity,

---

[2] In light of the sudden and substantial influx of unpaid service charge lawsuits only after *World Yacht* was decided, it is, quite frankly, difficult to comprehend how Plaintiffs could allege that Defendants acted willfully or in bad faith for failing to comply with purportedly well-settled law.

but then failed to distribute *any* amount of the service charge to their waitstaff," and instead converted it for their own use. 10 N.Y.3d at 75 (emphasis added). In contrast, Defendants here have a long-history of paying substantial portions of the service charge to their banquet wait staff. *See* Def. St. Facts ¶ 18; Giordano Decl. ¶ 2;

- While the defendants in *World Yacht* failed to charge sales tax on the service charge and thus demonstrated their belief that the service charge was a gratuity (10 N.Y.3d at 75), the exact opposite is true here. Defendants always fully taxed the "service charge" thus demonstrating to their patrons (*i.e.*, the individuals booking and planning the events) that they did not believe it was a gratuity. *See* Def. St. Facts ¶¶ 41, 49; Giordano Decl. ¶ 3. As *World Yacht* recognized, a defendant's tax treatment of service charges is an important factor in determining whether a service charge is a gratuity, and it is the most conclusive evidence of Defendants' good faith here (10 N.Y.3d at 80) ("Plaintiffs should be entitled to show defendants' tax treatment of the charges since charges that are treated as gratuities for tax purposes could also be represented to patrons as being gratuities as well."); and

- While there is no evidence that the defendants in *World Yacht* even tried to comply with the law, Defendants here repeatedly modified their contract language regarding the "service charge" in consultation with and upon the advice of counsel, each time following the directives of the NYDOL. *See, e.g.*, Def. St. Facts ¶¶ 45-49; Giordano Decl. ¶¶ 4-5.[3]

Under the circumstances, permitting Plaintiffs leave to amend to add a claim for millions of dollars of liquidated damages at this late stage would be profoundly unjust. Defendants in this case, in stark contrast to the defendants in *World Yacht*, did not act with disregard for either the law or their employees and acted neither willfully nor in bad faith. To the contrary, the record firmly establishes that Defendants assiduously and faithfully sought to comply with the law in complete good faith.[4] Accordingly, Plaintiffs' belated motion to amend should be denied.

---

[3]    Nothing in the Court's summary judgment order supports even an inference of bad faith on Defendants' part. While the Court referenced a "well-advertised no-tipping policy" in its summary judgment order (Order at 13), to the extent that it relied on an assumption that signs were posted throughout Defendants' banquet space, that is incorrect. Rather, only one small sign was posted by the coat-check. *See* Giordano Decl. ¶ 6. The reasonable patron at issue in this case (*i.e.*, the person booking and planning the event) would not have seen that sign at the time he or she entered into the contract nearly one year prior to the event; rather, the sign is directed at the guests invited to attend the event who checked coats. This one sign certainly cannot support an argument that Defendants willfully disregarded the law here, as it is not even relevant to Defendants' patron's understanding of the service charge.

[4]    In fact, a recent op-ed in the NEW YORK TIMES highlights how "it defies common sense to think that so many of the city's most respected restaurateurs have intentionally cheated their waiters – and continue to do so despite the

-4-

## ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint shall be freely given *"when justice so requires."* Fed. R. Civ. P. 15(a)(2) (emphasis added). However, as this Court has emphasized, "'there is a difference between freedom and license.'" *Nanopierce Tech., Inc. v. Southridge Capital Mgmt.*, No. 02-0767, 2008 WL 1882702, at *3 (S.D.N.Y. Apr. 21, 2008) (Sand, J.) (quoting *CL-Alexanders Lading & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 167 (S.D.N.Y. 1990)) (denying plaintiff's motion to amend in the interest of justice). Whether to grant or deny leave to amend is within the district court's discretion, and courts have "interpreted Rule 15 to permit such amendments *only when* (1) the party seeking the amendment has not unduly delayed, (2) when the party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile." *Dellefave v. Access Temporaries, Inc.*, No. 99-6098, 2001 WL 25745, at *9 (S.D.N.Y. Jan. 10, 2001) (citations omitted) (emphasis added).

