UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------ x
CELESTE SPICER, AUTUMN BURGESS, AMY LEDIN,       :
JOSEPH RUSSO, ESTHER MARTINEZ, LYSETTE           :
ROMAN, and SERENA SIYING HUI, on behalf of       :
themselves and others similarly situated,        :
                                                 :    08 Civ. 10240 (PAE)
                                Plaintiffs,       :
                                                 :    ECF CASE
                                                 :
                     - v. -                       :
                                                 :
                                                 :
PIER SIXTY, LLC and JAMES KIRSCH,                :
                                                 :
                                Defendants.       :
------------------------------------------------------------------ x
```

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM FOR LIQUIDATED DAMAGES

FRIED, FRANK, HARRIS, SHRIVER &
    JACOBSON LLP
Douglas H. Flaum, Esq.
Lisa H. Bebchick, Esq.
One New York Plaza
New York, New York 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000

FOX ROTHSCHILD LLP
Carolyn D. Richmond, Esq.
Eli Z. Freedberg, Esq.
100 Park Avenue, Suite 1500
New York, New York 10017
Phone:  (212) 878-7900

*Counsel for Defendants Pier Sixty, LLC and James Kirsch*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 5

ARGUMENT ........................................................................................................................... 12

I.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFFS' LIQUIDATED DAMAGES CLAIM UNDER NYLL § 198(1-a) ........... 13

        A.      Plaintiffs Cannot Demonstrate That Defendants Willfully Violated
The Law .......................................................................................................... 15

        B.      There Is No Genuine Issue Of Material Fact As To Defendants'
Good Faith ...................................................................................................... 19

CONCLUSION ........................................................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aguilar v. E-Z Supply Corp.*, No. 06-CV-6790,
 2008 WL 905224 (E.D.N.Y. Mar. 31, 2008) .......................................................................16

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ...........................................................................................................17

*Auscape Int'l v. Nat'l Geographical Society*,
 461 F. Supp. 2d 174 (S.D.N.Y. 2006) ...............................................................................13

*Bauin v. Feinberg*, No. 11568/04,
 2005 N.Y. Misc. LEXIS 475 (N.Y. Civ. Ct. N.Y. Cty. Mar. 18, 2005) .................................14

*Bynog v. Cipriani Group, Inc.*,
 748 N.Y.S.2d 9 (N.Y. App. Div. 1st Dep't 2002) ...................................................................9

*Dziennik v. Sealift, Inc.*, No. 05-CV-4659,
 2010 WL 1191993 (E.D.N.Y. Mar. 26, 2010) ................................................................18, 19

*Featsent v. City of Youngstown*,
 70 F.3d 900 (6th Cir. 1995) ................................................................................................20

*Goenaga v. March of Dimes Birth Defects Foundation*,
 51 F.3d 14 (2d Cir. 1995) ...................................................................................................13

*Gustafson v. Bell Atlantic Corp.*,
 171 F. Supp. 2d 311 (S.D.N.Y. 2001) .....................................................................16, 17, 22

*Howard v. Port Authority of N.Y. & N.J.*,
 684 F. Supp. 2d 409 (S.D.N.Y. 2010) .....................................................................15, 18, 20

*Hysell v. Mercantile Stores Co.*,
 736 F. Supp. 457 (S.D.N.Y. 1989) .....................................................................................15

*James v. Wash Depot Holdings, Inc.*,
 463 F. Supp. 2d 1369 (S.D. Fla. 2006) ..............................................................................19

*Ke v. Saigon Grill, Inc.*,
 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ................................................................................14

*Kuebel v. Black & Decker (U.S.) Inc.*, No. 08-CV-6020,
 2009 WL 1401694 (W.D.N.Y. May 18, 2009) ...............................................................20, 21

**TABLE OF AUTHORITIES (Cont.)**

Page(s)

*Kuebel v. Black & Decker (U.S.) Inc.*, No. 08-CV-6020,
    2010 WL 1930659 (W.D.N.Y. May 12, 2010) ....................................................................12

*Lanzetta v. Florio's Enterprises, Inc.*,
    763 F. Supp. 2d 615 (S.D.N.Y. 2011) ............................................................................22

*Locke v. St. Augustine's Episcopal Church*,
    690 F. Supp. 2d 77 (E.D.N.Y. 2010) ......................................................................12, 17, 19

*Lu v. Jing Fong Restaurant, Inc.*,
    503 F. Supp. 2d 706 (S.D.N.Y. 2007) .............................................................................1, 9

*New Sensor Corp. v. CE Distribution LLC*,
    121 F. App'x 407 (2d Cir. 2004) ...................................................................................17

*Reilly v. NatWest Markets Group, Inc.*,
    181 F.3d 253 (2d Cir. 1999) .........................................................................................14

*Said v. SBS Electronics, Inc.*, No. CV 08-3067,
    2010 WL 1265186 (E.D.N.Y. Feb. 24, 2010) ................................................................16

*Samiento v. World Yacht, Inc.*,
    10 N.Y.3d 70 (2008) ......................................................................................... *passim*

*Strohl v. Brite Adventure Center, Inc.*, No. 08 CV 259,
    2010 WL 3236778 (E.D.N.Y. Aug. 13, 2010) ................................................................15

*Weinberg v. D-M Restaurant Corp.*,
    53 N.Y.2d 499 (1981) ......................................................................................................1

*Winans v. Starbucks Corp.*, No. 08 Civ. 3734,
    --- F. Supp. ----, 2011 WL 2693172 (S.D.N.Y. July 11, 2011) ......................................18

**STATUTES & LEGISLATIVE HISTORY**

Fed. R. Civ. P. 56 .................................................................................................................1, 12

29 U.S.C. § 255 ........................................................................................................................14

29 U.S.C. § 260 ........................................................................................................................20

New York Labor Law § 196-d ..................................................................................... *passim*

New York Labor Law § 198 ........................................................................................ *passim*

## <u>TABLE OF AUTHORITIES (Cont.)</u>

<u>Page(s)</u>

2009 Sess. Law News of N.Y. Ch. 372 (A. 6963) ........................................................................13

### <u>OTHER AUTHORITIES</u>

Isabel Vincent and Melissa Klein, *Money-Grub 'tip' suits driving eateries out of business*, N.Y. POST, Sept. 25, 2011 ........................................................................3

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Pier Sixty, LLC

("Pier Sixty") and James Kirsch respectfully submit this memorandum of law in support of their

motion for partial summary judgment on Plaintiffs' claim for liquidated damages under New

York Labor Law ("NYLL") § 198(1-a).

