**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
**CELESTE SPICER, AUTUMN BURGESS,**
**AMY LEDIN, JOSEPH RUSSO, ESTHER**
**MARTINEZ, LYSETTE ROMAN, and**          Index No. 08 Civ. 10240 (PAE)
**SERENA SIYING HUI, on behalf of**
**themselves and other similarly situated,**

              **Plaintiffs,**

     **v.**

**PIER SIXTY LLC, and JAMES KIRSCH**

              **Defendants.**
--------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

JOSEPH, HERZFELD, HESTER &  KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Denise A. Schulman
233 Broadway, 5th Floor
New York, NY 10279
Tel: (212) 688-5640
Fax: (212) 688-2548

EMERY CELLI BRINCKERHOFF & ABADY LLP
Jonathan S. Abady
Matthew D. Brinckerhoff
75 Rockefeller Plaza
20th Floor
New York, NY 10019
Tel: (212) 763-5000
Fax: (212) 763-5001

*Attorneys for Plaintiffs, FLSA collective members, and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. a

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................. 2

   A.   Procedural History – The Spicer Action ................................................... 2

   B.   Procedural History – The Conner Action .................................................. 4

   C.   Discovery .................................................................................................... 5

   D.   Settlement Discussions ............................................................................... 6

III.  THE PROPOSED SETTLEMENT ............................................................... 7

   A.   Plaintiffs Should Be Permitted To File Their Third Amended Complaint And The Class Should Be Redefined For Settlement Purposes ................................. 7

     i.   The Conner Class meets the requirements of Rule 23(a) and 23(b)(3) .................. 8

       a.   Numerosity is satisfied ........................................................................ 8

       b.   Commonality is satisfied ..................................................................... 9

       c.   Typicality is satisfied ........................................................................... 9

       d.   Adequacy is satisfied ........................................................................... 10

       e.   Common questions predominate ........................................................ 10

       f.   A class action is a superior mechanism ............................................ 11

     ii.   The Court should appoint JHHK as class counsel for the Conner Class ............. 12

   B.   Settlement Consideration ........................................................................... 13

IV.  PRELIMINARY SETTLEMENT APPROVAL ........................................... 16

   A.   The Role Of The Court ............................................................................... 16

   B.   Criteria To Be Considered In Deciding Preliminary Approval .................. 17

**i.     There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The Product of Extensive, Arm's Length Negotiations** ........................................................... 19

**ii.     The Settlement Contains No Obvious Deficiencies** .................................................. 20

**iii.     The Settlement Falls Within The Range Of Possible Approval** ........................ 21

**V.     THE PROPOSED PLAN OF CLASS NOTICE** .............................................................. 22

**VI.     CONCLUSION** .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Adair v. Bristol Tech. Sys.*, No. 97 Civ. 5874, 1999 U.S. Dist. LEXIS 17627
(S.D.N.Y. Nov. 16, 1999) ................................................................................21

*Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72 (S.D.N.Y. 2003) ................................24

*Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2010 U.S. Dist. LEXIS 47036
(S.D.N.Y. May 11, 2010) .................................................................................19

*Connor v. Pier Sixty, LLC*, No. 08-602134, 23 Misc. 3d 435
(N.Y. Sup. Ct. N.Y. County Jan. 12, 2009) .........................................................4

*Connor v. Pier Sixty, LLC*, No. 08-602134, 29 Misc. 3d 1220A
(N.Y. Sup. Ct. N.Y. County Sept. 30, 2010) ........................................................5

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .....................................10

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931
(S.D.N.Y. Jan. 20, 2011) .................................................................................20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ..............................11

*Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ...................................9

*In re Adelphia Communs. Corp. Sec. & Derivatives Litig.*, 271 Fed. Appx. 41 (2d Cir. 2008) ....24

*In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..........16, 19

*In re AOL Time Warner, Inc.*, No. 02 Civ. 8853, 2006 U.S. Dist. LEXIS 70474
(S.D.N.Y. Sept. 27, 2006) ...............................................................................20

*In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170
(S.D.N.Y. Dec. 4, 2002) ..................................................................................21

*In re Giant Interactive Group, Inc. Sec. Litig.*, No. 07 Civ. 10588,
2011 U.S. Dist. LEXIS 127634 (S,D.N.Y. Nov. 2, 2011) .........................................21

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) .......................18, 20

*In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005) ................................17, 18

*In re Luxottica Group S.P.A. Sec. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006) ...................................18

*In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1997)................................16

*In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473
(S.D.N.Y. Sept. 8, 2011) .................................................................................................12

*In re MTBE Prods. Liability Litig.*, 241 F.R.D. 435 (S.D.N.Y. 2007) ...........................................7

*In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997)....................16, 17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)..............17, 18, 19

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ...........................10

*In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571, 2009 U.S. Dist. LEXIS 31198
(S.D.N.Y. Mar. 31, 2009) ................................................................................................24

*Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237
(E.D.N.Y. Jan. 13, 2006) .................................................................................................11

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067
(E.D.N.Y. Jan. 20, 2010) .................................................................................................22

*Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 U.S. Dist. LEXIS 650
(S.D.N.Y. Jan. 28, 1999)..................................................................................................21

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................................................7, 9

*McAnaney v. Astoria Fin. Corp.*, No. 04 Civ. 1101, 2011 U.S. Dist. LEXIS 114768
(E.D.N.Y. Feb. 11, 2011).................................................................................................20

*McBean v. City of New York*, 228 F.R.D. 487 (S.D.N.Y. 2005)...................................................10

*Ramirez v. Mansions Catering, Inc.*, 2009 N.Y. Slip Op. 31100U
(Sup. Ct. N.Y. County Apr. 27, 2009) .............................................................................11

