UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CELESTE SPICER, AUTUMN BURGESS,
AMY LEDIN, JOSEPH RUSSO, ESTHER
MARTINEZ, LYSETTE ROMAN, SERENA        Index No. 08 Civ. 10240 (PAE)
SIYING HUI, ISAAC CONNER, JR., and
CAROL MCKINNEY, on behalf of
themselves and other similarly situated,

             Plaintiffs,

    v.

PIER SIXTY LLC, JAMES KIRSCH, and
GOTHAM PERSONNEL, LLC,

             Defendants.
--------------------------------------------------------x


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT


JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Denise A. Schulman
233 Broadway, 5th Floor
New York, NY 10279
Tel: (212) 688-5640
Fax: (212) 688-2548

EMERY CELLI BRINCKERHOFF & ABADY LLP
Jonathan S. Abady
Matthew D. Brinckerhoff
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Tel: (212) 763-5000
Fax: (212) 763-5001


*Attorneys for Plaintiffs, FLSA collective members, and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

   A.   Procedural History – The Spicer Action ...................................................... 2

   B.   Procedural History – The Conner Action ..................................................... 4

   C.   Discovery ....................................................................................................... 5

   D.   Settlement Discussions .................................................................................. 6

   E.   Settlement Terms ........................................................................................... 7

   F.   Release of Claims .......................................................................................... 9

   G.   Class Members' Response To Settlement .................................................... 10

II.     ARGUMENT ..................................................................................................... 10

   A.   The Proposed Settlement Should Be Approved............................................ 10

      i.    The Proposed Settlement is Fair, Reasonable, and Adequate and
            Should be Approved ............................................................................... 11

         a.   Procedural fairness............................................................................ 11

         b.   Substantive fairness .......................................................................... 12

            1.   Complexity, expense, and likely duration of the litigation................... 12

            2.   Reaction of the class to the settlement................................................. 13

            3.   Stage of the proceedings and the amount of discovery completed ....... 14

            4.   Risks of establishing liability.............................................................. 14

            5.   Risks of establishing damages ............................................................ 16

            6.   Risks of maintaining the class action through trial .............................. 17

            7.   Ability of defendants to withstand a greater judgment ........................ 18

8.   Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation.........................................................................18

i.   The Notice to Class Members Meets the Requirements of Rule 23 ..............................20

B.   Approval Of The Settlement Of The Opt-In Plaintiffs' FLSA Claims Is Also Appropriate.........................................................................................................20

C.   The Claims Administrator's Fees Should Be Approved...................................................21

D.   Class Counsel's Attorneys' Fees And Costs Should Be Approved...................................21

i.   Class Counsel's Requested Fee Award is Reasonable ...................................................22

a.   *Goldberger* factors ......................................................................................24

1.   Counsel's time and labor .................................................................25

2.   The litigation's magnitude and complexity and the risks of litigation ................25

3.   Quality of the representation.........................................................27

4.   The fee is reasonable in relation to the settlement.............................29

5.   Public policy considerations .........................................................30

E.   The Objections Of Four Class Members And The State Of Texas Should Be Overruled 30

i.   The Class Member Objections........................................................................................30

ii.   The State of Texas's Objection......................................................................................32

a.   The Settlement Agreement does not impose an unfair tax burden on Class Members who do not cash their settlement checks...........................................32

b.   Reversion of 50% of unclaimed settlement funds is reasonable.............................33

c.   Unclaimed funds should not be held in trust under each state's unclaimed property laws, and the period in which Class Members may cash their checks should not be changed ........................................................................................................34

III.   CONCLUSION.........................................................................................................35

# TABLE OF AUTHORITIES

**Federal Cases**

*Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) ...........................1, 24

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) ....................33

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (1974)..................................................10, 12, 18

*Clark v. Ecolab Inc.*, No. 07 Civ. 8625,
    2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ...................................23

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ..............28

*Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819,
    2009 U.S. Dist. LEXIS 24916 (S.D.N.Y. Mar. 25, 2009) ..................................34

*D'Amato v. Watman*, 236 F.3d 78 (2d Cir. 2001)............................................................10

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011)..................23, 24

*Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 04082,
    2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) ................................33

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271,
    2011 U.S. Dist. LEXIS 11931 (S.D.N.Y. Jan. 20, 2011) ...................................11

*D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787,
    2008 U.S. Dist. LEXIS 96034 (E.D.N.Y. Nov. 25, 2008)..................................17, 18

*Ebbert v. Nassau County*, No. 05 Civ. 5445,
    2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22, 2011) ................................34

*EVCI Career Coll. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. Jan. 27, 2007) ...................................24

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ..................................12, 18

*Garland v. Cohen & Krassner*, No. 08 Civ. 4626,
    2011 U.S. Dist. LEXIS 136622 (E.D.N.Y. Nov. 29, 2011)................................35

*Gilliam v. Addicts Rehab. Center Fund*, No. 05 Civ. 3452,
    2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ..................................29, 34

*Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386,
    1991 U.S. Dist. LEXIS 4995 (S.D.N.Y. Apr. 10, 1991).....................................17

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)....................................25

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071,
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ....................................11

*In re Giant Interactive Group, Inc. Secs. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011).........22, 23, 31

*In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)..............25, 29

*In re Greenwich Pharm. Sec. Litig.*, No. 92 Civ. 3071, 1995 U.S. Dist. LEXIS 5717
    (E.D. Pa. Apr. 27, 1995) ..................................................................................29

*In re Lloyd's Amer. Trust Fund Litig.*, No. 96 Civ. 1262,
    2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)...................................30, 31

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998).........22, 31

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ......................16, 17

*In re Phillips/Magnavox TV Litig.*, No. 09-3072,
    2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012) ........................................35

*In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884,
    2007 U.S. Dist. LEXIS 52538 (D. Conn. July 20, 2007)....................................28

*In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173,
    2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ....................................13, 14

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................*passim*

*Khait v. Whirlpool Corp.*, No. 06 Civ. 6381,
    2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) ....................................23

*Maley v. Del Global Tech Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................12, 18, 23,
    28

*Mba v. World Airways, Inc.*, 369 Fed. Appx. 194 (2d Cir. 2010)....................................33

*McAnaney v. Astoria Fin. Corp.*, No. 04 Civ. 1101,
    2011 U.S. Dist. LEXIS 114768 (E.D.N.Y. Feb. 11, 2011).................................11

*McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713,
    2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010) ....................................20

*Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445
  (S.D.N.Y. Jan. 6, 2010)...................................................................................30

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, no. 11 Civ. 0520,
  2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012)...................................27, 33

*Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494,
  2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) ...................................34, 35

*Sand v. Greenberg*, No. 08 Civ. 7840,
  2011 U.S. Dist. LEXIS 36266 (S.D.N.Y. Mar. 22, 2011) ...................................28

*Saylor v. Lindsley*, 456 F.2d 896 (2d Cir. 1972)............................................................12

*Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548,
  2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 20, 2012)...................................24

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .........34

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) .............................................3, 21

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 339 (S.D.N.Y. 2010) .............................................3

*Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240,
  2010 U.S. Dist. LEXIS 132433 (S.D.N.Y. Sept. 14, 2010)................................4

*Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240,
  2011 U.S. Dist. LEXIS 11959 (S.D.N.Y. Feb. 7, 2011).....................................4

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..............................................22

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ......................................22

*Taft v. Ackermans*, No. 02 Civ. 7951,
  2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ....................................24, 25, 29

*Teachers Ret. Sys. v. A.C.L.N. Ltd.*, No. 01 Civ. 11814,
  2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ....................................19

*Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698,
  2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ..................................14

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ..........................*passim*

*Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817,
   2009 U.S. Dist. LEXIS 94544 (S.D.N.Y. Oct. 8, 2009) ......................................23

**State Cases**

*Bynog v. Cipriani Group*, 1 N.Y.3d 193 (2003) ...............................................16

*Connor v. Pier Sixty, LLC*, 23 Misc. 3d 435 (N.Y. Sup. Ct. Jan. 12, 2009) ...................5

*Connor v. Pier Sixty, LLC*, 29 Misc. 3d 1220A (N.Y. Sup. Ct. Sept. 30, 2010) .............5

*Martin v. Rest. Assoc. Events Corp.*, 35 Misc. 3d 215 (N.Y. Sup. Ct. 20120) ...............28

*Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008) .......................................*passim*

**Statutes, Rules, and Regulations**

29 U.S.C. § 202 ................................................................................30

29 U.S.C. § 207 ..................................................................................3

29 U.S.C. § 216 ..............................................................................3, 20

Fed. R. Civ. P. 23 .......................................................................3, 10, 20

N.Y. C.P.L.R. Art. 9 ............................................................................5

N.Y. Lab. L. § 196 .......................................................................*passim*

N.Y. Lab. L. § 650 .............................................................................30

**Other Authorities**

New York State Assembly Bill A09349 (2012) ............................................1, 16

## I.      INTRODUCTION

Plaintiffs Celeste Spicer, Autumn Burgess, Amy Ledin, Joseph Russo, Esther Martinez, Lysette Roman, Serena Siying Hui, Isaac Conner, Jr., and Carol McKinney (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for final approval of a proposed settlement in this wage and hour class/collective action brought on behalf of certain employees of Defendants Pier Sixty LLC and Gotham Personnel LLC ("Gotham") against Pier Sixty LLC and James Kirsch (collectively, the "Pier Sixty Defendants") and Gotham.[1]   The $8,500,000 settlement resolves all claims before this Court pursuant to the proposed compromise set forth in a Joint Stipulation of Settlement and Release dated February 27, 2012 (the "Settlement Agreement").