Justice would not be served in this case by granting Plaintiffs' eleventh-hour motion to amend. Not only is Plaintiffs' proposed amended complaint untimely – having been deliberately filed after the close of liability discovery and well after this Court issued its decision on Defendants' motion for summary judgment – but it also, more importantly, utterly fails to set forth a viable claim for liquidated damages, and is therefore futile.

## I.   PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED IN LIGHT OF PLAINTIFFS' UNDUE DELAY AND BAD FAITH, DILATORY MOTIVE

As this Court has emphasized, a motion for leave to amend "'made after discovery has been completed and a motion for summary judgment has been filed,'" is "'particularly disfavored because of the resultant prejudice to defendant.'" *Nanopierce*, 2008 WL 1882702, at *3 (quoting

---

threat of costly lawsuits that could drive them out of business." Kaplan Decl., Exh. A (Tim & Nina Zagat, *Adding Fairness to the Tip*, N.Y. TIMES, Dec. 13, 2010).

*Ansam Assoc. Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)); *see also Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (affirming denial of motion to amend filed after summary judgment motion had been decided); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial

an opposition to defendant's motion for summary judgment because defendant would otherwise "be prejudiced by plaintiffs' inordinate delay"); *EEOC v. Home Ins. Co.*, 553 F. Supp. 704, 706 (S.D.N.Y. 1982) (Sand, J.) (denying motion to amend to add claim for liquidated damages in a wage and hour action where motion was filed after summary judgment motion had been decided). The burden is on "the party who wishes to amend to provide a satisfactory explanation for the delay." *Creswell*, 922 F.2d at 72. Plaintiffs have offered no justifiable explanation excessive delay in filing their motion to amend at this late stage in the proceedings.

Plaintiffs' first proffered reason for not having moved to amend earlier is their claim that they "could not have included a claim for liquidated damages in the First Amended Complaint because that was filed prior to *Shady Grove*," which the United States Supreme Court decided on March 31, 2010. Plaintiffs' Brief in Support of Motion to Amend Complaint ("Pl. Br.") at 3; *Shady Grove Orthopedics Assoc., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010). Yet, Plaintiffs conveniently ignore the fact that the Supreme Court granted *certiorari* in the *Shady Grove* case on the issue of whether plaintiffs could seek statutory "penalties" in federal class actions brought under New York state law on May 4, 2009, almost five months before Plaintiffs filed their First Amended Complaint on September 25, 2009 and almost two years before filing the instant motion. *See* 549 F.3d 137 (2d Cir. 2008), *petition for cert. granted*, 129 S. Ct. 2160 (2009). Following the grant of *certiorari*, many other plaintiffs filed complaints in this District expressly reserving their right to add a claim for liquidated damages pending the outcome of the *Shady Grove* case. *See, e.g.*, Kaplan Decl., Exh. B (attaching complaints filed

-6-

*v. N.S. West 56th Street LLC* (10-civ-02692); and *Liwanag v. Exec. Club LLC* (10-civ-01145)). Yet, Plaintiffs filed their First Amended Complaint, specifically disavowing any claim for liquidated damages, five months after *certiorari* was granted in *Shady Grove*. *See* Docket No. 16, ¶ 45 (expressly stating that Plaintiffs "do not seek liquidated damages"). Plaintiffs affirmatively chose to wait to amend until after the parties finished extensive liability discovery on February 5, 2010, briefing on Defendants' motion for summary judgment on May 17, 2010, and this Court's summary judgment order on July 27, 2010.[5] Plaintiffs' failure to do so constitutes undue delay as a matter of law. *See State of New York v. Cedar Park Concrete Corp.*, 741 F. Supp. 494, 497 (S.D.N.Y. 1990) (denying motion to amend that was not filed until after a controlling case was issued because, prior to that case, the issue addressed in the controlling case "remained an open question" and "had already been the subject of on-going litigation").