## PRELIMINARY STATEMENT

"'A tip is in law, if not always in fact, a voluntary payment.'"

> -- Court of Appeals of New York in *Weinberg v. D-M Restaurant Corp.*, 53
>    N.Y.2d 499, 507 (1981) (citations omitted).

"Effective immediately, service charges will not be considered gratuities.  Service charges will be considered part of the gross receipts of the employer, and may be incorporated as part of the employer's wage obligation to employees. A service charge is not required to be distributed to employees."

> -- Richard Polsinello, Director, New York Department of Labor, in a
>    June 1, 1995 Statewide Inter-Office Memorandum.

"In this Court's view, this is not an open question under New York law.  Rather, New York courts have repeatedly held that, with respect to mandatory services charges in the restaurant industry, '[s]uch a charge is not in the nature of a voluntary gratuity presented by the customer in recognition of the waiter's service, and therefore need not be distributed to the waiters pursuant to *Labor Law § 196-d*, notwithstanding that the customer might believe that the charge is meant to be so distributed.'"

> -- United States District Judge Jed S. Rakoff in *Lu v. Jing Fong Restaurant,*
>    *Inc.*, 503 F. Supp. 2d 706, 710 (S.D.N.Y. 2007) (citations omitted).

"We hold that the statutory language of *Labor Law § 196-d* can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees."

> -- Court of Appeals of New York in *Samiento v. World Yacht Inc.*,
>    10 N.Y.3d 70, 81 (Feb. 14, 2008).

*     *     *

This is a case where Defendants Pier Sixty and James Kirsch have repeatedly asked

themselves, what more could we have done to have prevented this lawsuit?  And, despite the fact

that Plaintiffs have asserted that they are entitled to tens of millions of dollars in damages, as

well as a claim for millions more in liquidated damages that is the subject of the instant motion,

the answer Defendants keep coming up with is that had the NYDOL Commissioner or Judge Rakoff been managing Pier Sixty, it is clear that neither would have done anything different than Pier Sixty did here.  That is because, at inception, Pier Sixty retained and sought counsel from highly-sophisticated, expert labor and employment law counsel – among the best in the country – and scrupulously followed its counsel's advice at all times.  Simply put, Defendants did everything in their power to comply with existing law, and there is absolutely no support in the record for an award of liquidated damages in this case.

Defendants could not have predicted the dramatic change in the law regarding mandatory service charges that occurred when the New York Court of Appeals in 2008 decided *Samiento v. World Yacht, Inc*., 10 N.Y.3d 70 (Feb. 14, 2008) ("*World Yacht*"), which held for the first time that a mandatory service charge *could be* considered a gratuity under NYLL § 196-d if the expectation of a "reasonable customer" was that the charge was being collected in lieu of a gratuity.  Yet, Defendants, who have impeccable reputations in the banquet and catering industry and the wider business community, now find themselves in an alternate reality, defending against claims that they violated § 196-d by misleading their customers and converting the service charge for their own purposes and facing retroactive liability going back six years from the filing of the lawsuit, during which time the New York Department of Labor ("NYDOL") and state and federal courts repeatedly told employers in no uncertain terms that mandatory service charges did *not* constitute gratuities within the meaning of § 196-d.

That *World Yacht* was a dramatic change in the law is evidenced by the fact that a wave of lawsuits just like this one flooded the federal courts only after it was decided, creating a cause of action for plaintiffs' lawyers against employers who had been doing precisely what the NYDOL and the courts had been telling them to do repeatedly for years.  (By way of example

only, Plaintiffs' counsel – who has boasted to the press that he "invented this business" – brought no § 196-d cases where the predominant claim was to recover service charges before *World Yacht* and at least sixteen beginning the day after *World Yacht* was decided through August 20, 2010).[1]

While Plaintiffs tried in discovery to elicit evidence supporting their specious claim to millions of dollars in liquidated damages, they found no support, which is not surprising because none exists.  To the contrary, the record demonstrates that Pier Sixty attempted in good faith at all times to comply with the law by, among other things:

- Retaining, consulting with on a regular basis, and assiduously relying upon the advice of sophisticated labor and employment counsel from inception and both before and after the *World Yacht* decision, including advice regarding its contract language and training of its sales staff;

- Conducting its business in good-faith reliance upon counsel's advice in light of the long-standing, consistent body of authority, including state and federal courts and at least a dozen opinion letters issued by the NYDOL, which stated clearly and consistently that mandatory service charges were not gratuities under NYLL § 196-d, and thus did not have to be distributed in full to banquet servers;

- Keeping on file and relying upon materials from the NYDOL, as well as the New York State Department of Taxation and the New York State Restaurant Association, all of which instructed that mandatory service charges need not be distributed to servers under NYLL § 196-d;

- Never referring to the mandatory service charge in its customer contracts as a "tip" or "gratuity;"

- Always telling its servers – *i.e.* the Plaintiffs – exactly what portion of the mandatory service charge it was remitting to the servers and what portion was being retained to offset other event expenses; and

---

[1]     Declaration of Lisa H. Bebchick in Support of Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claim for Liquidated Damages, dated November 9, 2011 ("Bebchick Decl."), Ex. 42 (Isabel Vincent and Melissa Klein, *Money-Grub 'tip' suits driving eateries out of business*, N.Y. POST, Sept. 25, 2011, at 2) ("'I invented this business,' said Kirschenbaum, a Manhattan lawyer who has launched more than 100 [wage and hour] suits in federal court . . . ."); *see also* Defendants' Rule 56.1 Statement of Material Undisputed Facts in Support of Motion for Partial Summary Judgment on Plaintiffs' Claim for Liquidated Damages ("Def. St. Facts"), dated November 9, 2011, ¶ 22.

- Always charging, collecting, and paying New York State sales tax on the full amount of the service charge (which tax would not have been charged on gratuities), indicating to customers that the service charge was not a gratuity, and proving that this was what Defendants believed.

Thus, far from being willfully misleading or marked by bad faith, Defendants' conduct is literally a paradigm of propriety. This is in stark contrast to the defendants in *World Yacht*, who were alleged to have deliberately told their customers that the 20% service charge was for their waitstaff but then used *none* of it for them, instead converting the service charge for their own use and failing to charge a sales tax on it. Moreover, there is nothing in *World Yacht* that even suggests that the defendants there attempted to comply with the law, which is the polar opposite of Defendants in this case. Indeed, when asked whether it was, in fact, his belief that even if the Court were to find that Pier Sixty unlawfully retained gratuities that Plaintiffs would still not be entitled to liquidated damages, Defendant James Kirsch, answered as follows, and explained why he believed that Plaintiffs would not be entitled to liquidated damages:

> I want to be very clear, that I've been in the catering business my whole life, and it is my life, it's my family business. And my whole life we've done everything we can to run our business consistent with the law, and we've done a tremendous amount of things to ensure that we do that proactively. The basis of which is employing experts such as labor counsel, accountants and other professional resources to give us guidance to follow the law to the best of our ability.