*Ramirez v. Mansions Catering, Inc.*, 74 A.D.2d 490 (N.Y. App. Div. 1st Dep't 2010)...............11

*Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008) .....................................................................2

*Saylor v. Lindsley*, 456 F.2d 896 (2d Cir. 1972).........................................................................18

*Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011) ...................11, 12

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ................................................. *passim*

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 339 (S.D.N.Y. 2010) ..........................................................3

b

*Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2010 U.S. Dist. LEXIS 132433
(S.D.N.Y. Sept. 14, 2010) .................................................................................................3

*Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2011 U.S. Dist. LEXIS 11959
(S.D.N.Y. Feb. 7, 2011) ....................................................................................................3

*Strougo ex rel. Brazilian Equity Fund, Inc.*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ....................21

*Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056
(S.D.N.Y. Sept. 28, 2007) ...............................................................................................10

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (S.D.N.Y. Jan. 19, 2005) .........................11

*Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194, 2010 U.S. Dist. LEXIS 125945
(S.D.N.Y. Nov. 30, 2010) ................................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ...........................18, 24, 25

**Statutes and Rules**

29 U.S.C. § 207 .................................................................................................................2

29 U.S.C. § 216 .................................................................................................................3

Fed. R. Civ. P. 23 ................................................................................................ *passim*

N.Y. Lab. L. § 196-d ............................................................................................ *passim*

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ...........................23

*Manual for Complex Litigation, Fourth* ....................................................................17

## I.       INTRODUCTION

Pursuant to Fed. R. Civ. P. 23 ("Rule 23"), Plaintiffs apply to this Court for preliminary approval of a proposed wage and hour class and collective action settlement.[1]   The proposed settlement will resolve all claims asserted in *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240 (S.D.N.Y.) (the "Spicer Action") and a related action styled *Connor et al. v. Pier Sixty, LLC et al.*, No. 08-602134 (N.Y. Sup. Ct., N.Y. County) (the "Conner Action") that was initially filed in New York State Supreme Court,, New York County.   Plaintiffs plan to file a third Amended Complaint to incorporate the claims asserted in the Conner Action into the Spicer Action, and Defendants will not oppose this proposed amendment.   Defendants Pier Sixty LLC and James Kirsch (collectively, the "Pier Sixty Defendants") and Gotham Personnel, LLC[2] ("Gotham") have agreed to the terms of the settlement and do not object to the relief requested herein.   The settlement will resolve all claims before this Court, including the claims in the Conner Action, and is set forth in the Joint Stipulation of Settlement and Release, dated February 27, 2012 ("Agreement").

Plaintiffs ask this Court to enter the Proposed Order, which: (1) refines the Class definition; (2) approves the proposed Notices to be sent to Class Members and published regarding the settlement; (3) sets a deadline for Settlement Notice to be sent to Class Members by mail to their last known addresses; (4) sets a deadline of 60 days after the mailing of Settlement Notice for opting out of, or excluding oneself from, the settlement pursuant to Rule 23; (6) sets a deadline of 60 days after the mailing of Settlement Notice for Class Members to object to the settlement; and (7) schedules a hearing at the Court's convenience at which the

---

[1] In support of this motion, Plaintiffs submit the March 22, 2012 declaration of Denise A. Schulman ("Schulman Decl."), attaching thereto as Exhibit 1 the settlement agreement, as Exhibit 2 the proposed Mailing Notice, as Exhibit 3 the proposed Publication Notice, as Exhibit 4 the proposed Third Amended Complaint, and as Exhibit 5 a proposed order.
[2] Gotham is a staffing agency and was a Defendant in the Conner Action.

Court will consider the Parties' motion for (a) final approval of the settlement; (b) entry of the proposed final judgment; (c) approval of Class Counsel's application for an award of attorneys' fees and reimbursement of costs; and (d) approval of enhancement awards for nine Plaintiffs.

## II.    BACKGROUND

### A.    Procedural History – The Spicer Action

On November 25, 2008, Plaintiffs Celeste Spicer, Autumn Burgess, Amy Ledin, Joseph Russo, Esther Martinez, Lysette Roman, and Serena Siying Hui (collectively, the "Spicer Plaintiffs") filed in this Court their class action Complaint against the Pier Sixty Defendants.[3] (Dkt. No. 1.)  The Complaint was amended twice, and the Second Amended Complaint was filed on February 8, 2011.  (Dkt. Nos. 16, 214.)  The Spicer Action alleged that the Pier Sixty Defendants: (1) retained gratuities that belonged to Pier Sixty's servers in violation of N.Y. Lab. L. § 196-d ("§ 196-d"); and (2) failed to properly compensate servers for overtime in violation of 29 U.S.C. § 207.  Defendants denied, and continue to deny these allegations.

Specifically, with respect to the § 196-d claim, which accounts for almost all of the damages in this action, during most of the time period covered by the Spicer Action, Pier Sixty charged customers a 20-22% mandatory "service charge."  The Spicer Plaintiffs alleged that the reasonable customer would believe that the service charge was a gratuity and, thus, under *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), the Pier Sixty Defendants were required to distribute the service charge monies in full to service employees.  *Id.* at 79 ("[T]he standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer as this standard is consistent with the purpose of Labor Law § 196-d.").  The Pier Sixty Defendants distributed more than half of the service

---

[3] The original Defendants in the Spicer Action were Pier Sixty LLC and Abigail Kirsch.  In the First Amended Complaint, the Spicer Plaintiffs removed Abigail Kirsch as a Defendant and added James Kirsch.

charge monies to service employees but used the remaining amounts to cover other work associated with the banquet events. (Schulman Decl. ¶ 6.). Defendants denied, and continue to deny these allegations.