This settlement represents the culmination of more than four years of a groundbreaking litigation that was extremely risky from its inception.  The primary claim in this action, a New York Labor Law § 196-d claim for service charges allegedly retained by the Pier Sixty Defendants, was a novel one when this action and its related state action were filed in 2008.  At that time, *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008), the decision upon which Plaintiffs' claims were based, was a recent decision that had not yet been interpreted by the lower courts or New York Department of Labor.  No court had yet ruled that *World Yacht* applied retroactively, and unless *World Yacht* was applied retroactively Plaintiffs' claims would

---

[1] With this memorandum, Plaintiffs submit the September 4, 2012 declaration of Denise A. Schulman ("Schulman Decl."), attaching thereto as Schulman Exhibit 1 the Settlement Agreement in this Action, as Schulman Exhibit 2 affidavits of publication of notice provided by the *New York Post*, the *Village Voice*, and *Metro New York*, as Schulman Exhibit 3 the State of Texas's Objection to Proposed Settlement Under the Class Action Fairness Act, as Schulman Exhibit 4 New York State Assembly bill A09439 from the previous legislative session, as Schulman Exhibit 5 the hearing transcript in *Agofonova v. Nobu Corp.*, 07 Civ. 6926, at 6 (S.D.N.Y. Feb. 6, 2009), as Exhibit 6 the Publication Notice, and as Exhibit 7 a proposed order.  Plaintiffs also submit the August 23, 2012 declaration of Jenny Cudworth ("Cudworth Decl."), attaching thereto as Cudworth Exhibit A the Class Notice mailed to Class Members, as Cudworth Exhibit B the cover letter sent with the CAFA Notice Packets, as Cudworth Exhibit C the Requests for Exclusion submitted by two Class Members, and as Cudworth Exhibit D the Objections submitted by four Class Members.

have failed on summary judgment. Even after Judge Sand issued a summary judgment decision that was very favorable for Plaintiffs, holding, *inter alia*, that *World Yacht* applied retroactively and denying Defendants' motion with respect to the lion's share of Plaintiffs' claims, substantial risks remained.  In its standard paperwork, Pier Sixty never referred to the charge in question as a "gratuity," a fact which could have led to a complete loss for Plaintiffs at trial.  In a backlash against the retroactive application of *World Yacht*, the New York State Assembly passed a bill that would have not only rendered *World Yacht* non-retroactive but would also have prevented any mandatory charge from being considered a gratuity prior to the effective date of the proposed law, which would have been some time in 2012.  After Judge Sand's recusal, the Pier Sixty Defendants also sought to vacate all of his substantive decisions, which had all been favorable for Plaintiffs.  The settlement represents a substantial percentage of the potential damages in this action, an excellent result, in Class Counsel's opinion, for the Class in a case that had substantial risks at the outset and throughout more than four years of litigation.  For the reasons set forth below, the settlement is fair and adequate and should be approved.

## II.     BACKGROUND

### A.     Procedural History – The Spicer Action

On November 25, 2008, Plaintiffs Celeste Spicer, Autumn Burgess, Amy Ledin, Joseph Russo, Esther Martinez, Lysette Roman, and Serena Siying Hui (collectively, the "Spicer Plaintiffs") filed in this Court their class action Complaint against the Pier Sixty Defendants.[2] (Dkt. No. 1.)  Prior to settlement, the Complaint was amended twice, and the Second Amended Complaint was filed on February 8, 2011.  (Dkt. Nos. 16, 214.)  The Spicer Action alleged that the Pier Sixty Defendants: (1) retained gratuities that belonged to Pier Sixty's servers in violation

---

[2] The original Defendants in the Spicer Action were Pier Sixty LLC and Abigail Kirsch.  In the First Amended Complaint, the Spicer Plaintiffs removed Abigail Kirsch as a Defendant and added James Kirsch.

2

of N.Y. Lab. L. § 196-d ("§ 196-d"); and (2) failed to properly compensate servers for overtime in violation of 29 U.S.C. § 207.  Defendants denied and continue to deny these allegations.

With respect to the § 196-d claim, which accounts for almost all of the damages in this action, during most of the time period covered by the Spicer Action, Pier Sixty charged customers a 20-22% mandatory "service charge."  The Pier Sixty Defendants distributed more than half of the service charge monies to service employees and used the remaining amounts to cover other work associated with the banquet events.  (Schulman Decl. ¶ 6.).  The Spicer Plaintiffs alleged that the reasonable customer would believe that the service charge was a gratuity and, thus, under *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), the Pier Sixty Defendants were required to distribute the service charge monies in full to service employees. *Id.* at 79 ("[T]he standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer as this standard is consistent with the purpose of Labor Law § 196-d.").  The Pier Sixty Defendants denied and continue to deny these allegations.

On July 27, 2010, Judge Sand granted in part and denied in part the Pier Sixty Defendants' motion for summary judgment.  269 F.R.D. 321.  The Spicer Plaintiffs' § 196-d claims under Pier Sixty's Contracts 1 and 3 survived summary judgment, as did their claim for overtime under the FLSA.  In the same Order, Judge Sand granted the Spicer Plaintiffs' motion for collective certification pursuant to 29 U.S.C. § 216(b) and class action certification pursuant to Fed. R. Civ. P. 23 ("Rule 23").  Judge Sand appointed Esther Martinez and Joseph Russo as Class Representatives and Plaintiffs' counsel Joseph & Kirschenbaum LLP ("JK" or "Class Counsel") as Class Counsel.  The Pier Sixty Defendants then filed motions for reconsideration and interlocutory appeal of the summary judgment order, both of which Judge Sand denied.  269

F.R.D. 339 (2010) (denying motion for reconsideration); 2010 U.S. Dist. LEXIS 132433 (Sept. 14, 2010) (denying motion for interlocutory appeal).  Pursuant to the July 27, 2010 Order, Class Counsel mailed a notice of the lawsuit to all potential Class Members, giving them an opportunity to opt into the FLSA claim and/or opt out of the Rule 23 Class.  (Schulman Decl. ¶ 9.)  Fifteen putative Class Members opted out of the Class, two of whom subsequently rescinded their requests for exclusion.  (*Id.* at ¶ 10.)  In addition to the seven named Plaintiffs, 132 individuals have opted into the FLSA claim.  (*Id.* at ¶ 11.)

On February 7, 2011, Judge Sand granted Plaintiffs' contested motion to amend the Complaint to add a claim for liquidated damages to Plaintiffs' § 196-d claim.  2011 U.S. Dist. LEXIS 11959.  On May 24, 2011, after full briefing on the issue, Judge Sand recused himself, and the Spicer Action was reassigned to Judge Berman.  (Dkt. No. 238; Schulman Decl. ¶ 13.)

In July 2011, the Pier Sixty Defendants moved for vacatur of all of Judge Sand's prior orders.  After briefing was complete, the motion was dismissed without prejudice to reinstatement.  (Schulman Decl. ¶ 14.)  On September 29, 2011, the Spicer Action was reassigned to this Court.  (*Id.* at ¶ 15.)  The Pier Sixty Defendants filed their motions for partial summary judgment and decertification on November 9, 2011, which motions were withdrawn without prejudice before briefing was completed in light of the parties' settlement.  (*Id.* at ¶ 16.)