Plaintiffs' next proffered justification for not seeking to amend their complaint earlier is that from the time *Shady Grove* was decided (March 2010) until mid-October 2010, the parties were engaged in "extensive motion practice related to class certification and summary judgment," implying that it would have been too onerous for Plaintiffs to do so. Pl. Brf. at 4. This is an absurd excuse, as reflected on the face of their redlined copy of the proposed amended complaint, which shows that all Plaintiffs did was add a single 11-word clause to paragraph 44. *See* Declaration of Denise Schulman ("Schulman Decl.") ¶ 6, Exh. 1. Moreover, that Plaintiffs' counsel apparently had the time to file *at least nine other* class action complaints in which they asserted claims for liquidated damages under NYLL § 196-d since *Shady Grove* was decided – but not to add eleven words to this one – underscores the absurdity of their proffered justification. *See* Kaplan Decl., Exh. C (attaching complaints filed in *Bueno v. Morimoto, Inc.* (10-civ-06467); *Chowdhury v.*

---

[5]      Moreover, Plaintiffs waited over five months after *Shady Grove* was decided, well after the close of liability discovery, to even seek Defendants' consent to amend their complaint to add a claim for liquidated damages. Again, Plaintiffs fail to proffer any justifiable, let alone logical, reason for this delay.

*Cosmic Group LLC* (10-civ-05725); *Delaney v. Geisha NYC, LLC* (09-civ-01458); *Gilliam v. Starjem Rest. Corp.* (10-civ-06056); *Jacob v. Prana Hospitality, Inc.* (10-civ-06468); *Kazas v. Abigail Kirsch at Stage Six, LLC* (10-civ-03972); *O'Connor v. Inst. of Culinary Educ.* (10-civ-07239); *Sandoval v. Steven Jay, LLC* (10-civ-03791); *Silva v. Little Fish, Corp.* (10-civ-07801)).[6]

Plaintiffs' final attempt to justify their excessive delay is a shocking – and dispositive – admission, namely that they affirmatively decided not to file the instant motion from the time *Shady Grove* was decided until mid-October 2010, because they, for some undisclosed reason, decided that "it was clearly more practical to first establish that class certification was appropriate and that Defendants were not entitled to summary judgment." Pl. Brf. at 4. Putting aside the fact that there is no logic in waiting until well after the close of liability discovery and months after this Court decided Defendants' summary judgment motion in July to seek to amend, that Plaintiffs admit to having made a deliberate, strategic decision not to seek to amend their complaint before summary judgment reflects a fundamental disregard for the fairness to Defendants and the Court, and underscores Plaintiffs' bad faith, dilatory motives.[7] *Id.* Such tactics alone warrant the denial of Plaintiffs' motion to amend. *See Johnson v. Methodist Med. Ctr.*, 10 F.3d 1300, 1303-04 (7th Cir. 1993) (affirming denial of leave to amend where plaintiff's attorney was aware of potential new claim but made strategic decision not to file an amended complaint prior to summary judgment); *In re Urethane Antitrust Litig.*, No. 04-1616, 2007 WL 1424327, at *3 (D. Kan. May 14, 2007) (denying motion for leave to amend complaint where "plaintiffs made a deliberate and calculated –

---

[6]     Plaintiffs also curiously argue that "there has been no 'undue delay'" because Defendants' counsel agreed that if Plaintiffs' counsel subsequently filed the instant motion after settlement discussions, Defendants would not argue that the time during which the parties were engaging in settlement discussions constituted additional undue delay on top of the almost half a year that the Plaintiffs waited after *Shady Grove* was decided to even make a request of Defendants to amend their complaint. *See* Pl. Brf. at 4.
[7]     Indeed, had Plaintiffs not engaged in such a purposeful delay, the parties could have far more easily and efficiently resolved the issue of whether Plaintiffs have sufficient grounds to pursue a claim for liquidated damages during the summary judgment proceedings. Instead, because Plaintiffs purposely waited until well after Defendants' summary judgment motion was decided, Defendants now must engage in additional motion practice by opposing the instant motion to amend.

that is, strategic – decision" to delay filing their motion to amend and noting that the court was "highly unimpressed" with plaintiffs' argument that they delayed filing their motion to amend so the parties could "focus [ ] on the class certification process").  Simply put, Plaintiffs could have and should have sought to amend their complaint to add a claim for liquidated damages earlier. Plaintiffs have utterly failed to meet their burden of demonstrating a valid reason for their delay in seeking leave to amend, and by their own admission deliberately decided to wait to do so, and their Motion should be denied.