>
> We do the right thing as a company, and we would never, ever, ever do anything to damage our reputation or hurt the people that work with us or our customers, because it's our life's work and we do the right thing. And we do it in many different ways.
>
> So I would not believe – I do not believe we have or will ever do anything willfully or in any way to hurt anyone.

Bebchick Decl., Ex. 6 (3/30/11 Deposition of James Kirsch at 7:18-20, 8:1-23). The record overwhelmingly supports the conclusion that Defendants comported themselves with the utmost good faith at all times, and the Court should grant Defendants' motion for partial summary

judgment on Plaintiffs' claim for liquidated damages.

## FACTUAL BACKGROUND

Pier Sixty is a joint venture between AK Pier Sixty, LLC, part of a family-owned catering business managed by Defendant James Kirsch, and Chelsea Piers, L.P., which has three principals who are long-time business partners, Tom Bernstein, Roland Betts, and David Tewksbury.  *See* Def. St. Facts ¶ 1.  These closely-held entities have worked tirelessly to build from the ground up two of New York's most prestigious banquet facilities – Pier Sixty and The Lighthouse – which are located within the Chelsea Piers sports and entertainment complex in New York City.  *See id.*

**Reliance On Legal Advice.**  From its very inception in 1998, Pier Sixty retained sophisticated legal counsel, Jackson Lewis, LLP ("Jackson Lewis"), to provide advice and counsel on labor and employment issues.  *See* Def. St. Facts ¶ 2.  Jackson Lewis is a well-known labor law firm dedicated exclusively to workplace law and ranked in the top 100 law firms nationwide by THE AMERICAN LAWYER.  *See id.*

Pier Sixty had regular communication with Jackson Lewis and counted on them for advice and guidance.  *See* Def. St. Facts ¶ 3.  This communication worked two ways:  Pier Sixty's human resource professionals would reach out to Jackson Lewis when an issue arose, and Jackson Lewis would provide them with information to educate Pier Sixty on labor and employment matters, including developments in the law of which they thought Pier Sixty should be aware.[2]  *See id.*  Pier Sixty was not only proactive about staying abreast of developments in the law by consulting counsel, but it also received such information from its accountants and the

---

[2]        These professionals include, among others, Douglas Giordano, Pier Sixty's General Manager, and Luisa Marciano, Corporate Director of Human Resources at Abigail Kirsch at Tappan Hill, Inc., which offers management support to Pier Sixty, whose duties and expertise include human resource functions, employee benefits, training, development, hiring, and labor relations.  *See* Def. St. Facts ¶ 3.

New York State Restaurant Association ("NYSRA").  *See id*.

**No Customer Testified They Were Misled.**  At no point has Pier Sixty ever had a policy or practice of misleading its customers about anything, including the nature or distribution of its mandatory service charge.  *See* Def. St. Facts ¶ 4.  And, notably, the only Pier Sixty customers deposed in this case have all uniformly testified that they do not believe that Pier Sixty's service charge was intended to serve as a gratuity, or as a payment in lieu of a gratuity, for Pier Sixty's servers, or that Pier Sixty's servers received 100% of the service charge.  *See id.*[3] Plaintiffs have not found a single customer – out of the approximately 4,000 events at issue in this case – to testify that they were misled by Pier Sixty in any way.  *See id.*

**Plaintiffs Testified They Were Not Misled.**  In its customer contracts, Pier Sixty included a mandatory service charge of between 21% or 22%, always paying more than half to its servers (the Plaintiffs in this action) so as to provide its servers hourly compensation that typically ranged between $23 and $26 per hour, a highly competitive wage by industry standards, and allocating the remaining balance of the service charge to cover other event costs.  *See* Def. St. Facts ¶ 6.  Indeed, and fairly incredibly, Celeste Spicer, the lead named Plaintiff in this case, testified during her deposition that she understood this, and Pier Sixty's servers were not told anything to the contrary:

> Q.  Do you know whether Pier Sixty gave the servers a certain percentage of it, a portion of it, all of it, do you have any idea how they calculated it?
>
> A.  I'm not there for them to – I don't know how they calculated.  I'm just – *I just know that the service charge is part of how we're being paid* as a staff. That's how they are able to guarantee our minimum of $19 an hour.
>
> Q.  Okay.  Did anyone at Pier Sixty ever tell you that 100 percent of the service charge gets distributed to the servers?

---

[3]     Pier Sixty's customers also testified that they understood that Pier Sixty's servers, unlike waiters and waitresses in a restaurant setting, are paid all of their wages from Pier Sixty and do not work for tips or gratuities. *See* Def. St. Facts ¶ 5.

A.  No, that *was never said to us*.

*Id*. at ¶ 7.[4]  Other Plaintiffs similarly testified that they were never told that they would receive

100% of Pier Sixty's service charge.  *See id*.

**NYDOL Declares "Service Charges" Are Not "Gratuities."**  Pier Sixty communicated

with Jackson Lewis about its mandatory service charge and, in fact, learned of a statewide

interoffice memorandum issued by the NYDOL, dated June 1, 1995 ("June 1995 Memo"), which

provided that:

> **Effective immediately, service charges will not be considered
> gratuities.  Service charges will be considered part of the gross
> receipts of the employer, and may be incorporated as part of
> the employer's wage obligation to employees.  A service charge
> is not required to be distributed to employees.**

Def. St. Facts ¶ 8.  Pier Sixty kept the June 1995 Memo on file.  *See id*.  Pier Sixty also kept on

file and relied upon materials from the United States Department of Labor, which stated that

"*compulsory service charges which are added to customers' bills are not considered tips from*

*the customers to the employees*.  They are gross receipts to an employer and may be used by the

employer in any way he or she chooses, including using the service charges to pay employees."

*Id*. at ¶ 9.

**Sales Tax Was Paid On The Service Charge.**  Critically, unlike the defendants in

*World Yacht* who failed to charge a sales tax on the service charge, Pier Sixty has always

charged, collected, and paid New York State sales tax on the service charge.  *See* Def. St. Facts

¶ 10.  These taxes would not have been due or collectible if the service charge were a gratuity.