On July 27, 2010, Judge Sand granted in part and denied in part the Pier Sixty Defendants' motion for summary judgment. In the same Order, Judge Sand granted the Spicer Plaintiffs' motion for collective certification pursuant to 29 U.S.C. § 216(b) and class action certification pursuant to Rule 23. 269 F.R.D. 321. Judge Sand appointed Esther Martinez and Joseph Russo as Class Representatives and Plaintiffs' counsel Joseph, Herzfeld, Hester & Kirschenbaum LLP ("JHHK" or "Class Counsel") as Class Counsel. The Pier Sixty Defendants then filed motions for reconsideration and interlocutory appeal of the summary judgment order, both of which Judge Sand denied. 269 F.R.D. 339 (2010) (denying motion for reconsideration); 2010 U.S. Dist. LEXIS 132433 (Sept. 14, 2010) (denying motion for interlocutory appeal). Pursuant to the July 27, 2010 Order, Class Counsel mailed a notice of the lawsuit to all potential Class Members, giving them an opportunity to opt into the FLSA claim and/or opt out of the Rule 23 Class. (Schulman Decl. ¶ 9.) Fifteen putative Class Members opted out of the Class, two of whom subsequently rescinded their requests for exclusion. (*Id.* at ¶ 10.) In addition to the seven named Plaintiffs, 132 individuals have opted into the FLSA claim. (*Id.* at ¶ 11.)

After the Pier Sixty Defendants refused to consent to Plaintiffs' amending their Complaint, Plaintiffs filed a motion to amend the Complaint on December 23, 2010 to add a claim for liquidated damages to Plaintiffs' § 196-d claim. (*Id.* at ¶ 12.) Judge Sand granted Plaintiffs' motion on February 7, 2011. 2011 U.S. Dist. LEXIS 11959. In March 2011, the Pier Sixty Defendants sought Judge Sand's recusal. After a hearing at which Judge Sand recused himself, Plaintiffs requested briefing of the recusal issue. Judge Sand rescinded his initial

3

recusal order and the parties fully briefed the recusal issue.  After briefing was completed, Judge

Sand reinstated his initial recusal order, and the Spicer Action was reassigned to Judge Berman.

(*Id.* at ¶ 13.)

In July 2011, the Pier Sixty Defendants moved for vacatur of all of Judge Sand's prior

orders.   After briefing was complete, the motion was dismissed without prejudice to

reinstatement.  (*Id.* at ¶ 14.)  On September 29, 2011, the Spicer Action was reassigned to this

Court.  (*Id.* at ¶ 15.)  The Pier Sixty Defendants filed their motions for partial summary judgment

and decertification on November 9, 2011, which motions were withdrawn without prejudice

before briefing was completed in light of the parties' settlement.  (*Id.* at ¶ 16.)

### B.   Procedural History – The Conner Action

On July 22, 2008, Plaintiffs Isaac Conner and Carol McKinney (the "Conner Plaintiffs")

filed in New York State Supreme Court, New York County, their class action Complaint against

Pier Sixty LLC, Abigail Kirsch, AK Pier Sixty LLC, and Gotham Personnel LLC ("Gotham").

The Conner Plaintiffs were temporary servers placed to work at Pier Sixty by Gotham, a staffing

agency, and/or its predecessor CTI Staffing.  (*Id.* at ¶ 5.)  The Conner Plaintiffs filed an

Amended Complaint on October 2, 2009, which, *inter alia*, replaced Defendant Abigail Kirsch

with Defendant James Kirsch.  (*Id.* at ¶ 19.)  The Conner Action alleged that the Pier Sixty

Defendants, AK Pier Sixty LLC, and Gotham retained gratuities that belonged to temporary

servers who worked at Pier Sixty, in violation of § 196-d.  (*Id.* at ¶ 6.)  Defendants denied and

continue to deny these allegations.

The Pier Sixty Defendants and AK Pier Sixty LLC moved to dismiss the Conner

Complaint on the grounds that they were not the Conner Plaintiffs' employers.  (*Id.* at ¶ 17.)  The

Court denied Defendants' motion on January 12, 2009, *see Connor v. Pier Sixty, LLC*, 23 Misc.

3d 435, and the Parties commenced discovery on the employer issue only.  (Schulman Decl. ¶ 18.)  After completing discovery on the employer issue, Defendants Pier Sixty LLC, AK Pier Sixty LLC, and James Kirsch moved for summary judgment on the grounds that they were not the Conner Plaintiffs' employer.  (*Id.* at ¶ 20.)  On September 30, 2010, the Court denied Defendants' motion with respect to Pier Sixty LLC and granted it with respect to AK Pier Sixty LLC and James Kirsch.  29 Misc. 3d 1220A.  On January 18, 2011, Plaintiffs moved for class certification pursuant to CPLR Article 9, which motion was withdrawn without prejudice prior to oral argument in light of the Parties' settlement.  (Schulman Decl. ¶ 21.)  On March 20, 2012, the Conner Action was dismissed without prejudice so that: (1) the Spicer Complaint could be amended for settlement purposes only to include the Conner Class; and (2) the Settlement Agreement could be submitted to this Court for approval.  (*Id.* at ¶ 22.)

### C.   Discovery

The Parties engaged in coordinated discovery in the Spicer and Conner Actions, stipulating to the use in the Spicer Actions of depositions of Pier Sixty employees taken in connection with the Conner Action.  (*Id.* at ¶ 23.)  After the Conner Action survived summary judgment, the Parties also stipulated to the use in the Conner Action of: (1) all depositions taken in the Spicer Action; and, (2) all documents and information produced by Pier Sixty in the Spicer Action.  (*Id.* at ¶ 24.)