### B.      Procedural History – The Conner Action

On July 22, 2008, Plaintiffs Isaac Conner and Carol McKinney (the "Conner Plaintiffs") filed in New York State Supreme Court, New York County, their class action Complaint against Pier Sixty LLC, Abigail Kirsch, AK Pier Sixty LLC, and Gotham Personnel LLC ("Gotham").  The Conner Plaintiffs were temporary servers placed to work at Pier Sixty by Gotham, a staffing agency, and/or its predecessor CTI Staffing.  (*Id.* at ¶ 5.)  The Conner Plaintiffs filed an

Amended Complaint on October 2, 2009, which, *inter alia*, replaced Defendant Abigail Kirsch with Defendant James Kirsch.  (*Id.* at ¶ 19.)  The Conner Action alleged that the Defendants retained gratuities that belonged to temporary servers who worked at Pier Sixty, in violation of § 196-d.  (*Id.* at ¶ 6.)  Defendants denied and continue to deny these allegations.

The Pier Sixty Defendants and AK Pier Sixty LLC moved to dismiss the Conner Complaint on the grounds that they were not the Conner Plaintiffs' employers.  (*Id.* at ¶ 17.)  The Court denied Defendants' motion on January 12, 2009, *see Connor v. Pier Sixty, LLC*, 23 Misc. 3d 435, and the Parties commenced discovery on the employer issue only.  (Schulman Decl. ¶ 18.)  The Pier Sixty Defendants and AK Pier Sixty LLC then moved for summary judgment on the grounds that they were not the Conner Plaintiffs' employer.  (*Id.* at ¶ 20.)  The Court denied Defendants' motion with respect to Pier Sixty LLC and granted it with respect to AK Pier Sixty LLC and James Kirsch.  29 Misc. 3d 1220A (Sept. 30, 2010).  On January 18, 2011, Plaintiffs moved for class certification pursuant to CPLR Article 9, which motion was withdrawn without prejudice prior to oral argument in light of the Parties' settlement.  (Schulman Decl. ¶ 21.)  On March 20, 2012, the Conner Action was dismissed without prejudice.  (*Id.* at ¶ 22.)  On April 26, 2012, pursuant to this Court's April 25, 2012, Plaintiffs filed a Third Amended Complaint in the Spicer Action which added the Conner Plaintiffs' claims to the Spicer Complaint.  (*Id.* at ¶ 23; Dkt. No. 274.)

### C.    Discovery

The Parties engaged in coordinated discovery in the Spicer and Conner Actions, stipulating to the use in the Spicer Action of depositions of Pier Sixty employees taken in connection with the Conner Action.  (*Id.* at ¶ 24.)  The Parties also stipulated to the use in the

Conner Action of: (1) all depositions taken in the Spicer Action; and, (2) all documents and information produced by Pier Sixty in the Spicer Action. (*Id.* at ¶ 25.)

At the time of settlement, discovery was complete in the Spicer Action. Spicer Action discovery included: (1) depositions of the seven Spicer Plaintiffs; (2) depositions of nine Pier Sixty employees and/or principals, including Defendant James Kirsch; (3) depositions of four third-party witnesses; and (4) Pier Sixty's production of over 40,000 pages of documents. In connection with motion practice, the Spicer Plaintiffs also relied in part on three depositions taken in the Conner Action. (*Id.* at ¶ 26.)

The Parties also engaged in substantial discovery in the Conner Action. Initially, discovery was limited to the issue of whether the Pier Sixty Defendants and AK Pier Sixty LLC were Plaintiffs' employer. At that stage, the Parties exchanged hundreds of documents and took eight depositions, including those of the Conner Plaintiffs, two Gotham representatives, and four Pier Sixty employees and/or principals. With the Parties' agreement to use Spicer Action discovery in the Conner Action after the Conner Court issued its summary judgment opinion, there was relatively little discovery left to be completed when the case settled. (*Id.* at ¶ 27.)

### D.     Settlement Discussions

The Parties began settlement discussions in late 2010 with the goal of resolving both the Spicer Action and Conner Action. (*Id.* at ¶ 35.) Over the next year, the Parties engaged in hard-fought negotiations while simultaneously continuing to vigorously litigate the Spicer and Conner Actions. While Plaintiffs were at all times aware of the risks they would face at trial, they believed strongly in their claims, particularly with respect to the Contract 1 claim. (*Id.* at ¶ 36.) After several initial in-person meetings, the Parties' negotiations reached an impasse. (*Id.* at ¶ 37.) The Parties attended a settlement conference before Magistrate Judge Maas on May 2,

2011, which did not result in a settlement.  (*Id.* at ¶ 38.)  The Parties then participated in two unsuccessful mediation sessions before the Hon. Stephen G. Crane in August and September 2011.  (*Id.* at ¶ 39.)  On November 18, 2011, the Parties attended a second settlement conference before Magistrate Judge Maas.  At the end of that conference, Magistrate Judge Maas made a "mediator's proposal" to settle the Spicer Action and Conner Action for $8.5 million, to which the Parties ultimately agreed.  (*Id.* at ¶ 40.)

The settlement amount agreed to by the Parties is, of course, a compromise figure.  It takes into account the risks regarding proof of liability in light of the novel legal issues presented by these Actions.  Class Counsel considered the risk of loss at trial as well as the likelihood of appeal by Defendants if Plaintiffs prevailed at trial and the attendant delay in the Class's recovery.  To be sure, given the history of this litigation, it is likely that if the Parties failed to reach a settlement the litigation would have continued for several more years.  In light of the strengths and weaknesses of the case, Plaintiffs and Class Counsel believe that the settlement is reasonable because it achieves a significant benefit for the Class where failure at trial is possible.

      **E.**    **Settlement Terms**

The Agreement provides that the Pier Sixty Defendants shall pay $8,500,000 to the Class. This includes, subject to this Court's approval, attorneys' fees, costs, expenses, the Claims Administrator's fee, and service awards.  (Schulman Ex. 1 ¶ 3.1(A).)  After deductions for attorneys' fees, costs, expenses, the Claims Administrator's fee, and service awards, 90% of the remaining Net Settlement Fund will be distributed to Spicer Class Members (the "Spicer NSF"), and 10% of the Net Settlement Fund will be distributed to Conner Class Members (the "Conner NSF").  (*Id.* at ¶¶ 1.10, 1.21, 1.36, 3.4.)

Each Spicer Class Member who opted into the FLSA overtime claim in this action ("FLSA Opt-In Plaintiffs") will receive $5 per week for every week November 25, 2005 and February 28, 2011.  (*Id.* at ¶ 3.4(A)(4)(a).)  Each Spicer Class Member who began working for Pier Sixty on or after January 1, 2011 will receive $100.[3]  (*Id.* at ¶ 3.4(A)(4)(b).)  A percentage of the remainder of the Spicer NSF will be attributed to each year covered by the settlement.  (*Id.* at ¶ 3.4(A)(4)(c).)  These percentages are based on (1) the total service charges collected in each year under Contracts 1 and 3 and (2) the contract(s) in use in each year, with the service charges collected under Contract 3 being discounted by 50%.  (Schulman Decl. ¶ 49.)  Each Spicer Class Member will receive a *pro rata* share of the service charge portion of the Spicer NSF attributable to each year in which he or she worked based on the total Payout he or she earned each year.  In no event will any Spicer Class Member receive less than $100.  (Schulman Ex. 1 ¶ 3.4(A)(3).)