## II.   PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED BECAUSE IT WOULD RESULT IN SUBSTANTIAL PREJUDICE TO DEFENDANTS

Plaintiffs' unjustifiable delay in filing the instant motion has unduly prejudiced Defendants. In their moving papers, Plaintiffs emphasize that the parties were engaged in extensive discovery and summary judgment motion practice, which, in fact, underscores the prejudice to Defendants here:  namely, that they were deprived of the opportunity to address Plaintiffs' proposed new claim for liquidated damages in conjunction with such proceedings.  Plaintiffs' decision to delay until after Defendants' summary judgment motion had been fully adjudicated to seek to add a claim for liquidated damages both (i) disproves their claim that this motion merely "corrects" clerical errors; and (ii) has caused Defendants to incur the significant expense of additional (and unnecessary) motion practice in opposing this belated request.  Pl. Br. at 4.  Additionally, if the Court were to grant Plaintiffs' motion to amend – which it should not – Defendants would have to seek judgment dismissing the claim.  This is precisely the type of prejudice that warrants the denial of a motion for leave to belatedly add a claim for enhanced damages.  *See Williams v. Henry Holt and Co.*, No. 93-5642, 1994 WL 256696, at *3 (S.D.N.Y. June 6, 1994) (denying motion to amend pleading to add a claim for punitive damages after the close of discovery because, among other reasons, defendants would be "substantially prejudiced" by "potentially having to move to dismiss the punitive damage claim").

Moreover, putting aside the fact that Plaintiffs' claim for liquidated damages is entirely meritless, Plaintiffs' delay in filing the instant motion has enabled Plaintiffs to use their potential claim for liquidated damages as unfair leverage in the parties' settlement negotiations. Had the Court been able to determine whether Plaintiffs were entitled to seek liquidated damages in conjunction with their NYLL claim earlier, there would have been significantly less ambiguity at this late procedural stage regarding the potential damages at stake in this case, which are already substantial even in the absence of a new multi-million dollar liquidated damages claim. *See Hutton Construction Co. v. County of Rockland*, No. 87-4027, 1993 WL 118511, at *3 (S.D.N.Y. Apr. 13, 1993) (denying motion to amend pleading to add additional counter-claim because, among other reasons, plaintiff's "position during settlement discussions would be prejudiced" if granted).

## III.   PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT TO ADD A CLAIM FOR LIQUIDATED DAMAGES SHOULD BE DENIED AS FUTILE

As an initial matter, while Plaintiffs correctly state in their moving papers that, under the current version of NYLL § 198, a prevailing party may be entitled to an award of liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law" (NYLL § 198.1-a), this standard only applies to offenses which occurred on or after February 22, 2010. *See* Kaplan Decl., Exh. D; 2009 Sess. Law News of N.Y. Ch. 372 (A. 6963) (McKinney's).[8] Prior to February 22, 2010, the NYLL provided that plaintiffs could only obtain liquidated damages "upon a finding that the employer's failure to pay the wage required by [§ 198] was willful." *See* Kaplan Decl., Exh. E; NYLL § 198.1-a (1997) (amended 2009).[9] In making such a determination, a plaintiff must "produce evidence sufficient to establish

---

[8]     The statutory amendment to NYLL § 198 became law on November 24, 2009 and the provisions thereof became effective 90 days later, on February 22, 2010. *Id.* By its very terms, the new standard for obtaining liquidated damages under NYLL § 198 only applies to "offenses committed on or after" February 22, 2010. *Id.* Thus, Defendants' burden of establishing a "good faith" defense to any alleged NYLL violations, which is easily met here, would *only* be applicable to events that occurred on or after February 22, 2010.

[9]     Accordingly, courts in this District have consistently and repeatedly applied the former "willful" standard for alleged misconduct that occurred prior to February 22, 2010. *See, e.g., Alejo v. Darna Rest.*, No. 09-5436, 2010 WL

-10-

willfulness that would entitle him to liquidated damages under New York law." *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 327 (S.D.N.Y. 2001) (citation omitted); *see also Aguilar v. E-Z Supply Corp.*, No. 06-6790, 2008 WL 905224, at *5 (E.D.N.Y. Mar. 31, 2008). "A willful violation occurs when 'the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages.'" *Gustafson*, 171 F. Supp. 2d. at 327 (citation omitted). For the reasons set forth below in greater detail, Plaintiffs have failed to allege any facts whatsoever to support their contention that Defendants "willfully" violated the NYLL. As a result, Plaintiffs cannot meet the minimum pleading standard to state a cause of action, and their motion to amend to add a claim for liquidated damages must be denied as futile.

"Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed complaint fails to state a claim, the traditional Fed. R. Civ. P. 12(b) standard." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009) (citation omitted). In this regard, it is well-settled that a plaintiff must plead facts which are "more than labels and conclusions," and which are specific enough "to raise a right to relief above the speculative level" in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Aniero Concrete Co. v. New York City Constr. Auth.*, No. 94-3506, 2000 WL 863208, at *29 (S.D.N.Y. June 27, 2000) (holding that plaintiff seeking to amend its complaint "cannot satisfy the pleading standard merely by talismanically attaching legal conclusions to [defendant's] behavior where there are no facts asserted to support such a characterization"). Accordingly, any motion for leave to amend a complaint to add claims for enhanced damages must be denied as a matter of law where the

---

5249383, at *5 n.8 (S.D.N.Y. Dec. 17, 2010) (applying former "willful" standard to determine availability of liquidated damages under NYLL for alleged conduct that took place before February 22, 2010); *Cao v. Wu Liang Ye Lexington Rest.*, No. 08-3725, 2010 WL 4159391, at *6 (S.D.N.Y. Sept. 30, 2010) (same); *Dreyfuss v. Etelecare Global Solutions-US, Inc.*, No. 08-1115, 2010 WL 4058143, at *5 (S.D.N.Y. Sept. 30, 2010) (same); *Wong v. Hunda Glass Corp.*, No. 09-4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010) (same).

proposed complaint is devoid of any specific factual assertions to support such a claim.[10]

Here, Plaintiffs have failed to allege any facts whatsoever to support their contention that Defendants "willfully" violated the NYLL.  Prior versions of the complaint – as well as their proposed amended complaint – merely contain the conclusory assertion that Defendants violated the NYLL "knowingly, intentionally, and willfully."  *See* Schulman Decl., Exh. 1, ¶ 36; Exh. 2, ¶ 36. This is not sufficient to carry Plaintiffs' burden of establishing that Defendants' alleged NYLL violations were "willful," and Plaintiffs' motion to amend the complaint must be denied as futile for this reason alone.

Moreover, given the tardiness of Plaintiffs' filing, the factual record is fully developed and it is simply devoid of any evidence that any alleged violation of the NYLL was "willful" in nature. Indeed, it is quite telling that, despite the fact that liability discovery has long since closed and Plaintiffs admittedly conducted all necessary discovery regarding Defendants' intent (*see* Pl. Brf. at 4), Plaintiffs have failed to cite *any* record evidence or allege *any* specific facts in their proposed amended complaint that would give rise to a finding of "willful" misconduct by Defendants or otherwise support a claim for liquidated damages.

Critically, and dispositively, the record indisputably shows that Defendants – at all times – acted in good faith to comply with the applicable wage and hour laws.  Prior to the *World Yacht* decision, Defendants kept abreast of the current state of the law regarding "service charge" payments under NYLL § 196-d by, among other things, maintaining the NYDOL's June 1, 1995 Inter-Office Memorandum on file, in which the NYDOL clearly stated its position that:

> Effective immediately, *service charges will not be considered gratuities*. Service charges will be considered part of the gross receipts of the

---

[10]     *See Aniero Concrete Co.*, 2000 WL 863208, at *29 (refusing to permit plaintiffs to add a claim for punitive damages where their allegations consisted of nothing more than "general and conclusory statements about [defendant's] 'reckless' 'negligent' and 'willful' conduct"); *see also Boyce-Idlett v. Verizon Corporate Serv. Corp.*, No. 06-975, 2007 WL 2589445, at *8 (S.D.N.Y. Aug. 30, 2007) (denying plaintiff's motion to amend complaint to add a hostile work environment claim on futility grounds because plaintiff only made "a conclusory allegation" regarding same and failed to "supply[] any specific facts to support that claim").

> employer, and may be incorporated as part of the employer's wage
> obligation to employees. *A service charge is not required to be distributed
> to employees.*

*See* Def. St. Facts ¶ 43 (emphasis added); Pl. St. Facts ¶ 43.  Following the advice of experienced

legal counsel, Defendants relied in good faith upon this and other related authority, including state

and federal court decisions that plainly stated that the law was clear that a service charge did not

constitute a "gratuity," in determining that they were in compliance with NYLL § 196-d.  *See* Def.