Indeed, Pier Sixty kept on file and relied upon materials from the New York State Department of

Taxation, which stated that a "*service charge automatically included in the food and beverage*

---

[4]      Unless otherwise indicated, emphasis is added throughout.

*bill of a restaurant which compensates the individual serving the customer is subject to the sales tax because it is not gratuitous and, therefore, is not a tip*." *Id*.[5]

**Defendants Followed The Advice Of Counsel.**  Pier Sixty relied on counsel's guidance in creating the first contract that Pier Sixty used ("Form Contract One").  *See* Def. St. Facts ¶ 12. In describing the mandatory service charge, under the heading "Service Charge," Form Contract One contained the following language:  "22% of food and beverage sales will be added to your bill."  *See id.*

Never did Jackson Lewis (or anyone else) tell Pier Sixty that:  (i) there was any legal risk in retaining a portion of the service charge; (ii) there was any legal authority that contradicted the June 1995 Memo, which clearly stated that service charges were not considered gratuities; or (iii) a court could disagree with the position set forth by the NYDOL in the June 1995 Memo. *See id.*  Indeed, the NYDOL repeatedly endorsed the June 1995 Memo for more than a decade, and as recently as October 2007.  For example:

- On August 27, 1999, the NYDOL enclosed a copy of the June 1995 Memo along with an opinion letter, stating:  "***A service charge will not be considered a gratuity*** only in the case of a 'banquet or other special function,' as set forth in the enclosed June 1, 1995 enforcement guidelines."  Def. St. Facts ¶ 14.

- On March 24, 2000, the NYDOL enclosed a copy of the June 1995 Memo along with an opinion letter, stating:  "On June 1, 1995, the Department issued the enclosed guidelines . . . pursuant to which a charge denominated ***a 'service charge' will not be considered a 'charge purported to be a gratuity***' . . . ." *Id*. at ¶ 15.

- On March 12, 2001, the NYDOL again enclosed the June 1995 Memo along with an opinion letter, stating: "[I]f the service charge is imposed in connection with a banquet or other special function, ***it is exempted from the application of the statute and need not be distributed to employees***, pursuant

---

[5]     The NYSRA's May/June 2005 Newsletter featured on its cover an article entitled "NYSRA Labor News – Ask the Pros Tips/Gratuities/Service Charges."  *See* Def. St. Facts ¶ 11.  The article stated that "the Department of Labor does not consider service charges to be gratuities.  Service Charges are considered part of the gross receipts of the employer and may be incorporated as part of the employer's wage obligation to employees.  A Service Charge is not required to be distributed to employees."  *Id.*  The article further stated that "[t]his was a major change in Department of Labor policy and became effective in June of 1995."  *Id.*

to the enclosed June 1, 1995 memorandum . . . ." *Id.* at ¶ 16.

- On September 25, 2001, the NYDOL issued an opinion letter, stating: "If the service charge is added . . . in connection with a banquet or another special function, ***it is exempt from the statute's application***." *Id.* at ¶ 17.

- On November 8, 2004, the NYDOL again enclosed the June 1995 Memo along with an opinion letter, describing such enclosure as follows: "[A] copy of a June 1, 1995 memorandum . . . which ***sets forth the Division's present policy, [and] states that a service charge is not considered a gratuity*** . . . ." *Id.* at ¶ 18.

- On February 22, 2006, the NYDOL again issued an opinion letter, stating: "[N]either ***the Tax Law, the federal or State Labor Laws, the regulations promulgated thereunder, the case law interpreting them, nor the [June 1995] memo contain any requirement that any restaurant withholding part of a service charge from its employees 'notify the banquet customer of that fact*** ' . . . ." *Id.* at ¶ 19.

- On August 2, 2006, the NYDOL issued yet another opinion letter, stating: "Under both State and Federal law, ***'service charges' are not gratuities and are not required to be distributed to employees***." *Id.* at ¶ 20.

- Indeed, on October 26, 2007 – ***only three-and-one-half months before World Yacht was decided*** – the NYDOL faxed the June 1995 Memo to counsel for the New York State Restaurant Association, New York City Chapter ("NYSRA") for the purpose of distributing it to members of the NYSRA, who were attending a November 1, 2007 NYSRA training program. *Id.* at ¶ 21.[6]

And during this time, both state and federal courts also made clear that mandatory service charges were not "gratuities" within the meaning of § 196-d. *See, e.g.*, *Bynog v. Cipriani Group, Inc.*, 748 N.Y.S.2d 9, 11 (N.Y. App. Div. 1st Dep't 2002), *aff'd as modified*, 1 N.Y.3d 193 (2003) (a service charge "need not be distributed to the waiters pursuant to Labor Law § 196-d, notwithstanding that the customer might believe that the charge is meant to be so distributed"); *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 709-10 (S.D.N.Y. 2007) (Rakoff, J.) (holding that under § 196-d a mandatory service charge could not qualify as a "charge purported to be a

---

[6]     Plaintiffs point to (and the Court in a memorandum and order issued on July 27, 2010 ("July 27 Order") relied upon) one outlier opinion letter issued in March of 1999 by the NYDOL to a practitioner. *See* Bebchick Decl., Ex. 43. This reliance is misplaced as the June 1995 Memo was repeatedly endorsed by the NYDOL both before and after the March 1999 opinion letter.

gratuity," and that it was not even "an open question under New York law").

This lawsuit, along with countless others, was filed only after the New York Court of Appeals' 2008 decision in *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (Feb. 14, 2008). *See* Def. St. Facts ¶ 22. *World Yacht* turned the law on its head when it held for the first time – and contrary to the explicit directives from the NYDOL and the courts that Pier Sixty followed upon the advice of counsel – that a mandatory service charge *could* be considered a gratuity if the expectation of a "reasonable customer" was that the charge was being collected in lieu of a gratuity. *See id.*

*World Yacht* **And Its Aftermath.**  Following the *World Yacht* decision, Pier Sixty had a "high degree" of communication with Jackson Lewis regarding its service charge and took "immediate action," working with Jackson Lewis to modify their contract language in reaction to the new ruling. *See* Def. St. Facts ¶ 23.[7]  The language that Pier Sixty ultimately used in its revised contract ("Form Contract Two"), which Pier Sixty began to use in or about April 2008, just two months after *World Yacht* was decided, was (like the earlier language) specifically recommended by Jackson Lewis. *See id.* at ¶ 24.  Form Contract Two contained the following language:  "12.25% of the food and beverage cost will be added to your account as a gratuity. This amount is fully distributed to servers, captains, and/or bartenders that are assigned to and work your event.  9.75% of the food and beverage cost (which is subject to all applicable sales taxes) will be added to your account as a service charge.  This is not a gratuity and serves to offset ancillary expenses associated with the event."  *See id.*  With the advice of counsel, Pier Sixty also educated and trained its sales team regarding the *World Yacht* decision and the new contract language so that they would be able to address questions from customers.  *See id.*

---

[7]      Jackson Lewis sent copies of the *World Yacht* decision to Pier Sixty soon after it was decided, and Pier Sixty kept the decision on file.  *See* Def. St. Facts ¶ 23.