At the time of settlement, discovery was complete in the Spicer Action.  Spicer Action discovery included: (1) depositions of the seven Spicer Plaintiffs; (2) depositions of nine Pier Sixty employees and/or principals, including Defendant James Kirsch; (3) depositions of four third-party witnesses; and (4) Pier Sixty's production of over 40,000 pages of documents.  In

5

connection with motion practice, the Spicer Plaintiffs also relied in part on three depositions taken in the Conner Action.  (*Id.* at ¶ 25.)

The Parties also engaged in substantial discovery in the Conner Action.  Initially, discovery was limited to the issue of whether the Pier Sixty Defendants and AK Pier Sixty LLC were Plaintiffs' employer.  At that stage, the Parties exchanged hundreds of documents and took eight depositions, including those of the Conner Plaintiffs, two Gotham representatives, and four Pier Sixty employees and/or principals.  With the Parties' agreement to use Spicer Action discovery in the Conner Action after the Conner Court issued its summary judgment opinion, there was relatively little discovery left to be completed when the case settled.  (*Id.* at ¶ 26.)

### D.    Settlement Discussions

The Parties began settlement discussions in late 2010 with the goal of resolving both the Spicer Action and Conner Action.  (*Id.* at ¶ 27.)  After several in-person meetings, the Parties reached an impasse.  (*Id.* at ¶ 28.)  The Parties attended a settlement conference before Magistrate Judge Maas on May 2, 2011, which did not result in a settlement.  (*Id.* at ¶ 29.)  The Parties then participated in two unsuccessful mediation sessions before the Hon. Stephen G. Crane in August and September 2011.  (*Id.* at ¶ 30.)  On November 18, 2011, the Parties attended a second settlement conference before Magistrate Judge Maas.  At the end of that conference, Magistrate Judge Maas made a "mediator's proposal" to settle the Spicer Action and Conner Action for $8.5 million.  (*Id.* at ¶ 31.)  Prior to the November 29, 2011 deadline Magistrate Judge Maas set for accepting or rejecting his proposal, the Parties conferred and agreed to settle the two cases for $8.5 million.  (*Id.* at ¶ 32.)

The settlement amount agreed to by the Parties is, of course, a compromise figure.  It took into account the risks regarding proof of liability in light of the novel legal issues presented

by these Actions.  Class Counsel considered the risk of loss at trial as well as the likelihood of

appeal by Defendants if Plaintiffs prevailed at trial and the attendant delay in the Class's

recovery.  In light of the strengths and weaknesses of the case, the Class Representatives and

Class Counsel believe that the settlement easily falls within the range of reasonableness because

it achieves a significant benefit for the Class where failure at trial is possible.

### III.   THE PROPOSED SETTLEMENT

#### A.   Plaintiffs Should Be Permitted To File Their Third Amended Complaint And The Class Should Be Redefined For Settlement Purposes

Because the Spicer and Conner Actions assert substantially similar claims pursuant to

N.Y. Lab. L. § 196-d and because the parties have engaged in coordinated discovery and

settlement negotiations, culminating in the execution of a single Agreement, Plaintiffs now seek

– for settlement purposes only – to: (1) amend the complaint to add the Conner Plaintiffs and

Gotham as parties; and (2) include the Conner Class as a separate Class in this Action.  The

proposed Third Amended Complaint is attached hereto as Exhibit 4.

The decision to alter a class certification order is within the sound discretion of the trial

court.  *See* Rule 23(c)(1)(C) ("An order that grants or denies class certification may be altered or

amended before final judgment."); *Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ("Under

Rule 23(c)(1), class certification may be altered or amended at any time before a decision on the

merits. . . . Rule 23(d) allows the district court to make such orders as are necessary to assure the

orderly administration of the proceedings."); *In re MTBE Prods. Liability Litig.*, 241 F.R.D. 435

(S.D.N.Y. 2007) ("It is well-established that a court has the inherent power and discretion 'to

redefine and modify a class in a way which allows maintenance of an action as a class action.'").

That discretion should be exercised here to facilitate settlement of the substantially similar

claims in the Spicer and Conner Actions.

The Spicer Class is defined as all servers and bartenders employed by the Pier Sixty Defendants between November 25, 2002 and February 27, 2012 (the date the Agreement was executed) who have not requested exclusion from the Class or who have rescinded any such request for exclusion.  (Ex. 1 ¶ 1.34.)

Plaintiffs seek to define the Conner Class as follows: All individuals employed by Gotham Personnel LLC ("Gotham") or its predecessor CTI Staffing, Inc. ("CTI") who were placed to work as temporary servers at Pier Sixty by Gotham and/or CTI at any time between July 22, 2002 and February 27, 2012.  (*Id.* at ¶ 1.7.)

### i.  The Conner Class meets the requirements of Rule 23(a) and 23(b)(3)

A class may be certified where it meets the requirements of Rule 23(a) and those of one section of Rule 23(b).  The Rule 23(a) requirements are that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."   The Conner Class should be certified under Rule 23(b)(3), which requires that common questions "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### a.  Numerosity is satisfied

Numerosity is presumed where the proposed class has more than 40 members.  The Conner Class has more than 1,950 Class Members.  (Schulman Decl. ¶ 33.)  Therefore, the Conner Class is so numerous that joinder of all Class Members is impracticable.

### b.  Commonality is satisfied

The Conner Class satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also Marisol A.*, 126 F.3d at 376 ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.").

Here, there are numerous questions of law and fact common to the Conner Class, including (1) whether Pier Sixty's service charge was a gratuity under § 196-d; (2) whether any portion of the service charge was distributed to Conner Class Members; and (3) whether Pier Sixty was the "employer" of the Conner Class Members.  These questions will be subject to the exact same analysis for each Conner Class Member, and therefore, the commonality requirement is easily satisfied.  *See*, *e.g.*, *Spicer*, 269 F.R.D. at 337 ("Commonality is clearly satisfied in this instance; class members assert the same legal claim based on *World Yacht* against a service charge policy that was in all material respects nearly identical for each Plaintiff and for each event.").