Each Conner Class Member who began working at Pier Sixty on or after January 1, 2011 will receive $100.  (*Id.* at ¶ 3.4(B)(4)(a).)  The remainder of the Conner NSF will be distributed on a point basis.  Each Conner Class Member will receive 5 points for every hour worked at Pier Sixty between July 22, 2002 and December 31, 2007, 4.25 points for every hour worked in 2008, 2.8 points for every hour worked in 2009, and 2.4 points for every hour worked in 2010.  The amount remaining in the Conner NSF after the deduction for 2011 and 2012 employees will be

---

[3] Class Members who worked at Pier Sixty only between January 1, 2011 and February 27, 2012 will receive $100 because Pier Sixty changed its contract in late 2010 in an attempt to comply with the standard set forth by Judge Sand in denying the Pier Sixty Defendants' motion for summary judgment.  As a result, it is highly unlikely, although still conceivable, that Class Members would prevail in their § 196-d claims for most events held from January 1, 2011 to February 27, 2012.  (Schulman Decl. ¶ 54.)  Accordingly, it is appropriate for Class Members who worked during this period to receive a $100 settlement share.  Moreover, because Pier Sixty's customers frequently enter into contracts with Pier Sixty as much as a year or more before an event, in all likelihood some events held between January 1, 2011 and February 27, 2012 were governed by Contract 3 – which survived summary judgment – rather than the contract Pier Sixty began using in late 2010.  (*Id.*)  For these reasons, the release of claims these individuals are giving Defendants has value to Defendants, which contributed to the Pier Sixty Defendants' agreement to the settlement. (*Id.* at ¶ 55.)  Finally, Plaintiffs also note that only 36 Spicer Class Members and 123 Conner Class Members worked solely between January 1, 2011 and February 27, 2012.  (*Id.* at ¶ 56.)  Thus, these Class Members will receive a total of $15,900 out of the $8,500,000 settlement fund in exchange for their release of claims.

divided by the total number of points to determine the point value, and each Conner Class Members total points will be multiplied by the point value to determine his or her settlement share.  In no event will any Conner Class Member receive less than $100.  (*Id.* at ¶ 3.4(B)(3).)  The point values are different in different years because of the different contracts used in those years. (Schulman Decl. ¶ 52.)

Settlement checks will be mailed to Class Members without their having to file a claim form.  (Schulman Ex. 1 ¶¶ 3.4(D)(F).)  Settlement checks will be valid for 180 days, during which time Class Members may request reissued checks.  All reissued checks will be valid for 45 days.  (*Id.* at ¶ 3.4(E).)  50% of any unclaimed settlement funds will be returned to the Pier Sixty Defendants, and 50% will be redistributed to Class Members who cashed their settlement checks or, if there are not sufficient unclaimed funds to render a redistribution feasible, donated to the New York Legal Assistance Group and the Food Bank for New York City.  (*Id.* at ¶ 3.4(F).)

**F.     Release of Claims**

All Spicer and Conner Class Members will release all claims arising under the New York Labor Law, New York Code of Rules and Regulations, and any New York State Wage Order against the Pier Sixty Releasees (as defined in the Settlement Agreement) relating to work performed at or for Pier Sixty that arose up to the date of preliminary approval of the Settlement Agreement.  All FLSA Opt-In Plaintiffs will also release all FLSA claims against the Pier Sixty Releasees and Gotham Releasees (as defined in the Settlement Agreement) relating to work performed at or for Pier Sixty that arose up to the date of preliminary approval of the Settlement Agreement.  The Conner Class Members will also release all claims arising under the New York Labor Law, New York Code of Rules and Regulations, and any New York State Wage Order

against the Gotham Releasees relating to work performed at or for Pier Sixty that arose up to the date of preliminary approval of the Settlement Agreement.  (*Id.* at ¶ 3.6(A).)

### G.     Class Members' Response To Settlement

Pursuant to the Court's April 25, 2012 Order, the Claims Administrator mailed and distributed the Mailing Notice to all 2,323 Class Members for whom Defendants provided a last known address.  (Cudworth Decl. ¶¶ 7-9.)  An additional 13 Class Members' addresses were unknown.  (*Id.* at ¶ 7.)  Class Counsel published the Publication Notice in the *New York Post*, the *Village Voice*, and *Metro New York* on May 30, 2012 and June 20, 2012.  (Schulman Decl. ¶ 58; Schulman Ex. 2.)  The time has expired for Class Members to opt out and/or object under the Agreement.  Only two Class Members have opted out of the settlement, and only four Class Members have objected to the settlement.  (Cudworth Decl. ¶¶ 14-15.)  Thus, there was clear approval of the settlement.

### II.     ARGUMENT

### A.     The Proposed Settlement Should Be Approved

Fed. R. Civ. P. 23(e) states that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  *See also D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001).  Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (1974).

i.      **The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved**

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that led to the settlement and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

a.      **Procedural fairness**

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotation omitted). Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted). Here, Class Counsel and their co-counsel are highly experienced in litigating complex wage and hour class and collective actions. (Schulman Decl. ¶¶ 63-98.) These negotiations were also vigorously fought. The Parties engaged in several sessions of failed settlement talks, and it took over one year from the commencement of settlement talks until a settlement was finally reached. (*Id.* at ¶¶ 35-40.)

Moreover, where, as here, the settlement is the by-product of settlement conferences before a magistrate judge and/or a mediator, there is a presumption of fairness and arm's-length negotiations. *E.g.*, *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931, at *2-3 (S.D.N.Y. Jan. 20, 2011) ("The assistance of an experienced class action employment mediator . . . reinforces that the Settlement Agreements are non-collusive."); *McAnaney v. Astoria Fin. Corp.*, No. 04 Civ. 1101, 2011 U.S. Dist. LEXIS 114768, at *17 (E.D.N.Y. Feb. 11, 2011) ("[T]he parties participated in six in-person mediation conferences and

five telephone conferences before Magistrate Judge Wall.  The Court therefore concludes that the Settlement is procedurally fair, and is entitled to a presumption of being fair, reasonable and adequate.").

### b.        Substantive fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *see also Wal-Mart Stores, Inc.*, 396 F.3d at 117.  These factors ought not be applied in a formulaic manner.  Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  *Grinnell Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)).

### 1.    Complexity, expense, and likely duration of the litigation

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation.  *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005) (internal quotation omitted).  When the Parties reached a settlement here, they had been litigating for

roughly three and a half years.  Throughout the litigation, Defendants have mounted a strong defense, with the Pier Sixty Defendants being represented by excellent employment litigators at Jackson Lewis LLP and, subsequently, Fox Rothschild LLP, two firms with prominent national employment defense practices.  Following the summary judgment decision in the Spicer Action, the Pier Sixty Defendants retained the law firm Fried, Frank, Harris, Shriver & Jacobson LLP, a premier international firm.  Even after failing to win summary judgment in the Spicer Action, the Pier Sixty Defendants vigorously defended this action, seeking to reverse Judge Sand's summary judgment decision through motions for reconsideration and interlocutory appeal and later seeking to vacate Judge Sand's order.  In total, nine motions were fully briefed in the Spicer and Conner Actions.  Moreover, Defendants' counsel indicated their intent to appeal any judgment that was favorable for Plaintiffs.  Therefore, if this case continues, there will be additional motion practice, additional discovery in the Conner Action, trials, and appeals which will delay recovery and result in costs that will deplete any possible recovery.

### 2.   Reaction of the class to the settlement

In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that object to and opt out of the settlement.  Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-Civ-5173, 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008).  Presently, the reaction to the settlement has been overwhelmingly positive as less than 1% of the more than 2,300-member Class have either objected to or opted out of the settlement.  Accordingly, the settlement should receive final approval.

The Claims Administrator mailed the Settlement Notice to all 2,323 Class Members with last known addresses.   (Cudworth Decl. ¶¶ 7-9.)   Only four Class Members objected to the settlement, and only two individuals opted out of the settlement.[4]   (*Id.* at ¶¶ 14-15.)   Therefore, Class Members' satisfaction with the settlement is clear.

### 3.   Stage of the proceedings and the amount of discovery completed

Courts consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement.  *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *18 (S.D.N.Y. June 22, 2007).   Courts look at whether "the parties conducted sufficient discovery to understand their claims and negotiate settlement terms."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *20.

Class Counsel entered into the proposed Settlement Agreement with a thorough understanding of their case.  When the Parties reached a settlement, discovery was complete in the Spicer Action, and substantial discovery had been completed in the Conner Action. (Schulman Decl. ¶¶ 24-27.)  Because the primary claims in the Spicer and Conner Actions were virtually identical, Class Counsel had a more than sufficient understanding of the claims and defenses in both actions to properly evaluate the strengths and weaknesses of the claims and defenses and obtain an excellent result for Class Members.

### 4.   Risks of establishing liability

In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F.

---

[4] For the reasons set forth, *infra* Section II.E.., the Class Members' objections reflect a misunderstanding of the facts and reasoning underlying the settlement distribution.