St. Facts ¶ 42; Pl. St. Facts ¶ 42; Giordano Decl. ¶ 4.  Moreover, critically, and in sharp contrast to

the defendants in *World Yacht*, as stated above, Defendants charged, collected, and paid sales tax on

the service charges, which perhaps is the most conclusive evidence of Defendants' good-faith belief

that such charges did not constitute gratuities – since gratuities are *not* subject to sales tax.  *See* Def.

St. Facts ¶¶ 41, 49.

     In addition, immediately after the *World Yacht* decision issued, as always, in consultation

with and on the advice of counsel, Defendants again modified their contract language (Form

Contract Two), expressly setting forth and distinguishing between the portion of the service charge

to be distributed to the service staff and the portion to be retained by Pier Sixty.  *See* Def. St. Facts

¶¶ 45-46; Pl. St. Facts ¶¶ 45-46; Giordano Decl. ¶ 5.  Notably, in its decision on Defendants'

summary judgment motion, this Court explicitly held that Form Contract Two satisfied the

requirements of NYLL § 196-d and the *World Yacht* decision as a matter of law, further

underscoring Pier Sixty's good-faith conduct.  *See* Order at 14.[11]  Additionally, after this Court

---

[11]     After conferring with its counsel, Pier Sixty yet again amended its contract language to Form Contract Three in August 2008.  *See* Def. St. Facts ¶¶ 48-49; Pl. St. Facts ¶¶ 48-49; Giordano Decl. ¶ 5.  In order to ensure that no "reasonable customer" would believe that the service charge was, or purported to be, a "gratuity," Pier Sixty explicitly stated in Form Contract Three that "*[t]he service charge is not a gratuity* and is used to cover personnel, administrative, or other costs." *See* Def. St. Facts ¶ 49 (emphasis added); Pl. St. Facts ¶ 49.  Indeed, notwithstanding the fact that this Court denied Pier Sixty summary judgment on the events held under Form Contract Three, the fact that Pier Sixty made this modification *specifically* to avoid client confusion over the nature of the service charge – the very purpose of the newly enunciated standards set forth in the *World Yacht* decision – only further demonstrates that Defendants have acted in good faith at all times.

issued its order denying Defendants summary judgment with respect to the events held under Form Contract Three, Pier Sixty modified its contract language *yet again* after consulting with its counsel to comply with the guidelines set forth in the Order. *See* Order at 12-13; Giordano Decl. ¶ 5. On or about August 30, 2010, Pier Sixty adopted a new form contract that, among other things, identifies a newly designated "Banquet Staff Fee" that is distributed in full to the service staff, and a separate and distinct "Administrative Fee" that is retained by Pier Sixty and is "intended to cover ancillary operating expenses associated" with the customer's event. Giordano Decl. ¶ 5, Exh. A.

In light of the above, Plaintiffs have not – and indeed cannot – adequately plead a claim for liquidated damages under the NYLL's "willful" standard in effect prior to February 22, 2010. Defendants' repeated and continuing efforts to ensure that its contract language was in compliance with the law based on the most recent applicable administrative and judicial authority available at the time conclusively and indisputably establishes that Defendants had a "good faith basis to believe that [their alleged] underpayment of wages was in compliance with the law" (NYLL § 198), and that Plaintiffs should therefore be precluded from pursuing a claim for liquidated damages after the February 22, 2010 effective date of the statutory amendment to NYLL § 198 on such grounds. Defendants respectfully request that the Court deny Plaintiffs' motion for leave to amend their complaint with prejudice.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court deny Plaintiffs' motion to amend.

Dated: New York, New York
      January 17, 2011

**FOX ROTHSCHILD LLP**

By: _____

Carolyn D. Richmond, Esq.
Seth M. Kaplan, Esq.
100 Park Avenue, Suite 1500
New York, New York 10017

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**

By: _____

Douglas H. Flaum, Esq.
Lisa H. Bebchick, Esq.
One New York Plaza
New York, New York 10004

*Counsel for Defendants
Pier Sixty, LLC and James Kirsch*

7966104

-15-