at ¶ 25.[8]

Pier Sixty's customers, however, began asking a lot of questions about the language in Form Contract Two, specifically with respect to the application of sales tax on only the service charge portion. *See* Def. St. Facts ¶ 27. As a result, Pier Sixty went back to Jackson Lewis and asked for their advice in crafting alternative contract language that would not cause customer confusion. *See id*. at ¶ 28. Jackson Lewis created new contract language ("Form Contract Three"), which under the heading "Service Charge," stated as follows: "All food and beverage items are subject to a 22% service charge. The service charge is not a gratuity and is used to cover personnel, administrative or other costs. An 8.375% New York state sales tax applies to all charges." *See id*.[9] Jackson Lewis told Pier Sixty that this language would comply with existing law. *See id*. at ¶ 29. As it did after *World Yacht* and the change to Form Contract Two, Pier Sixty educated its sales team so that they would be able to address questions from customers. *See id*. at ¶ 31. Pier Sixty's directors were told to "please encourage their staff to continue to ask questions, to bring to their attention any questions a customer might have that they weren't confident to answer so they could get advice and answer it properly." *Id*.[10]

In connection with this lawsuit, Pier Sixty also retained the law firm of Fox Rothschild LLP. *See* Def. St. Facts ¶ 34. Like Jackson Lewis, Fox Rothschild is a well-known, highly-regarded firm that has a practice group specifically focused on the hospitality industry, one of the

---

[8]      When a customer mistakenly referred to the service charge as a "gratuity," Pier Sixty's sales people corrected them. *See id*. at ¶ 26. Even the e-mail communication that Plaintiffs purport to rely upon, which relates only to approximately 1-2% of the approximately 4,000 events at issue in this case, demonstrates that, in many instances, Pier Sixty explained to its customers that the servers' compensation is "included" in or "covered" by the mandatory service charge, meaning necessarily that some, but not all, of the charge is distributed to the servers and the rest is retained by Pier Sixty to cover the substantial costs associated with large banquet events. *See id*.

[9]      Once Pier Sixty changed to Form Contract Three, its customers no longer had questions about the sales tax treatment. *See id*. at ¶ 30.

[10]      The Court in the July 27 Order granted Defendants' summary judgment motion with respect to Form Contract Two but not with respect to Form Contracts One and Three. *See* Bebchick Decl., Ex. 3. The Court held with respect to Form Contract Two that "no reasonable jury could find that a reasonable customer would believe that the service charge was a gratuity under Form Contract Two." July 27 Order at 14. Following the July 27th Order, Pier Sixty again consulted with counsel and modified its contract language. *See* Def. St. Facts ¶ 33.

co-chairs of which was the lawyer who provided labor and employment advice and counsel to

Pier Sixty.  *See id.*[11]

## **ARGUMENT**

A motion for summary judgment shall be granted when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  "One of the primary purposes of [Rule 56(c)] 'is to isolate and dispose of factually

unsupported claims.'"  *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 83

(E.D.N.Y. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A genuine

issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'"  *Kuebel v. Black & Decker (U.S.) Inc.*, No. 08-CV-6020, 2010 WL

1930659, at *4 (W.D.N.Y. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  "But '[w]here the record *taken as a whole* could not lead a rational trier of fact to find

for the non-moving party, there is no genuine issue for trial.'"  *Id.* (quoting *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While the moving party initially must demonstrate that there are no genuine issues of

material fact, once it has done so, the non-moving party "may not rely solely on '[c]onclusory

allegations, conjecture, and speculation,' but must present specific evidence in support of its

contention that there is a genuine dispute as to material facts."  *Id.* (internal citations omitted).

Where, as in the instant case with respect to the majority of the events at issue (as will be

discussed in greater detail below), the burden of proof at trial falls on the nonmoving party, "the

---

[11]     It is Pier Sixty's policy that servers are not permitted to accept tips from the guests who attend the events planned and hosted by Pier Sixty's customers (the "no-tipping policy").  *See* Def. St. Facts ¶ 35.  This policy is directed to the guests who attend the events, not Pier Sixty's customers.  *See id.*  This policy was discussed with counsel, which never advised Pier Sixty that it was unlawful in any respect.  *See id.*  Pier Sixty also posted one small sign by the coat check area advising guests attending the event that they are not required to tip the coat check attendant.  *See id.* at ¶ 36.  The sign was not directed at Pier Sixty's customers, the patrons of the event.  *See id.*

movant's burden will be satisfied if [the movant] can point to an absence of evidence to support an essential element of the non-moving party's claim." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must then "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Auscape Int'l v. Nat'l Geographical Society*, 461 F. Supp. 2d 174, 180-81 (S.D.N.Y. 2006).

## I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' LIQUIDATED DAMAGES CLAIM UNDER NYLL § 198(1-a)

Plaintiffs seek liquidated damages pursuant to NYLL § 198(1-a) in connection with their claim that Defendants violated § 196-d by failing to distribute to their servers the portion of the mandatory service charge that they charged their customers. This statute was amended in 2009 and became effective on November 24, 2009, ninety days after it was enacted into law on August 26, 2009. Accordingly, (i) the prior version of § 198(1-a) applies to alleged conduct that occurred prior to November 24, 2009; and (ii) the amended version of § 198(1-a) applies to alleged conduct that occurred beginning November 24, 2009 and going forward.[12] *See* 2009 Sess. Law News of N.Y. Ch. 372 (A. 6963).