### c.  Typicality is satisfied

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation omitted).  Here, the Conner Plaintiffs' claims are not merely typical of those of all other Conner Class Members, but they are virtually identical to those of all other Conner Class Members.  Each Conner Class Member's claim is for a *pro rata* share of the same pool of money and each relies upon substantially the same legal arguments

9

under § 196-d with respect to liability.  Typicality is easily satisfied because each Conner Class Member's "claim 'arises from the same course of events,' produced by a 'single system,' namely Defendants' system for collecting, explaining, representing, and distributing the service charge." *Spicer*, 269 F.R.D. at 337.

### d.  Adequacy is satisfied

"The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted).

Here, Isaac Conner and Carol McKinney are adequate representatives of the proposed Conner Class.  They have no known conflicts with any Conner Class Members and have actively participated in discovery and settlement negotiations.  (Schulman Decl. ¶ 34.)  Accordingly, adequacy is satisfied.

### e.  Common questions predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Id.* at 139.  Where class members are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the Conner Class are unified by common factual allegations – that they were not paid a portion of the service charge Pier Sixty collected from customers of events at which Conner Class Members worked.  The Conner Class is also unified by a common legal theory – that Defendants' failure to pay them a portion of Pier Sixty's service charge violated § 196-d.  Accordingly, predominance is satisfied.  *See*, *e.g.*, *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 253 (2d Cir. 2011) (finding predominance satisfied where plaintiffs "alleged that all [class members] were subject to [defendant's] uniform tip-sharing or tip-pooling system"); *Spicer*, 269 F.R.D. at 338 (finding predominance satisfied); *Ramirez v. Mansions Catering, Inc.*, 2009 N.Y. Slip Op. 31100U, at *11 (Sup. Ct. N.Y. Co. Apr. 27, 2009), *aff'd*, 74 A.D.2d 490 (N.Y. App. Div. 1st Dep't 2010) (finding that common questions predominate where those questions included "(1) whether defendants employed the members of the proposed class within the meaning of the Labor Law; (2) whether defendants received tips or gratuities related to work that the class members performed; (3) whether the clients of defendants believed that the monies they were paying to defendants were gratuities; and 4) whether defendants failed to pay the tips or gratuities that they received to the appropriate employees").

### f.   A class action is a superior mechanism

Courts routinely find superiority where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery.  *E.g.*, *Jankowski v. Castaldi*, No. 01 Civ. 0164, 2006 U.S. Dist. LEXIS 4237, at *13-14 (E.D.N.Y. Jan. 13, 2006); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005); *Velez v. Majik Cleaning Serv., Inc*, No. 03 Civ. 8698, 2005 U.S. Dist. LEXIS 709, at *19 (S.D.N.Y. Jan. 19, 2005).  Therefore, the class action is the superior method of litigating the Conner Class Members' claims.

11

As the requirements of Rule 23(a) and (b)(3) are satisfied, the Conner Class should be certified for settlement purposes.

### ii. The Court should appoint JHHK as class counsel for the Conner Class

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B).  In making this determination, a court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(C).

Applying these criteria, JHHK should be appointed class counsel.  As set forth in sections III.B-D., *supra*, JHHK has done substantial work identifying, investigating, prosecuting, and settling the Conner Class's claims.  (Schulman Decl. ¶ 35.)  JHHK has substantial experience prosecuting and settling wage and hour class actions, are well-versed in wage and hour and class action law, and are well-qualified to represent the interests of the Conner Class.  (*Id.* at ¶¶ 36-39.)  Courts have repeatedly found JHHK to be adequate class counsel in wage and hour class actions.  *E.g.*, *Spicer*, 269 F.R.D. at 337-38 ("[T]he Court is satisfied that Plaintiffs' counsel are competent and qualified to prosecute this action; counsel have ample experience in litigating large wage and hour class actions. Counsel's experience, knowledge of this area of law, work invested in identifying the potential claims in this action, and ability to commit sufficient resources to representing  the class also satisfy the Rule 23(g) requirements for appointment as class counsel"); *see also Shahriar*, 659 F.3d 234 (affirming district court's certification of Rule 23 class of restaurant servers with JHHK as class counsel); *In re Milos Litig.*, No. 08 Civ. 6666,

2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (granting final approval of settlement in wage and hour class action brought against a restaurant where JHHK was co-class counsel). Therefore, the Court should appoint JHHK to serve as counsel for the Conner Class pursuant to Rule 23(g).

### B.   Settlement Consideration

The Agreement provides that the Pier Sixty Defendants shall pay Eight Million Five Hundred Thousand Dollars ($8,500,000.00) to the Class, which includes, subject to this Court's approval, attorneys' fees, costs, expenses, the Claims Administrator's fee, and enhancement awards. (Ex. 1 ¶ 3.1(A).) The Pier Sixty Defendants shall deposit the total settlement amount in an escrow account no later than March 30, 2012. All interest accrued from the escrow account will be added to the settlement fund. (*Id.* at ¶ 3.1(B).)

Class Members will receive their entire award without having to file a proof of claim or a claim form. Class Counsel shall be paid, subject to Court approval, and attorneys' fees equal to one-third of the remainder of the settlement fund and reasonable costs incurred. (*Id.* at ¶ 3.2(A).) The Agreement also provides that Plaintiffs will seek individual service awards to be paid out of the settlement fund, subject to Court approval. Defendants may oppose these service awards. (*Id.* at ¶ 3.3.)