Supp. 2d at 579.  Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]"  *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

Success in this litigation was far from a sure thing for Plaintiffs.  In fact, there was a strong possibility that Plaintiffs would lose their case in its entirety.  There are numerous disputed issues, such as whether the reasonable customer would have believed that Pier Sixty's service charge was a gratuity and whether Pier Sixty LLC was the Conner Class Members' employer, which make establishing liability risky for Plaintiff.  Notably, Pier Sixty's Contracts 1 and 3, the company's primary communication with customers about the service charge, *never* referred to the charge at issue as a gratuity.  In late 2008, the Pier Sixty Defendants began using Contract 3, which included a disclaimer that stated that the service charge was not a gratuity.  This disclaimer sharply heightens Plaintiffs' risk of being able to prove liability under Contract 3.  (Schulman Decl. ¶ 28.)  Pier Sixty also always charged sales tax on the service charge, which weighs against finding the service charge to be a gratuity.  (*Id.* at ¶29.)  Further, while Plaintiffs believe that their claims are meritorious, Class Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the appeals process are inherently uncertain in terms of outcome and duration.  This is particularly true in light of the still-developing jurisprudence governing *World Yacht* claims.  While Plaintiffs believe they have the stronger argument in this case, there is a great deal of uncertainty about the legal standards governing § 196-d claims.  To date there has been no jury verdict on a *World Yacht* claim.  The proposed settlement alleviates this uncertainty and is preferable to trial, which may result in a smaller per-Class Member recovery.

Moreover, in the previous legislative session, the New York State Assembly passed a bill that would have amended § 196-d and absolved Pier Sixty of any liability in this action.  That

bill – A09349 – provided that prior to its effective date, *i.e.*, 30 days after the bill becomes a law, "any mandatory service or administrative charge, or any mandatory fee, imposed by an employer as part of a banquet serving twenty or more guests *shall not be deemed a gratuity or charge purported to be a gratuity, and shall not form the basis of any liability under this section*[.]" (Schulman Ex. 4; Schulman Decl. ¶ 30.)  Although a companion bill failed in the New York State Senate, Plaintiffs' counsel have been advised that there will be another attempt in the upcoming legislative session to amend § 196-d, and such an amendment may eliminate the potential for Pier Sixty to be found liable or heighten the risk of loss for Plaintiffs by changing the *World Yacht* standard.  (Schulman Decl. ¶ 31.)

Finally, the Conner Class faced the unique risk, unlike the Spicer Class, of having to prove that the Pier Sixty was its employer.(*Id.* at ¶ 32.)  In arguing that it was not the Conner Class Members' employer, Pier Sixty relied on *Bynog v. Cipriani Group*, 1 N.Y.3d 193 (2003), in which the New York Court of Appeals held that a group of temporary banquet servers who worked at a banquet facility through an employment agency were not employees of the banquet facility.  Although the Conner Plaintiffs defeated Pier Sixty's motions to dismiss and for summary judgment which relied on *Bynog*, the outcome of this issue at trial is highly unpredictable.  (*Id.* at ¶ 33.)  Therefore, this factor weighs heavily in favor of approval.

### 5.  Risks of establishing damages

Courts also consider the risks of establishing damages.  Regardless of Plaintiffs' ability to establish liability, they still face "substantial risks in proving [their] damages at trial."  *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119.  Although the damages in this case are based on Defendants' records, "damages are a matter for the jury, whose determinations can never be predicted with

certainty." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

Moreover, the Spicer Plaintiffs would bear the burden of proving that the Pier Sixty Defendants willfully violated § 196-d in order to win an award of liquidated damages. This could be difficult in light of the Pier Sixty Defendants' stated reliance on the advice of experienced counsel and New York Department of Labor materials. Accordingly, Plaintiffs faced significant risks in establishing damages.

### 6.   Risks of maintaining the class action through trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified. *D.S. v. N.Y. City Dep't of Educ.*, No. 05 Civ. 4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89 Civ. 5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991). Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class. *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18. At the time that the parties reached a settlement, the Pier Sixty Defendants had moved to decertify the Spicer Class based on the recent Supreme Court decision *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), under which the Pier Sixty Defendants contended that the Spicer Plaintiffs could not establish commonality and typicality. The Conner Plaintiffs' motion for class certification was pending when the parties reached a settlement. Thus, there is a risk that a class action would not be maintained through trial.

### 7.   Ability of defendants to withstand a greater judgment

Courts consider a defendant's ability to withstand a judgment greater than the settlement. *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57.   Nevertheless, the fact that a defendant can withstand a greater judgment does not preclude a finding that the settlement was fair, reasonable, and adequate.  *Id.*  Plaintiffs are not fully aware of the Pier Sixty Defendants' financial condition. However, Pier Sixty is a food service establishment, not a national corporation, and this settlement is for an indisputably substantial amount of money.

### 8.   Range of reasonableness of the settlement in light of best possible recovery and attendant risks of litigation

The final two *Grinnell* factors can be considered together.  "The most important factor in the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement.'"  *D.S.*, 2008 U.S. Dist. LEXIS 96034, at *53 (quoting *Grinnell*, 495 F.2d at 455).  The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement.

The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum.  Instead, there is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.

*Frank*, 228 F.R.D. at 186 (internal quotations and citations omitted).

Defendants have agreed to pay $8,500,000 to resolve this case, indisputably a substantial amount.  Based on Class Counsel's analysis of the potential damages, this settlement amounts to

approximately 73% of Contract 1 service charges allegedly retained by Defendants, or approximately 60% of all Contract 1 and Contract 3 service charges allegedly retained by Defendants.  (Schulman Decl. ¶ 43.)  While most Class Members were part-time workers who did not work for Pier Sixty throughout the class period, the awards for the Class Members – some of whom were part-time employees – who worked for Pier Sixty in every year from 2002 to 2010 are estimated to range from approximately $17,395 to $123,000.  (*Id.* at ¶ 44.)  Based on the Claims Administrator's preliminary calculations, 124 Class Members' settlement shares – *after subtractions for attorneys' fees, costs, service fees, and Claims Administrator's fees* – will exceed $10,000, and 11 Class Members' settlement shares exceed $75,000.[5]  (*Id.* at ¶ 45.)  To Class Counsel's knowledge, this is the largest wage and hour settlement reached for a single food service establishment in New York City.  (*Id.* at ¶ 42.)

Thus, while there is certainly a possibility that the Class may recover more money after trial, the Settlement provides the significant benefit of an immediate and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road."  *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004).  Moreover, in light of the possibility, discussed *supra* Section II.A.b.4., that the New York legislature may pass legislation that eliminates or restricts Pier Sixty's liability, there is a substantial risk that if this litigation proceeds Class Members will receive far less money, if any, than they will receive under the settlement.  Therefore, this factor weighs heavily in favor of approving the settlement.

---

[5] Because many Class Members worked just a handful of parties at Pier Sixty and will, therefore, receive low settlement awards, the average per-Class Member settlement amount does not accurately reflect the substantial benefit that this settlement provides to Class Members.

### i.      The Notice to Class Members Meets the Requirements of Rule 23

As set forth in the Court's April 25, 2012 Order, the Class Notice satisfies the requirements of Rule 23(c)(2)(B).[6]

### B.      Approval Of The Settlement Of The Opt-In Plaintiffs' FLSA Claims Is Also Appropriate

Plaintiffs seek the Court's approval of the settlement of the FLSA wage and hour claims. FLSA claims are brought as a "collective action" in which employees must affirmatively opt-in to the litigation.  29 U.S.C. § 216(b).  Because employees who do not opt-in to an FLSA action do not lose their right to file suit at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *See McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. Mar. 3, 2010). Thus, the high standard for approval of a class settlement does not apply to an FLSA settlement.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes."  *Id.*  The adversarial nature of an FLSA action is typically a sufficient indication of a settlement's fairness.  *Id.*  "If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved."  *Id.* (internal quotation marks omitted).