The prior version of § 198(1-a), which is applicable for the majority of the events at issue in this case (from November 25, 2002 until November 24, 2009), provides that in "any action instituted upon a wage claim by an employee . . . in which the employee prevails, the court shall

---

[12]     Defendants wish to highlight an inadvertent error in the record regarding the effective date of the amended statute. In Defendants' opposition to Plaintiffs' motion to amend their complaint, Defendants incorrectly stated that the amended statute only applies to conduct occurring on or after February 22, 2010. The correct date is November 24, 2009, which is 90 days after the amendment was enacted into law on August 26, 2009. Defendants, in error, calculated the 90 days from the effective date of November 24, 2009. *See* 1/17/11 Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend, at 10-11; *but see* Bebchick Decl., Ex. 44 (1/17/11 Kaplan Decl. ¶¶ 7-8, Exs. D & E) (attaching a copy of the amendments to § 198 adopted by the New York State Legislature, effective November 24, 2009, codified at 2009 Sess. Law News of N.Y. Ch. 372 (A. 6963) (McKinney 2009)). Plaintiffs also used this calculation in their reply brief on their motion to amend and it was subsequently adopted by the Court in a memorandum and order granting Plaintiffs' motion to amend. *See* 1/31/11 Plaintiffs' Reply Memorandum of Law in Further Support of Motion to Amend Complaint, at 2; Bebchick Decl., Ex. 4 (2/7/11 Memorandum and Order (the "February 7 Order"), at 5).

allow . . . upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due."   The liquidated damages provided for in the NYLL are, unlike the liquidated damages provided for in the FLSA, "punitive in nature."   *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008); *see also Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("liquidated damages under the Labor Law 'constitute a penalty' to deter an employer's willful withholding of wages due") (quoting *Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115, 116 (App. Div. 1st Dep't 1980)).

The applicable test for willfulness, however, "appears to parallel that employed in determining willfulness for limitations purposes under the FLSA."   *Ke*, 595 F. Supp. 2d at 261.[13] In that context, willfulness "involves either knowledge by the employer that his conduct is illegal or reckless disregard for whether it is statutorily prohibited."   *Id.*   Thus, the appropriate case for application of liquidated damages is where, for example, plaintiffs can demonstrate that defendants had "no regard whatsoever for legal requirements in connection with their wage policies and had ample reason to know that they were failing to pay legally mandated wages to their employees."   *Id.*   Under the FLSA, and thus consequently under the NYLL, "the burden is on plaintiff[s] to prove willfulness in order to obtain liquidated damages."   *Bauin v. Feinberg*, No. 11568/04, 2005 N.Y. Misc. LEXIS 475, at *6 (N.Y. Civ. Ct. N.Y. Cty. Mar. 18, 2005).

Under the amended version of NYLL § 198(1-a), applicable for events held on or after November 24, 2009, plaintiffs may be entitled to an award of liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance

---

[13]     The FLSA imposes a two year statute of limitations, except as to "willful" violations, for which the statute is extended to three years.   29 U.S.C. § 255(a).

with the law." NYLL § 198(1-a);[14] *see also Strohl v. Brite Adventure Center, Inc.*, No. 08 CV

259, 2010 WL 3236778, at *8 n.5 (E.D.N.Y. Aug. 13, 2010) (finding that defendant had made an

underpayment of wages "in error but not in bad faith," and thus denying plaintiff's claim for

liquidated damages under the amended § 198(1-a)); *see also, e.g.*, *Howard v. Port Authority of

N.Y. & N.J.*, 684 F. Supp. 2d 409, 416 (S.D.N.Y. 2010) ("The FLSA provides employers with an

affirmative defense to liquidated damages if they can show they 'acted in subjective "good faith"

and had objectively "reasonable grounds" for believing that the acts or omissions giving rise to

the failure did not violate the [Act].'") (quoting 29 U.S.C. § 260).

Regardless of which party has the burden of proof here or what the applicable standard is,

Defendants are entitled to summary judgment on Plaintiffs' liquidated damages claim, as there is

simply no evidence suggesting, let alone establishing, that Defendants acted willfully or in bad

faith. To the contrary, the record overwhelmingly establishes that Defendants acted in good faith

by, among other things, taking active steps to ascertain the dictates of the NYLL – with the

assistance of sophisticated legal counsel – so that they would be in full compliance with the labor

law at all times.

### A.    Plaintiffs Cannot Demonstrate That Defendants Willfully Violated The Law

There is no support in the record for a conclusion that Defendants acted in willful

disregard for the law. The undisputed evidence demonstrates that Pier Sixty, from inception,

followed the advice of its sophisticated labor and employment law counsel, Jackson Lewis, as

well as the directives of the NYDOL and the courts, which stated clearly that a mandatory

service charge was not a gratuity for purposes of § 196-d. *See, e.g.*, *Hysell v. Mercantile Stores

Co.*, 736 F. Supp. 457, 460 (S.D.N.Y. 1989) (granting defendant employer's motion for partial

---

[14]    Section 198(1-a) was subsequently amended again to provide for liquidated damages "equal to one hundred
percent of the total amount of the wages found to be due;" however, the good faith standard was not modified. The
amendment became effective on April 9, 2011. NYLL § 198(1-a) (McKinney 2011).

summary judgment on the issue of liquidated damages under the Age Discrimination Employment Act because defendants "consulted with their attorneys in order to discover the lawfulness of their proposed [action]" and plaintiff offered "no evidence, either by deposition, answers to interrogatories, admissions on file, or affidavit" in support of his theories that defendants' conduct was willful); *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 323-24 (S.D.N.Y. 2001) (finding that plaintiff "only speculate[d] that the Company willfully attempted to conceal plaintiff's eligibility for overtime by hiring him as an independent contractor," there was "nothing in the record to support this allegation," and plaintiff "offered no credible evidence to support his argument that defendants were reckless in failing to determine whether plaintiff was eligible for overtime pay under the FLSA," instead "merely conclud[ing] that willfulness and recklessness existed, without pointing to any concrete evidence in the record"); *Said v. SBS Electronics, Inc.*, No. CV 08-3067, 2010 WL 1265186, at *8 (E.D.N.Y. Feb. 24, 2010) (finding that plaintiff's allegations were wholly conclusory and that plaintiff failed to present information that "would have assisted the court in determining if there [was] a sufficient basis for finding that his employers 'knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by the statute'") (citation omitted).

In amending their complaint to add a claim for liquidated damages, Plaintiffs mostly added conclusory allegations of willfulness; however, those allegations are insufficient to overcome summary judgment here in the face of a complete absence of any facts elicited during discovery – because none exist – demonstrating Defendants willfully violated the law. *See, e.g.*, *Aguilar v. E-Z Supply Corp.*, No. 06-CV-6790, 2008 WL 905224, at *5 (E.D.N.Y. Mar. 31, 2008) (denying claim for liquidated damages under § 198(1-a) after entering default judgment because plaintiffs only pointed to the "default and the bare assertion of willfulness contained in

their complaint").