Kurtzman Carson Consultants LLC ("Claims Administrator") has been retained to administer the settlement. (*Id.* at ¶ 1.3.) Subject to Court approval, the Claims Administrator's fees will also be paid out of the settlement fund. (*Id.* at ¶ 2.1.)

The amount of the Settlement remaining after deductions for attorneys' fees and costs, Claims Administrator's fees, and any individual service awards (the "Net Settlement Amount" or "NSA") shall be distributed among Class Members who do not opt out of the settlement. 90% of

the NSA shall be paid to Spicer Class Members ("Spicer NSA"), and 10% of the NSA shall be paid to Conner Class Members ("Conner NSA").  (*Id.* at ¶¶ 1.10, 1.36.)  The percentage of the NSA going to Spicer Class Members and Conner Class Members reflects the total hours worked during the Class Period by temporary and non-temporary servers.  (Schulman Decl. ¶ 41.)

The Spicer NSA will be distributed as follows:

1. Each Spicer Class Member who opted into the FLSA claim will receive $5 for each week worked between November 25, 2005 and February 28, 2011, the date when the Pier Sixty Defendants changed their overtime practices.  The total monies paid under this section are referred to as the "Overtime Amount."

2. Each Spicer Class Member who began working for Pier Sixty on or after January 1, 2011 will receive $100.  The total monies paid under this section are referred to as the "Spicer 2011-2012 Employment Amount."

3. The amount remaining in the Spicer NSA after deductions for the Overtime Amount and Spicer 2011-2012 Employment Amount is referred to as the Spicer Service Charge Amount.  The Spicer Service Charge Amount will be distributed as follows:

 a. 12% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked from November 25, 2002 through December 31, 2003 on a *pro rata* basis according to the total partial service charge distribution ("Payout") each Spicer Class Member received during that time period.

 b. 16% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked in 2004 on a *pro rata* basis according to the total Payout each Spicer Class Member received during that time period.

 c. 14% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked in 2005 on a *pro rata* basis according to the total Payout each Spicer Class Member received during that time period.

 d. 12% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked in 2006 on a *pro rata* basis according to the total Payout each Spicer Class Member received during that time period.

 e. 16% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked in 2007 on a *pro rata* basis according to the total Payout each Spicer Class Member received during that time period.

  f. 15% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked in 2008 on a *pro rata* basis according to the total Payout each Spicer Class Member received during that time period.

  g. 8% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked in 2009 on a *pro rata* basis according to the total Payout each Spicer Class Member received during that time period.

  h. 7% of the Spicer Service Charge Amount will be distributed among Spicer Class Members who worked in 2010 on a *pro rata* basis according to the total Payout each Spicer Class Member received during that time period.

  i. In no event will any Spicer Class Member receive less than $100.

(Ex. 1 ¶ 3.4(A).)

The percentage of the Spicer Service Charge Amount allocated to each year is based on (1) the total service charge revenue for each year and (2) the contract(s) in use during that year. Thus, the parties attributed no value to service charge revenue from Contract 2, as Judge Sand dismissed Plaintiffs' claim with respect to this contract, and discounted the value of service charge revenue from Contract 3, which included a statement that the service charge was not a gratuity. (Schulman Decl. ¶¶ 42-43.)

The Conner NSA will be distributed as follows:

1. Each Connor Class Member who first worked at Pier Sixty on or after January 1, 2011 will receive $100. The total monies paid under this section are referred to as the "Conner 2011-2012 Employment Amount."

2. The amount remaining in the Conner NSA after the deduction of the Conner 2011-2012 Employment Amount is referred to as the Conner Service Charge Amount. The Conner Service Charge Amount will be distributed as follows:

  a. Each Conner Class Member will receive 5 points for every hour worked at Pier Sixty between July 22, 2002 and December 31, 2007.

  b. Each Conner Class Member will receive 4.25 points for every hour worked at Pier Sixty in 2008.

  c. Each Conner Class Member will receive 2.8 points for every hour worked at Pier Sixty in 2009.

    d.  Each Conner Class Member will receive 2.4 points for every hour worked at Pier Sixty in 2010.

    e.  The Conner Service Charge Amount will be divided by the total number of points accrued by all Conner Class Members to determine the Point Value.

    f.  Each Conner Class Member's total points will be multiplied by the Point Value to determine his or her share of the Conner Service Charge Amount.

    g.  In no event will any Conner Class Member receive less than $100.

(Ex. 1 ¶ 3.4(B).)

The point values are different in different years because of the different contracts in use in those years. (Schulman Decl. ¶ 45.)

In return for the above consideration, Class Members will release all released claims described in the Agreement against Defendants and all related entities through the date of preliminary approval of the Agreement. In general, Class Members will release all wage and hour claims under New York law, and the Class Members who filed consent to sue forms will release all wage and hour claims under federal law. (Ex. 1 ¶ 3.6.)

## IV.    PRELIMINARY SETTLEMENT APPROVAL

### A.    The Role Of The Court

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court. *See e.g. In re American Bank Note Holographics, Inc.,* 127 F. Supp. 2d 418, at 429 (S.D.N.Y. 2001) ("Approval of the Settlement is within the Court's broad discretion."); *In re Michael Milken & Assoc. Sec. Litig.,* 150 F.R.D. 46, 53 (S.D.N.Y. 1997) (the trial court has discretion to approve a class action settlement and should be concerned with whether the settlement, taken as a whole, is adequate, fair and reasonable) (internal citations omitted); *In re*

*Nasdaq Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-conclusive negotiations, has not obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re Initial Pub. Offering Sec. Litig.,* 226 F.R.D 186, 191 (S.D.N.Y. 2005). Class members may then present arguments and evidence for and against the terms of the settlement before the Court decides whether the settlement is fair, reasonable and adequate. *ld.* (internal citations omitted).