The settlement in this case was the result of vigorously contested litigation and arm's-length negotiation.  To be sure, the parties reached a settlement after more than three years of aggressive litigation, including a summary judgment motion on the FLSA claim.  Moreover, under the standard set forth by Judge Sand in his summary judgment decision, in all likelihood

---

[6] The Claims Administrator mailed the Class Notice via first class mail to all Class Members for whom addresses were provided.  (Cudworth Decl. ¶¶ 7-9.)  The Claims Administrator made reasonable efforts to obtain correct addresses for all returned Class Notices.  (*Id.* at ¶ 11-12.)  Ultimately, there were only 119 Class Member for whom the Claims Administrator could not locate an address. (*Id.* at ¶ 13.)

the Opt-In Plaintiffs would have lost their FLSA claims.  The Opt-In Plaintiffs could prevail on their FLSA claims only if they could show that they were not paid a "bona fide commission rate."  Judge Sand held that the Opt-In Plaintiffs could do this only if they were "'never' or 'seldom' [paid] more than the guaranteed minimum in a representative period of one month." 269 F.R.D. at 334.  Now that discovery is complete, it does not appear that the Opt-In Plaintiffs would be able to meet this burden.  (Schulman Decl. ¶ 34.)  Finally, throughout the litigation and negotiations, all parties were represented by counsel.  Accordingly, the Settlement Agreement resolves an actual dispute under circumstances supporting a finding that this is a fair and reasonable arm's-length settlement and is therefore appropriate for final approval.

### C.   The Claims Administrator's Fees Should Be Approved

Pursuant to Court's April 25, 2012 Order, third-party administrator Kurtzman Carson Consultants ("Claims Administrator") was retained by the Parties to administer the settlement. The Claims Administrator's fees are estimated not to exceed $41,500.  Based on Class Counsel's experience with this Claims Administrator, its final bill does not usually vary significantly from its estimate.  However, the Claims Administrator's precise fees cannot yet be determined, as it will do substantial additional work after settlement approval.  (*Id.* at ¶ 59.)  Thus, Plaintiffs respectfully request that the Court approve all reasonable fees of the Claims Administrator, subject to Class Counsel's review of the Claims Administrator's invoices.

### D.   Class Counsel's Attorneys' Fees And Costs Should Be Approved

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs

associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.* Here, the Settlement Agreement authorizes Class Counsel to receive one-third of the Settlement Fund as attorneys' fees, or $2,805,000.00, as well as reimbursement of costs.

Although there are two ways to compensate attorneys for successful prosecution of class actions (the lodestar method or the percentage of the recovery method), courts generally prefer to award fees as a percentage of the common fund. *Strougo v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases). "The trend in [the Second] Circuit is toward the percentage method, . . . which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (internal quotation marks omitted). The percentage method is preferred because it rewards prompt and efficient resolution of class litigation, while strict application of the lodestar method encourages inefficiency and resistance to prompt settlement. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993).

### i. Class Counsel's Requested Fee Award is Reasonable

Class Counsel seeks $31,289.10 as costs and one-third of the settlement – after deductions for costs and service awards for the Plaintiffs[7] – as attorneys' fees.[8] (*See* Schulman

---

[7] As set forth in Plaintiffs' letter brief submitted contemporaneously with this motion, Plaintiffs seek $20,000 each – or $180,000 total – as service awards. If the Court denies or reduces Plaintiffs' request for service awards, Class Counsel respectfully request that their fee request be modified upwards accordingly to reflect the amount of the after-costs and service awards settlement fund approved by the Court.

[8] The Settlement Agreement permits Class Counsel to seek up to one-third of the total settlement fund – before deductions for costs or service awards – as attorneys' fees. However, Class Counsel seeks one-third of the settlement fund after deductions for these expenses in light of the Court's stated position in *In re Giant Interactive*

Decl. ¶ 107 for a breakdown of the costs for which Class Counsel seek reimbursement.)  If the Court grants all requested costs and service awards, the resulting fee sought would be $2,762,903.63.  This fee is reasonable to compensate Class Counsel for vigorously litigating this action for more than four years on a contingency basis in the face of a significant risk of loss and ultimately achieving an excellent result for more than 2,300 Class Members.   During this litigation, the Pier Sixty Defendants have been represented by three large law firms that mounted a strong defense, leading to full briefing of nine motions and a year of negotiations before a settlement was reached.   Both the percentage of the fund and the total amount sought are consistent with the norms of class litigation in this Circuit.  *See*, *e.g.*, *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding attorneys' fees of one-third of $42 million settlement fund, or $18 million); *Clark v. Ecolab Inc.*, No. 07 Civ. 8625, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) (awarding attorneys' fees of one-third of $6,000,000 settlement fund, or $2,000,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding attorneys' fees of 33% of $9,250,000 settlement, or $3,052,500); *Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817, 2009 U.S. Dist. LEXIS 94544, at *13-14 (S.D.N.Y. Oct. 8, 2009) (awarding class counsel attorneys' fees of 30% of $38,000,000 settlement fund, or $11,400,000); *Maley*, 186 F. Supp. 2d at 370, 374 (awarding fees of 33.33% of the $11.5 million settlement fund, or $3,832,950, and recognizing that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).

Class Counsel and their co-counsel invested over $828,698.75 worth of time in obtaining a fair settlement for the Class.  In addition to reimbursement of costs, Class Counsel now seeks $2,762,903.63 as attorneys' fees, or a 3.33 multiplier of the lodestar.   When the lodestar is used,

---

*Group, Inc. Secs. Litig.* that it believes "a percentage-of-the-fund recovery is more appropriately applied to the settlement fund after payment of those expenses[.]"  279 F.R.D. 151, 164 n.4 (S.D.N.Y. 2011).

a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft v. Ackermans*, No. 07 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *34 (S.D.N.Y. Jan. 31, 2007). In the Second Circuit, courts routinely use lodestar multiples between 3 and 5. *E.g.*, *Wal-Mart Stores, Inc.*, 396 F.3d at 123 (affirming award of attorneys' fees totaling $220,291,160.44, amounting to a 3.5 lodestar multiplier); *Sewell v. Bovis Lend Lease LMB, Inc.*, No. 09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556, at *38 (S.D.N.Y. Apr. 20, 2012) (noting that "[c]ourts commonly award lodestar multipliers between two and six"); *Davis*, 827 F. Supp. 2d at 185 (awarding attorneys' fees of $14 million, which amounted to a 5.3 lodestar multiplier); *Agofonova v. Nobu Corp.*, 07 Civ. 6926, at 6 (S.D.N.Y. Feb. 6, 2009) (attached as Schulman Ex. 5) (stating that "the award of one-third the gross fund value is a 4.34 lodestar multiplier and is perfectly within the range that is acceptable"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]"); *EVCI Career Coll. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *56 n.7 (S.D.N.Y. Jan. 27, 2007) ("Lodestar multipliers of nearly 5 have been deemed "common" by courts in this District."). Moreover, because

> class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.

*Sewell*, 2012 U.S. Dist. LEXIS 53556, at *38 (internal quotation marks omitted). The multiplier of 3.33 that Class Counsel seek is therefore reasonable.

### a.   *Goldberger* factors

In determining whether a fee is reasonable, courts consider "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the

litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotation omitted; alteration in original).

### 1.   Counsel's time and labor

The first factor requires an examination of counsel's time and labor in achieving the settlement.   Class Counsel fully litigated the Spicer and Conner Actions, both of which were hard fought.   Class Counsel JK, a six-lawyer firm, joined in late 2010 by Emery Celli Brinckerhoff & Abady LLP ("ECBA"), a 15-lawyer firm, had to litigate against the Pier Sixty Defendants' legal team, which at all times included one or more large national and, in the case of Fried Frank, international, law firm with far more resources and manpower at their disposal than Class Counsel.   Class Counsel took or defended 28 depositions; fully briefed nine motions, including two summary judgment motions; communicated regularly with Plaintiffs and Class Members; reviewed and analyzed the tens of thousands of documents produced by Defendant; attended two settlement conferences and two mediation sessions; and engaged in additional settlement negotiations.   The majority of attorney work was performed by a junior associate who, for most of the litigation, was JK's lowest billing attorney.   (Schulman Decl. ¶ 69.)   In their representation of the class, Class Counsel and their co-counsel expended over 2,208.2 attorney hours and 392.1 paralegal hours.   (*Id.* at ¶ 100.)   Class Counsel also have ongoing duties in administering the settlement, which will require additional professional time.   (*Id.* at ¶101.)

### 2.   The litigation's magnitude and complexity and the risks of litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *30 (internal quotation omitted); *see also In re Global Crossing Secs. &*

*ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("The contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees."). Class Counsel took this case pursuant to a retainer agreement with the named Plaintiffs that stated that Counsel would receive a percentage of the recovery *only if* Plaintiffs obtained a recovery.  Due to the magnitude and complexity of this litigation, Plaintiffs faced a substantial risk of loss, and Class Counsel faced a concomitant risk of receiving no payment for their work. (Schulman Decl. ¶ 104.)