In connection with their motion to amend their complaint to add a claim for liquidated damages, Plaintiffs pointed to a handful of emails between Pier Sixty's sales staff and customers (or their event planners) relating to only approximately 1-2% of the events at issue in this case. While Defendants certainly agree that an individualized assessment of each event is necessary to determine liability in this case, these emails can hardly support a finding as to the other 98-99% of events or carry the weight required to overcome summary judgment in the face of the overwhelming evidence that Pier Sixty attempted to comply with existing law in good faith at all times. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").[15]

Moreover, this smattering of emails – even if read in the light most favorable to Plaintiffs – simply cannot support a finding of bad faith even for these events:

- ***First***, the emails simply do not evidence any intent by the sales staff to intentionally mislead customers. Indeed, the sales people in five of the six emails referenced as examples by the Court in a footnote in the February 7 Order actually state that the servers are "covered" by or "included" in the service charge, which necessarily implies that they are not getting the entire service charge.  *See* Def. St. Facts ¶ 26; Bebchick Decl., Ex. 45 (PSL 9575-9580 & PSL 10351-10352).[16]  The one remaining email is ambiguous at best where the sales person states "the service charge is for waitstaff," in response to a question about whether the customer wanted to add additional recognition

---

[15]     *See also New Sensor Corp. v. CE Distribution LLC*, 121 F. App'x 407, 409-10 (2d Cir. 2004) (affirming grant of summary judgment to defendant where evidence proffered by plaintiff "was insufficient to allow a reasonable juror to conclude that [defendant's] statements created customer confusion"); *Locke*, 690 F. Supp. 2d at 83 ("'The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *Gustafson*, 171 F. Supp. 2d at 327 (finding that "plaintiff has failed to produce evidence sufficient to establish willfulness that would entitle him to liquidated damages under New York law").

[16]     While the Court stated in *dicta* in a footnote in the February 7 Order granting Plaintiffs' motion to amend that Plaintiffs "offer evidence that would sustain their liquidated damages claim against a summary judgment motion," Defendants respectfully submit that this conclusion – made pre-discovery and with specific citation to only a half of a dozen emails – was plainly erroneous.  *See* Bebchick Decl., Ex. 4 (February 7 Order at 4 n.3).

specifically for the banquet manager.  Bebchick Decl., Ex. 45 (PSL 4570-4571).  This is at most sloppiness or negligence by one sales person and not evidence to support a finding that Pier Sixty willfully disregarded the law.  *See Howard*, 684 F. Supp. 2d at 415 (stating that a "FLSA violation is 'willful' when the employer is not merely negligent, but 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by [the Act]'" (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (brackets in original)).

- **Second**, for the events to which the emails apply – and the other 98-99% of events – Pier Sixty collected from its customers, and remitted to New York State, the sales tax on the entire service charge; conduct wholly at odds with bad faith (and the opposite of what the defendants in *World Yacht* had done).  *See Winans v. Starbucks Corp.*, No. 08 Civ. 3734, --- F. Supp. 2d ----, 2011 WL 2693172, at *4 (S.D.N.Y. July 11, 2011) (noting that the defendants in *World Yacht* not only told customers that the service charge was a gratuity but also "treated the charge as a gratuity for tax purposes").[17]  There is no reason Pier Sixty would have collected additional money from its customers and undertaken the administrative burden of remitting taxes unless they believed this was what the law required.

- **Third**, Plaintiffs were never told that they were receiving 100% of the service charge; rather, Plaintiffs have admitted that they always understood that only a portion of the service charge was provided to them.  *See* Def. St. Facts ¶ 7.  It is inconceivable that Defendants were intentionally stealing Plaintiffs' tips and then – for more than a decade – telling Plaintiffs exactly what they were doing; only the opposite is possible, that Defendants believed that they were acting in compliance with the law and thus fully explained it to everyone.

Despite the fact that full discovery on the issue of liquidated damages has taken place,

Plaintiffs have utterly failed to elicit any facts in support of their claim for liquidated damages.[18]

*See, e.g.*, *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2010 WL 1191993, at *10 (E.D.N.Y. Mar.

---

[17]     The defendants in *World Yacht* chose not to charge sales tax on the service charge and thus demonstrated their belief that the service charge was a gratuity.  *World Yacht*, 10 N.Y.3d at 75.  Indeed, the Court of Appeals in *World Yacht* recognized that a defendant's tax treatment of service charges is an important factor in determining whether a service charge is a gratuity, and it is the most conclusive evidence of Defendants' good faith here.  *Id.* at 80 ("Plaintiffs should be entitled to show defendants' tax treatment of the charges since charges that are treated as gratuities for tax purposes could also be represented to patrons as being gratuities as well.").

[18]     While Plaintiffs tried to explore theories in support of their claim for liquidated damages with Pier Sixty witnesses, including that Pier Sixty deliberately changed the contract language from Form Contract Two to Form Contract Three to intentionally confuse customers, Plaintiffs were unable to elicit any support for their concocted theory.  The record is unequivocal that the change in contract language was made to address repeated customer questions relating to tax treatment and, more importantly, was overseen by counsel.  Again, it is impossible to imagine a result where an employer retains the best labor counsel in the country and yet is found to be in willful violation of the law.

26, 2010) (granting summary judgment in favor of defendants where despite "extensive discovery and motion practice," plaintiffs failed to set forth evidence sufficient to satisfy their burden to prove an issue for trial as to statutory damages); *Locke*, 690 F. Supp. 2d at 89-90 (granting defendant's motion for summary judgment because after "[m]onths of extended discovery" plaintiff was unable to proffer evidence from the record to rebut defendants' proof of its annual gross volume of sales under the FLSA). The Court should find that Plaintiffs have failed to meet their burden, and grant Defendants' motion with respect to events before November 24, 2009.

### B.    There Is No Genuine Issue Of Material Fact As To Defendants' Good Faith

In contrast to the complete lack of any evidence supporting Plaintiffs' claim that Defendants willfully violated the NYLL, there is extensive evidence in the record establishing Defendants' good faith efforts to comply with the requirements of § 196-d and sufficient to preclude an award of millions of dollars in liquidated damages to Plaintiffs in this case. Pier Sixty always relied upon the legal advice of sophisticated labor and employment counsel in developing its service charge policies, including in drafting and revising the form contracts at issue in this case, to ensure that it was in full compliance with all applicable labor laws and that it followed the directives of the NYDOL, the agency charged with enforcing the NYLL. Indeed, Pier Sixty promptly sought counsel's advice following *World Yacht* and worked with counsel to develop and implement contract language that would comply with that decision. *See* Def. St. Facts ¶ 23. *Cf. James v. Wash Depot Holdings, Inc.*, 463 F. Supp. 2d 1369, 1370 (S.D. Fla. 2006) (finding that defendant failed to sustain his burden of establishing good faith where he "admitted that he did not possess an expertise in the field of the [FLSA], and there was no testimony that he consulted lawyers with an expertise in that field").