### B.      Criteria To Be Considered In Deciding Preliminary Approval

A district court determines whether to preliminarily approve the settlement by making "a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation*, *Fourth,* § 21.633. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of reasonableness." *Id.* § 40.42.

"In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Market-Makers Antitrust Litig.,* 176 F.R.D. at 102.  The purpose of the preliminary approval inquiry is "to determine whether the proposed settlement is within the range of possible approval." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (the role of the court is to determine whether the proposed basis for settlement is adequate, reasonable and fair and justifies providing

notice of the settlement to the proposed class).

It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement." *In re Initial Pub. Offering,* 226 F.R.D. at 191.  Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *In re Prudential,* 163 F.R.D. at 210 (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.").

"It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential,* 163 F.R.D. at 209; *Wal-Mart Stores, lnc. v. Visa U.S.A. lnc.,* 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Luxottica Group S.P.A. Sec. Litig.,* 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.").  "[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits." *Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972) (internal citations omitted). Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight.  *See e.g., In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461

(S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted); *In re American Bank Note Holographics, lnc.,* 127 F.Supp.2d at 430 ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Here, experienced counsel, after substantial adversarial litigation and negotiation, including four mediation sessions, have concluded that the proposed settlement – which includes, among other things, substantial monetary benefits to Class Members – is in the best interest of the Spicer and Conner Classes. The settlement merits preliminary approval and submission to the Class Members for their consideration.

### i.  There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The Product of Extensive, Arm's Length Negotiations

The criteria for evaluating a request for preliminary approval have been summarized as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*In re Prudential,* 163 F.R.D. at 209 (quotation omitted). Under this standard, the Court should grant preliminary approval of the proposed settlement and order the dissemination of notice.

The proposed settlement is the product of extensive negotiations over the course of a year and involving four mediation sessions.  The negotiations were at all times hard-fought and at arm's length and have produced a result that experienced counsel believed to be in the best interests of the Class.  *Clark v. Ecolab Inc.*, No. 07 Civ. 8623, 2010 U.S. Dist. LEXIS 47036, at

*17-18 (S.D.N.Y. May 11, 2010) (where settlement was achieved through experienced counsels'
arm's-length negotiations, then "[a]bsent fraud or collusion, [courts] should be hesitant to
substitute [their] judgment for that of the parties who negotiated the settlement") (alterations in
original; internal quotation marks omitted); *In re Global Crossing Sec. & ERISA Litig.*, 225
F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is
accorded to the recommendations of counsel, who are most closely acquainted with the facts of
the underlying litigation.").

Moreover, where, as here, the settlement is the by-product of a settlement conference
before a magistrate judge and/or mediator, there is a presumption of fairness and arm's-length
negotiations. *E.g.*, *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS
11931, at *2-3 (S.D.N.Y. Jan. 20, 2011) ("The assistance of an experienced class action
employment mediator . . . reinforces that the Settlement Agreements are non-collusive.");
*McAnaney v. Astoria Fin. Corp.*, No. 04 Civ. 1101, 2011 U.S. Dist. LEXIS 114768, at *17
(E.D.N.Y. Feb. 11, 2011) ("[T]he parties participated in six in-person mediation conferences and
five telephone conferences before Magistrate Judge Wall.  The Court therefore concludes that the
Settlement is procedurally fair, and is entitled to a presumption of being fair, reasonable and
adequate."); *In re AOL Time Warner, Inc.*, No. 02 Civ. 8853, 2006 U.S. Dist. LEXIS 70474, at
*16 (S.D.N.Y. Sept. 27, 2006) ("In evaluating a settlement's procedural fairness, the Second
Circuit has noted that 'a court-appointed mediator's involvement in pre-certification settlement
negotiations helps to ensure that the proceedings were free of collusion and undue pressure.'").

### ii.  The Settlement Contains No Obvious Deficiencies

The proposed settlement has no obvious deficiencies. The settlement does not mandate
excessive compensation for Class Counsel. Class Counsel will apply for an award of attorneys'

fees equal to one-third of the maximum total payment and reimbursement of expenses.  (Ex. 1 ¶ 3.2(A).)  This percentage is "within the range of reasonable attorney fees awarded in the Second Circuit."  *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95 Civ. 4954, 1999 U.S. Dist. LEXIS 650, at *11 (S.D.N.Y. Jan. 28, 1999); *see also In re Giant Interactive Group, Inc. Sec. Litig.*, No. 07 Civ. 10588, 2011 U.S. Dist. LEXIS 127634 (S.D.N.Y. Nov. 2, 2011) (Engelmayer, J.) (awarding fee equal to 33% of the after-costs settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc.,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.,* No. 94 Civ. 7696, 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Tech. Sys.*, No. 97 Civ. 5874, 1999 U.S. Dist. LEXIS 17627 (S.D.N.Y.  Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs).

### iii.  The Settlement Falls Within The Range Of Possible Approval

As explained above, the proposed Settlement was reached only after protracted arm's-length negotiations between the Parties and their counsel who considered the advantages and disadvantages of continued litigation after four mediation sessions.  Class Counsel believes that this settlement achieves all of the objectives of the litigation, namely, a substantial monetary settlement for servers and bartenders who were, allegedly, not a paid a portion of the gratuities that Pier Sixty collected from its customers.  Class Counsel, with a great deal of experience in the prosecution and resolution of class actions and collective action litigation, has carefully evaluated the merits of this case and the proposed settlement.