As set forth *supra* Section II.A.i.b.4, because Pier Sixty never referred to the charge at issue as a "gratuity" in its contracts and, in 2008, amended its contract to include a disclaimer stating that the service charge was not a gratuity, Plaintiffs faced significant barriers to proving that the reasonable Pier Sixty customer would have believed that the service charge was a gratuity.  Moreover, Pier Sixty always charged sales tax on its service charge, a fact which the *World Yacht* court indicated weighed against finding a charge to be a gratuity.

Significantly, this action was the first case asserting a *World Yacht* claim to reach summary judgment.  When this action was filed, *World Yacht* was a new decision that had not yet been interpreted by the courts.  Therefore, there was a substantial risk at the outset that the Court would adopt an analysis of *World Yacht* similar to that put forth by Defendants, resulting in no recovery for the Class.  Decisions holding *World Yacht* retroactive – including the Spicer Action's summary judgment decision – led to a backlash and an attempt to pass legislation rendering *World Yacht* not only non-retroactive but also inapplicable to any mandatory charge imposed after *World Yacht* but before the new legislation became effective.  Thus, even after Plaintiffs defeated the Pier Sixty's summary judgment motion, there was a substantial risk that legislative changes could prevent them from recovering anything.

The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes* created additional risk with respect to proving liability and maintaining the Spicer Action as a class action. The Pier Sixty Defendants argued in their decertification motion not only that *Dukes* required decertification of the Spicer Class but also that *Dukes* mandated a party-by-party analysis of the reasonable customer's belief of the nature of the service charge that took into account specific attributes of each customer. As there were almost 4,000 parties at Pier Sixty during the relevant time period, a party-by-party analysis would have been time consuming and difficult to present to a jury. Moreover, a party-by-party analysis – as opposed to an analysis simply of the overarching representations about the service that Pier Sixty made – would increase the likelihood that Plaintiffs would achieve only a partial victory, as a jury could more easily find that in certain instances the reasonable customer would have believed the service charge was a gratuity while in other instances the reasonable customer would not believe that.

Finally, Class Counsel filed the Conner Action despite the New York Court of Appeals decision in *Bynog* finding another group of temporary banquet servers not to be employees of the banquet facility where they worked. Had Pier Sixty prevailed in its arguments that, as in *Bynog*, the Conner Class Members were not employed by Pier Sixty, the Conner Class may have recovered nothing.[9]   Accordingly, this was a highly complex litigation that Class Counsel undertook subject to substantial risks.

### 3.   Quality of the representation

Class Counsel have extensive experience representing workers in wage-hour class actions. *See*, *e.g.*, *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060, at *10 (S.D.N.Y. Feb. 24, 2012) (finding that JK "have significant

---

[9] Although Gotham was named as a Defendant in the Conner Action, it is not clear that Gotham would have any liability if Pier Sixty had none.

experience prosecuting and settling wage and hour class actions, and are well-versed in both wage and hour and class action law"); *Sand v. Greenberg*, No. 08 Civ. 7840, 2011 U.S. Dist. LEXIS 36266, at *6 (S.D.N.Y. Mar. 22, 2011) (noting JK's "record of competent and successful prosecution of large wage and hour class actions") (*See also* Schulman Decl. ¶¶ 63-97.)  The high quality of Class Counsel's representation is evident not only in the size of the settlement, which to Class Counsel's knowledge is the largest obtained against a New York City hospitality business, *see In re Priceline.com, Inc. Secs. Litig.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *15 (D. Conn. July 20, 2007) ("The quality of representation here is demonstrated, in part, by the result achieved for the class."), but also in Plaintiffs' success throughout the litigation, particularly at summary judgment.  As previously stated, the Spicer Action was the first *World Yacht* to reach summary judgment.  In denying the Pier Sixty Defendants' summary judgment motion (with the exception of Plaintiffs' claims under Contract 2), Judge Sand adopted many of Plaintiffs' arguments concerning the appropriate analysis of *World Yacht* claims.  This not only led to an excellent result for Class Members in this case, but it also established a precedent that is extremely positive for all New York banquet service workers.  To be sure, Judge Sand's analysis has been adopted by other courts considering *World Yacht* claims.  *E.g.*, *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 285-86 (S.D.N.Y. 2011) (granting plaintiffs' motion for summary judgment on *World Yacht* claim); *Martin v. Rest. Assoc. Events Corp.*, 35 Misc. 3d 215, 225 (N.Y. Sup. Ct. 2012) (denying defendants' motion to dismiss *World Yacht* claim).  In addition, no Class Members objected to the attorneys' fees sought, a "reaction . . . [which] is entitled to great weight by the Court."  *Maley*, F. Supp. 2d at 374.

Moreover, post-summary judgment in the Spicer Action, Class Counsel reached out to ECBA to join Plaintiffs' legal team as trial counsel.  Jonathan Abady and Matthew Brinckerhoff,

the ECBA partners who worked with Class Counsel in this litigation, have extensive trial experience and have achieved substantial class action verdicts and settlements. Their addition to Plaintiffs' legal team gave Plaintiffs had the trial experience necessary to prevail at trial and enabled Plaintiffs to signal to Defendants that without a highly favorable settlement Plaintiffs would proceed to trial.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). During this litigation the Pier Sixty Defendants were initially represented by Felice Ekelman and Jonathan Kozak of Jackson Lewis LLP and, later, Carolyn Richmond, Eli Freedberg, and Seth Kaplan of Fox Rothschild LLP, all experienced employment litigators with substantial experience representing hospitality industry employers. Following the summary judgment decision in the Spicer Action, the Pier Sixty Defendants also retained Douglas Flaum and Lisa Bebchick of Fried, Frank, Harris, Shriver & Jacobson LLP, both of whom have extensive litigation experience.

### 4.  The fee is reasonable in relation to the settlement

In the Second Circuit, it is well settled that a fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Center Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (wage and hour settlement). While this percentage could constitute a "windfall" in cases involving larger settlement funds, the $8,500,000 fund in this case "does not create such an issue." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15.175 million settlement fund); *see also In re Greenwich Pharm. Sec. Litig.*, No. 92 Civ. 3071, 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa. Apr. 27, 1995) ("[A] fee award of 33 percent [of $4.3 million settlement]

does not present the danger of providing plaintiffs' counsel with the windfall that would accompany a 'megafund' of, for example, $100 million."); *see also* cases cited *supra* pp. 23-24.

### 5.   Public policy considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices.  29 U.S.C. § 202(a); N.Y. Lab. Law § 650.  A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes.  *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks*, 2005 U.S. Dist. LEXIS 24890, at *26.  Moreover, in wage and hour litigation,

> "private attorneys general" play an important role. Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.

*Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 6, 2010) (internal citation omitted).  This is particularly important here, where the New York catering industry lobbied the state legislature to enact a law providing, in substance, that *World Yacht* shall have no effect prior to the legislation's effective date.  Moreover, public policy strongly favors the award of a fair attorneys' fees in groundbreaking cases like this one that positively affect workers throughout an industry.

### E.   The Objections Of Four Class Members And The State Of Texas Should Be Overruled

#### i.   The Class Member Objections

Where some class members assert objections to a settlement, a court must be mindful of its "fiduciary duty to protect all Class Members – including the silent majority who have not voiced any objections to the Settlement."  *In re Lloyd's Amer. Trust Fund. Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *69 (S.D.N.Y. Nov. 26, 2002).   Moreover, "where the

objections that are voiced are based on improper assumptions or otherwise flawed arguments, such lack of credible opposition counsels in favor of approving the settlement." *Id.*; *see also In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. at 479 ("[A]n objection based on an assertion or argument not readily supportable at trial should not be permitted to bar settlement.").

The objection asserted by four Conner Class Members (the "Class Objectors") should be overruled because the settlement distribution formula is fair and reasonable. The Class Objectors complain that the percentage of the Net Settlement Fund ("NSF") being paid to the Conner Class is too small. (*See* Cudworth Ex. D.) This objection demonstrates a misunderstanding of the facts and reasoning underlying the settlement distribution formula. The objective of the settlement distribution formula – both in the percentage of the NSF being paid to the Conner Class and the Spicer Class and the distribution of each Class's share of the NSF – was to allocate the NSF as accurately as possible based on each Class Member's damages.