"Certainly, obtaining [the] advice of counsel would insulate a defendant from an award of

liquidated damages." *Id.* (citing *Hill v. J.C. Penney Co.*, 688 F.2d 370, 375 (5th Cir. 1982));

*accord Howard*, 684 F. Supp. 2d at 416 ("As other courts have held, the advice of counsel or

uncertainty in the law can at least in some circumstances support the good faith affirmative

defense to liquidated damages"); *see also, e.g.*, *Featsent v. City of Youngstown*, 70 F.3d 900, 906

(6th Cir. 1995) (upholding district court's finding that the City acted in good faith without a

belief that its actions were in violation of the FLSA where it was represented by an attorney,

"[who] was not only to represent the City's interest, but also to ascertain and follow the dictates

of the law, including the FLSA").[19]  Pier Sixty's counsel never advised Pier Sixty before *World*

*Yacht* that the full amount of Pier Sixty's mandatory service charge would need to be distributed

to Pier Sixty's servers if a "reasonable customer" believed that the mandatory service charge was

intended to serve as a gratuity.  Pier Sixty was entitled to rely on its counsel's expertise and

advice, and to the reasonable belief that it was complying with the law under the circumstances.

*See Featsent*, 70 F.3d at 906-07 (stating that there was no evidence that the City's attorney

advised it at any time that an agreement's method of calculating overtime compensation violated

the FLSA, and concluding that "[f]rom its attorney's silence, the City was entitled to the

reasonable belief that the [a]greement did not violate the law, including the FLSA").

In addition, the fact that Defendants and their counsel relied upon the NYDOL's June

1995 Memo, which was repeatedly endorsed for years, as well as state and federal courts pre-

*World Yacht* and statements from the New York State Department of Taxation, further

demonstrates Defendants' good faith.  *See, e.g.*, *Kuebel v. Black & Decker (U.S.) Inc.*, No. 08-

---

[19]     While Defendants cite to FLSA case law for the "good faith" standard in light of the fact that there has
been little case law interpreting the amended § 198(1-a) "good faith" standard, Defendants note that the FLSA
leaves discretion as to the amount of liquidated damages, if any, up to the trial judge after a showing of good faith.
However, NYLL § 198(1-a) does not afford courts similar discretion; either a violation entitles a plaintiff liquidated
damages in the full amount, or not, as is the case here.  *See* 29 U.S.C. § 260 (if employer demonstrates act or
omission was in good faith, "the court may, in its sound discretion, award no liquidated damages or award any
amount thereof not to exceed the amount specified in section 216 of this title").

CV-6020, 2009 WL 1401694, at *11 (W.D.N.Y. May 18,  2009) (granting partial summary judgment and finding that defendant did not act in bad faith where defendant had consulted with labor counsel for legal advice as to proper compensation practice and relied on counsel's advice, which was rational).  Because Pier Sixty always relied upon the legal advice of its sophisticated labor and employment law counsel in developing its service charge policies and drafting each of its form customer contracts, Plaintiffs cannot carry their burden of proving Pier Sixty's alleged violation of § 196-d was willful.  And again, during this period, Defendants fully and openly described to Plaintiffs precisely how they were allocating the service charge.  Such openness and candor are the antithesis of bad faith.

A simple comparison to the *World Yacht* case underscores Defendants' good faith conduct here.  In *World Yacht*, the defendants were alleged to have "told inquiring customers that the 20% service charge is remitted to defendants' waitstaff as the gratuity, but then failed to distribute *any* amount of the service charge to their waitstaff," and instead converted it for their own use.  *World Yacht*, 10 N.Y.3d at 75.  Pier Sixty here has a long history of paying substantial portions of the service charge to its servers.  While the defendants in *World Yacht* failed to charge a sales tax on the service charge, Defendants always fully taxed the "service charge" thus demonstrating that they did not believe it was a gratuity.  And, while there was no evidence that the defendants in *World Yacht* even tried to comply with the law, Defendants consulted and relied upon counsel and repeatedly modified their contract language regarding the "service charge."  There are simply no allegations in Plaintiffs' complaint or evidence in this case of the type of deliberate conduct alleged in *World Yacht*.

In contrast to the complete lack of any evidence supporting Plaintiffs' claim that Defendants willfully violated the NYLL, there is extensive evidence in the record describing

with particularity Defendants' good faith efforts to comply with the requirements of § 196-d and sufficient to preclude an award of millions of dollars in liquidated damages to Plaintiffs in this case.  *Cf. Lanzetta v. Florio's Enterprises, Inc*., 763 F. Supp. 2d 615, 626 (S.D.N.Y. 2011) (finding that defendants "neither acted in good faith nor tried to argue that they did," and thus plaintiff was entitled to liquidated damages under § 198(1-a)); *Gustafson* 171 F. Supp. 2d at 326 (finding that defendants offered "no evidence to establish that the Company took active steps to ascertain its compliance with the FLSA" and there was "no evidence that the Company ever sought an expert or outside opinion").

## CONCLUSION

For all the foregoing reasons, the Court should grant partial summary judgment on Plaintiffs' claim for liquidated damages in favor of Defendants Pier Sixty and James Kirsch.

Dated:   New York, New York                 Respectfully submitted,
         November 9, 2011

                                            FRIED, FRANK, HARRIS, SHRIVER &
                                               JACOBSON LLP


                                            By: /s/ Douglas H. Flaum
                                                Douglas H. Flaum, Esq.
                                                Lisa H. Bebchick, Esq.
                                                One New York Plaza
                                                New York, New York 10004
                                                Telephone:  (212) 859-8000
                                                Facsimile:  (212) 859-4000
                                                douglas.flaum@friedfrank.com
                                                lisa.bebchick@friedfrank.com

                                            FOX ROTHSCHILD LLP

                                                Carolyn D. Richmond, Esq.
                                                Eli Z. Freedberg, Esq.
                                                100 Park Avenue, Suite 1500
                                                New York, New York 10017
                                                Telephone:  212-878-7900

                                            *Counsel for Defendants*
                                            *Pier Sixty, LLC and James Kirsch*

8392926

-23-