The Settlement Fund constitutes a significant percentage of the recovery that the Spicer and Conner Classes could possibly have recovered if they succeeded on all of their claims at trial and the trial verdict survived an appeal.  Weighing the benefits of the settlement against the risks

associated with proceeding with the litigation, the settlement amount provided for in the Agreement is more than reasonable. *See Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194, 2010 U.S. Dist. LEXIS 125945, at *40-41 (S.D.N.Y. Nov. 30, 2010) ("[C[ourts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery.'"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, at *18 (E.D.N.Y. Jan. 20, 2010). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.*

Here, even if the matter were to proceed to trial, Class Counsel acknowledges that there is no guarantee that a jury will award Plaintiffs their "best day" damage estimate. Furthermore, even if a large judgment was obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement. In light of the above considerations, the proposed settlement as a whole falls within the range of possible final approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to all Class Members.

## V.    THE PROPOSED PLAN OF CLASS NOTICE

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores Inc.,* 396 F.3d at 113 (internal citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies

constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114 (internal citations omitted). Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:53, at 167 (4th ed. 2002). The Agreement provides for notice to be mailed to all Class Members for whom the Parties can obtain last known addresses, to be supplemented by notice by publication if there are any Class Members whose addresses cannot be identified. (Ex. 1 ¶ 2.6.)

The Parties have last known addresses for all approximately 550 Spicer Class Members and for approximately 1,864 out of the more than 1,900 Conner Class Members. (Schulman Decl. ¶ 47.) However, to date the Parties have been unable to obtain the addresses of a very small group of Conner Class Members (the "Missing Address Conner Class Members"), who amount to less than 5% of the Conner Class. (*Id.* at ¶ 48.) The Missing Address Conner Class Members worked for Gotham's predecessor, CTI Staffing, between 2004 and 2006. (*Id.* at ¶ 49.) The Parties have been able to identify the Missing Address Conner Class Members' names from records in Pier Sixty's possession. However, the Parties have been unable to identify the Missing Address Conner Class Members' addresses, as these individuals' records were not transferred to Gotham after it purchased some of CTI's assets in 2007. (*Id.* at ¶ 50.) CTI has agreed to provide whatever missing information is in its possession; however CTI may no longer have records for all of the Missing Address Conner Class Members. Plaintiffs also attempted to obtain the missing addresses by subpoenaing another of CTI's successors, but that successor was able to provide the necessary information for just fourteen Conner Class members. (*Id.* at 51.)

Where some class members are not reasonably identifiable, courts regularly approve

notice by a combination of mail to the last known addresses of all identifiable class members and publication. *E.g.*, *In re Adelphia Communs. Corp. Sec. & Derivatives Litig.*, 271 Fed. Appx. 41 (2d Cir. 2008) (finding that "notice of the settlement was reasonably provided through individually mailed notice to all known and reasonably identifiable class members, publication in several major newspapers, and entered on the district court's docket sheet"); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571, 2009 U.S. Dist. LEXIS 31198, at *37 (S.D.N.Y. Mar. 31, 2009) (noting that Rule 23 and due process require individual notice to "all class members who can be identified with reasonable efforts" but "where the identification of class members is not possible, courts may approve other methods, including publication, as 'the best notice practicable under the circumstances.'"); *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 81 (S.D.N.Y. 2003) (finding notice by mail to identifiable class members combined with notice by publication in two publications to be the best notice practicable under the circumstances and in accordance with due process).

Accordingly, the Agreement provides that the Claims Administrator will mail the Mailing Notice to all Class Members for whom the Parties have or can obtain addresses at their last known addresses via first class mail. For each Mailing Notice returned to the Claims Administrator as undeliverable, the Claims Administrator will make reasonable attempts to identify correct addresses, including conducting skip traces by Social Security number, and will attempt up to two re-mailings of the Mailing Notice per Class Member. (Ex. 1 ¶ 2.6(A).) In addition, if within 30 days of the Court's order granting preliminary approval of the settlement the Parties have been unable to obtain addresses for al Conner Class Members, the Publication Notice will be published in each of the New York Post, Village Voice, and Metro New York on two dates no less than two weeks apart. (*Id.* at 2.6(B).)

24

A "settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart Stores Inc.,* 396 F.3d at 114 (internal citations omitted).

The proposed Mailing Notice and Publication Notice comport with the above-cited legal authorities in all respects.  (Ex. 2 & 3.)  To that end, both proposed Notices: (1) describe the nature, history, and status of the litigation; (2) set forth a clear definition of the proposed Class; (3) state the class claims and issues; (4) disclose the right of the people who fall within the definition of the Class to exclude themselves from the Settlement, and specify he deadline and procedure for doing so; (5) warn of the binding effects of the settlement approval proceedings on those persons who remain in the Settlement Class; and (6) provide Class Counsel's contact information.  The Mailing Notice also advises the Class Members of how their recovery will be calculated and provides clear notice that the Parties have agreed upon compensation for Class Counsel, in the form of attorneys' fees and reimbursable litigation expenses, and discloses the date, time, and place of the Fairness Hearing.  (Ex. 2.)  The Publication Notice advises potential Class Members to contact Class Counsel to confirm their inclusion in the Class and, if necessary, provide their mailing addresses.  (Ex. 3.)

The Notices' content satisfies all applicable requirements. Therefore, in granting preliminary settlement approval, the Court should also approve the Parties' proposed forms and methods of giving notice to Class Members.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement and enter the Proposed Order.

25

Dated: New York, New York
       March 22, 2012

By:    /s/ Denise A. Schulman
       Denise A. Schulman
       D. Maimon Kirschenbaum

       JOSEPH, HERZFELD, HESTER &
       KIRSCHENBAUM LLP
       233 Broadway
       5th Floor
       New York, NY 10279
       212-688-5640

       EMERY CELLI BRINCKERHOFF &
       ABADY LLP
       Jonathan S. Abady
       Matthew D. Brinckerhoff
       75 Rockefeller Plaza
       20th Floor
       New York, NY 10019
       212-763-5000