A court will approve a class action settlement allocation formula where it is "fair and adequate." *In re Giant Interactive Group, Inc. Secs. Litig.*, 279 F.R.D at 163. To meet this standard, "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (internal quotation marks omitted). To be sure, "in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel." *Id.* (internal quotation marks omitted). Here, Class Counsel believe that the allocation formula is fair and reflects the respective damages and risks for the Conner and Spicer Classes. Information provided by the Pier Sixty Defendants shows that between November 25, 2002 and June 30, 2010, temporary servers worked just 11.2% of the total hours worked by all servers at Pier Sixty. (Schulman Decl. ¶ 47.) Based on this information, Class Counsel proposed and Defendants agreed to allocate 10% of the Net Settlement Fund to the

Conner Class.  The Parties decided to reduce the Conner Class's share of the Net Settlement Fund from 11.2% to 10% to reflect the heightened risk the Conner Class faced because the Conner Class, unlike the Spicer Class, had to prove that Pier Sixty was their employer in order to prevail.  (*Id.* at ¶ 48.)  Therefore, the distribution of the Net Settlement Fund between the Conner and Spicer Class fairly reflects the damages each class is owed and the risks each class faces. Accordingly, the allocation of 10% of the Net Settlement Fund to the Conner Class and 90% of the Net Settlement Fund to the Spicer Class is fair and adequate, and the Class Objectors' objection should not prevent the Court from approving the settlement.

### ii.   The State of Texas's Objection

In response to the Class Action Fairness Act notice of settlement, the State of Texas has objected to the settlement on three grounds: (1) the settlement imposes an unfair tax burden on Class Members who do not cash their settlement checks; (2) reversion of unclaimed settlement funds to Defendants is improper in an FLSA action; and (3) unclaimed settlement funds should be held in trust under each state's unclaimed property laws.  (*See* Schulman Ex. 3.)  It is worth noting that only four of the more than 2,300 Class Members reside in Texas and that the State of Texas is objecting to a class settlement based almost entirely on a New York State law. Furthermore, as set forth below, the State of Texas has not identified any way in which the settlement is unfair or inadequate.  Therefore, the State of Texas' objection should be overruled.

### a.   The Settlement Agreement does not impose an unfair tax burden on Class Members who do not cash their settlement checks

The State of Texas's contention that Class Members will have to pay taxes on money they never receive is incorrect, as the Claims Administrator employs processes geared to avoid just this problem.  Tax withholdings are paid when checks are issued.  In early 2013 the Claims

Administrator will issue W-2 and 1099 forms for all Class Members whose settlement checks have been cashed.  However, once the period for cashing settlement checks has expired, the Claims Administrator will amend its tax reporting to reflect those Class Members, if any, who fail to cash their checks, and the withholdings for those individuals will be refunded.  (Cudworth Decl. ¶ 16.)  Thus, Class Members who do not cash their settlement checks will not have any tax liability for the settlement monies.

### b.  Reversion of 50% of unclaimed settlement funds is reasonable

The Settlement Agreement provides that 50% of unclaimed funds, if any, will be returned to the Pier Sixty Defendants, and the other 50% of unclaimed funds will be redistributed to Class Members who cashed their settlement checks or, if the amount of unclaimed funds is so low as to render a redistribution impracticable, donated to two charities.  Courts routinely approve settlements – including FLSA and NYLL settlements– in which some or all unclaimed funds are returned to defendants.[10]  *E.g.*, *Mba v. World Airways, Inc.*, 369 Fed. Appx. 194, 197 (2d Cir. 2010) ("This Court has held that unclaimed portions of a class action fund in a private action may properly be returned to the defendant); *Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 04082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) (FLSA and NYLL action); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) (same).  (*See also* cases cited at Schulman Decl. ¶ 62.)

The State of Texas has not cited a single case holding that the reversion of unclaimed *settlement funds* to a defendant is grounds for rejecting a proposed FLSA and/or NYLL settlement.  The single case upon which the State of Texas relies in arguing that this partial

---

[10] In fact, courts routinely approve claims-made settlements – where class members must take and affirmative step to be eligible to receive payment *and* cash a check – in which unclaimed funds revert to defendants.  *E.g.*, *Ramirez*, 2012 U.S. Dist. LEXIS 25060.  In contrast to claims-made settlement, where class members who are issued checks have affirmatively indicated their desire to receive a check, here all Class Members will simply be mailed checks.

33

reversion is improper is wholly inapposite and does not support the State of Texas' contention that "courts have declined to permit defendants to retain unclaimed settlement funds where a statute's objectives include deterrence or disgorgement."  (Schulman Ex. 3 at 3.)  In *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), the Ninth Circuit decided an appeal of a judgment following trial, not an order approving a class action settlement. Thus, to the extent that the Ninth Circuit implied that reversion to a defendant of the unclaimed portion of a *judgment* may be improper where a statute's purpose is deterrence, that argument has no bearing on the instant case where there has been no judgment and the reversion provision of the Settlement Agreement was a negotiated term and a material inducement for Defendants to agree to the settlement.

### c. Unclaimed funds should not be held in trust under each state's unclaimed property laws, and the period in which Class Members may cash their checks should not be changed

Courts in this Circuit routinely approve class action settlements in which unclaimed settlement funds either revert to defendants, *see* cases cited *supra* p. 27, are redistributed to class members who cash their settlement payments, *e.g.*, *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2009 U.S. Dist. LEXIS 24916, at *13 (S.D.N.Y. Mar. 25, 2009) (approving settlement where unclaimed funds were to be redistributed to class members who cashed their settlement checks or, if the amount of unclaimed funds did not reach a certain threshold, donated to a charity); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494, 2009 U.S. Dist. LEXIS 45277, at *15 (S.D.N.Y. May 28, 2009) (same), are given to a charity, *e.g.*, *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *8-9; *Ebbert v. Nassau County*, No. 05 Civ. 5445, 2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22, 2011), or are disposed of through a combination of the preceding methods. Accordingly, the Settlement Agreement's treatment of unclaimed settlement funds, if any, *i.e.*, a

combination of reversion to Defendants, redistribution to Class Members, and *cy pres* is fair, reasonable, and in accord with common practices in this Circuit.  While the State of Texas may believe it is preferable for unclaimed funds to be turned over to states' unclaimed property custodians, this preference is insufficient to justify rejection of a settlement that is fair, particularly where removal of this term would have likely led to a significantly less favorable settlement for Class Members.  *See In re Phillips/Magnavox TV Litig.*, No. 09-3072, 2012 U.S. Dist. LEXIS 67287, at *28 (D.N.J. May 14, 2012) ("[C]omplaining that the settlement should be 'better'. . . is not a valid objection.") (internal quotation marks omitted).

The time periods within which settlement checks may be cashed and reissued checks requested, as well as the distribution of unclaimed settlement funds, were heavily negotiated terms of the settlement, and it is Class Counsel's firm opinion that these settlement terms are fair and adequate.  In fact, courts have frequently approved settlements with shorter time periods in which class members may cash their settlement checks.  *E.g.*, *Garland v. Cohen & Krassner*, No. 08 Civ. 4626, 2011 U.S. Dist. LEXIS 136622 (E.D.N.Y. Nov. 29, 2011) (approving settlement providing class members 90 day period to cash settlement checks); *Reyes*, 2009 U.S. Dist. LEXIS 45277 (same); *Damassia*, 2009 U.S. Dist. LEXIS 24916 (same).  Accordingly, the time period in which Class Members must cash their checks is fair.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to (1) grant final approval of the Settlement Agreement; (2) award Class Counsel attorneys' fees and costs; and (3) award the Claims Administrator its fees in administering the settlement.

Dated: New York, New York
       September 4, 2012

                              By:     /s/ Denise A. Schulman
                                      Denise A. Schulman
                                      D. Maimon Kirschenbaum

                                      JOSEPH & KIRSCHENBAUM LLP
                                      233 Broadway
                                      5th Floor
                                      New York, NY 10279
                                      212-688-5640

                                      EMERY CELLI BRINCKERHOFF &
                                      ABADY LLP
                                      Jonathan S. Abady
                                      Matthew D. Brinckerhoff
                                      75 Rockefeller Plaza
                                      20th Floor
                                      New York, NY 10019
                                      212-763-5000